David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Gary M. Klinger*
Mike Acciavatti*
Heather M. Lopez (SBN 354022)
**MILBERG PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (331) 240-3015
gklinger@milberg.com
macciavatti@milberg.com
hmlopez@milberg.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com

*pro hac vice forthcoming
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON MICHAEL ROBERTS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> MOTOROLA SOLUTIONS, INC., and VIGILANT SOLUTIONS, LLC, <br><br> Defendants. | Case No.: _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

NATURE OF THE CASE ........................................................................................... 1

PARTIES .................................................................................................................. 5

JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT ............................................ 6

FACTUAL ALLEGATIONS ......................................................................................... 7

    I.      ALPR Cameras and California's ALPR Privacy Act ................................................. 7

    II.     Vigilant and Motorola's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories in Violation of California Law ................................................................... 11

    III.    Vigilant and Motorola Violate California Law by Sharing California ALPR Data with Out-of-State and Federal Agencies ....................................................... 19

    IV.    Vigilant Violates California Law by Failing to Implement an Adequate Policy ... 25

    V.     Vigilant Violates California Law by Failing to Implement Reasonable Security Procedures to Prevent Unlawful ALPR Information Sharing ............................... 29

    VI.    Vigilant's Security Measures Fall Far Below Reasonable Procedures and Practices ............................................................................................................. 31

    VII.   Vigilant's Facilitation of California Law Enforcement Agencies' Unlawful Information Sharing is Highly Offensive ............................................................... 34

    VIII. Vigilant's Active Concealment Tolls the Statute of Limitations .......................... 36

PLAINTIFF'S EXPERIENCES .................................................................................... 38

    I.      Plaintiff Roberts's Experience ............................................................................. 38

    II.     Plaintiff's Data from Vigilant Cameras Has Economic Value ............................... 40

CLASS ACTION ALLEGATIONS ............................................................................... 41

COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO MAINTAIN REASONABLE SECURITY PROCEDURES TO PREVENT UNAUTHORIZED ACCESS ...................................................................................... 44

COUNT II: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT; FAILURE TO IMPLEMENT A COMPLIANT ADEQUATE USAGE AND PRIVACY POLICY ..... 46

COUNT III: NEGLIGENCE ...................................................................................... 48

COUNT IV: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION .. 50

CLASS ACTION COMPLAINT

COUNT V: INTRUSION UPON SECLUSION ........................................................................ 52

COUNT VI: VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
("UCL") ................................................................................................................. 54

PRAYER FOR RELIEF ........................................................................................................ 57

DEMAND FOR JURY TRIAL .............................................................................................. 58

CLASS ACTION COMPLAINT

Throughout California and the United States, drivers are tracked by a network of automated license plate recognition ("ALPR") cameras and software—tens of thousands of high-definition cameras combined with artificial intelligence ("AI") and sophisticated communications networks. While other cameras used by law enforcement activate only upon detecting a violation—a vehicle running a red light, for example—ALPR cameras record information on every vehicle that passes, forming a vast, interconnected surveillance dragnet. Defendants Vigilant Solutions, LLC and Motorola Solutions, Inc. ("Defendants" or "Vigilant") own and operate a massive network of such cameras, oversee the data warehouse that holds the billions of images and data points they capture, and control the software and AI architecture that facilitates this nationwide surveillance network.

The California Legislature has recognized the dire threat to privacy rights and civil liberties posed by Vigilant's mass surveillance. In 2015, California enacted Senate Bill 34 (the "ALPR Privacy Act"), which places clear limits on the ability to legally capture, use, store, and share ALPR data. For example, Vigilant and other ALPR operators are barred from sharing California ALPR data with federal or out-of-state law enforcement agencies. For years, Vigilant has blatantly violated these limits, imposing minimal restrictions on nationwide access to California ALPR data, facilitating nationwide sharing of ALPR data on a massive scale. Vigilant could easily implement policies and design its system in compliance with the ALPR Privacy Act; indeed, it is legally required to do so. But Vigilant has instead encouraged its customers to illegally share information about California drivers' daily movements. In so doing, Vigilant has ignored its duties under California law.

Plaintiff brings this Class Action Complaint against Vigilant individually and on behalf of all others similarly situated, and alleges upon personal knowledge and their counsel's investigations as follows:

### NATURE OF THE CASE

1.    Vigilant has created an Orwellian mass-surveillance infrastructure that is practically impossible to avoid, particularly for anyone operating a vehicle in the towns and cities across the country where Vigilant has installed its cameras. Vigilant violates California law by

1

CLASS ACTION COMPLAINT

amassing and sharing data on California drivers with out-of-state and federal law enforcement agencies. Vigilant attempts to evade responsibility and shift liability for its violations by pointing fingers at its own customers.[1] But Vigilant cannot rely on weaponized incompetence when its obligations under California law are clear.

2.      Vigilant's ALPR technology captures, analyzes, and shares vehicle data, including a vehicle's license plate number, often paired with any distinguishing features. Vigilant aggregates and permits its customers to search this data, which reveals the vehicle's location and movements over time. Vigilant markets its video-surveillance-as-a-service (VSaaS) platform as able to "[f]ind [a] needle in the haystack."[2] It manufactures, owns, and operates ALPR cameras. And Vigilant also creates, maintains, and controls data warehouses, web interfaces, and applications that enable its customers to access and analyze ALPR data gathered by other customers.

3.      Vigilant operates ALPRs nationwide, including over a thousand devices throughout California.[3] More than 160 California law enforcement agencies have used Vigilant's ALPR data.[4]

4.      Vigilant places high-definition cameras in fixed, high-traffic locations that record the time and location of any vehicle that passes by, including the license plate number, along with vehicle characteristics such as make, color, and distinguishing features.

5.      While the California Legislature recognizes the benefits ALPR technology can provide to law enforcement agencies, it also recognizes that ALPR technology can invade personal privacy and harm civil liberties.

---

[1] *See VehicleManager Enterprise User Guide*, Motorola Sols., https://docs.motorolasolutions.com/bundle/87977/page/8e3acb80.html [https://perma.cc/5L29-HSPP] ("Refer to your legal department to ensure that data shares are in compliance with any local or state regulations and your Site policies.").
[2] *VehicleManager Brochure*, Motorola Sols., 2, https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vehiclemanager/vehiclemanager_brochure.pdf [https://perma.cc/5S7J-QA94]
[3] *See ALPR Map*, DeFlock, https://deflock.me/map [hereinafter "ALPR Map"].
[4] *Table of Individual Responses to Selected Survey Questions re Automated License Plate Readers*, Auditor of the State of California, https://information.auditor.ca.gov/reports/2019-118/surveys.html.

CLASS ACTION COMPLAINT

6.      California's ALPR Privacy Act[5] explicitly prohibits California law enforcement agencies and Vigilant from sharing California ALPR data with federal agencies or out-of-state law enforcement agencies. It also requires Vigilant to ensure its California customers use ALPR information only for authorized purposes and maintain reasonable security measures to prevent unauthorized access and use. The ALPR Privacy Act further requires Vigilant to implement and make conspicuous on its website an ALPR usage and privacy policy containing several specific provisions. Vigilant has blatantly violated these requirements for the California entities using its products and services.

7.      Vigilant's business practices flout California law. These practices include maintenance of "[b]illions of historical detections shared between agencies and from our commercial partner network," aggregating data from Vigilant databases across the country and making this information available to state and federal law enforcement nationwide.[6] Vigilant also shares its over 7 billion records of license plate data with other data brokers, such as Thomson Reuters' CLEAR[7] and Palantir.[8] In its public filings, Vigilant lists California's ALPR law as a material risk to its business.[9]

8.      In fact, Vigilant explicitly advertises its interconnected, nationwide network of ALPR data as a coveted product feature to potential customers. Its marketing brochure for law enforcement invites agencies to tap into this vast trove of data to "aid detectives in generating

---

[5] Throughout this Complaint, "the ALPR Privacy Act" will refer to the laws codified in Cal. Civ. Code §§1798.90.5 *et seq*.

[6] *License Plate Recognition for Law Enforcement*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/LPR_for_Law_Enforcement_Solution_Brief.pdf [https://perma.cc/342P-XA23] [hereinafter "Law Enforcement Marketing Brochure"].

[7] *The Data Broker to Deportation Pipeline*, Just Futures L., https://static1.squarespace.com/static/62c3198c117dd661bd99eb3a/t/62df020189b0681d1b9398a8/1658782211567/Commercial+and+Utility+Data+Report.pdf, at 8.

[8] *Vigilant Solutions (Motorola Solutions) — License Plate Reader Network for ICE*, Transparency Cascade Press, https://detention-pipeline.transparencycascade.org/players/contractors/vigilant-solutions-motorola/.

[9] 2025 10-K, Motorola Solutions, Inc., 18, https://www.motorolasolutions.com/content/dam/msi/investors/doc_financials/2025/q4/msi_2025_10-k.pdf.

3

CLASS ACTION COMPLAINT

leads and even determin[e] the probable location of vehicles of interest using [Vigilant's] patented analytics."[10] Vigilant, which is a primary competitor of ALPR company Flock Safety, is billed as the right choice for law enforcement that "needs cross-jurisdictional data sharing."[11]

9. Across California, out-of-state and federal agency sharing is pervasive. An investigation by the Electronic Frontier Foundation found that at least 71 California police agencies' ALPR data was being illegally shared with out-of-state or federal law enforcement.[12] For example, Vigilant allowed 9 federal and 187 non-California entities across 38 states to access University of California, Merced Police Department's ALPR data, and allowed federal and non-California law enforcement agencies to access the ALPR data of the Alameda County Sheriff's Department.[13]

10. Vigilant blatantly ignores the ALPR Privacy Act and its clear and intentional restrictions on ALPR data sharing, so much so that its own customers are often unaware that their data is being shared with out-of-state and federal agencies. For example, a long-time Vigilant Solutions customer, the Modesto Police Department ("MPD"),[14] "recently discovered," after being prompted to respond to ALPR Privacy Act–enabled public records requests, that federal

[10] Law Enforcement Marketing Brochure, *supra* note 6, at 1.

[11] *Flock Safety Alternatives & Competitors: Top ALPR Solutions for Government Agencies in 2026*, Civic IQ (Apr. 3, 2026), https://blogs.civiciq.com/2026/04/03/flock-safety-alternatives-competitors-top-alpr-solutions-for-government-agencies-in-2026/.

[12] *Civil Liberties Groups Demand California Police Stop Sharing Drivers' Location Data With Police In Anti-Abortion States*, Ele. Frontier Found. (May 25, 2023), https://www.eff.org/press/releases/civil-liberties-groups-demand-california-police-stop-sharing-drivers-location-data.

[13] *UC Merced shares data with federal agencies, including Border Patrol*, EdSource (Apr. 24, 2026), https://edsource.org/updates/student-population-at-risk-uc-merced-shares-data-with-federal-agencies; Letter from Jennifer Pinsof, Staff Attorney, Elec. Frontier Found.; Matt Cagle, Senior Staff Att'y, ACLU Found. of N. Cal. to Yesenia L. Sanchez, Alameda Cnty. Sheriff; and Donna Ziegler, Cnty. Counsel, Alameda Cnty. (Mar. 18, 2024), https://www.eff.org/files/2024/04/18/2024-03-18_acso_alpr_letter.pdf.

[14] *Response to the Survey From—Modesto Police Department*, Auditor of the State of Cal., https://information.auditor.ca.gov/reports/2019-118/surveys/modesto_police_department.html.

4

CLASS ACTION COMPLAINT

agencies such as Border Patrol still had access to its cameras' data, "[d]espite [MPD's prior] attempts to bring the system into compliance with state law" by disabling such data sharing.[15]

11.     As part of a lawsuit to stop the El Cajon Police Department from permitting illegal ALPR information sharing, the California Attorney General stated: "When information about Californians leaves the state, we no longer have any say over how it is used or shared. That's why the California Legislature passed the ALPR Privacy Act — to ensure information about Californians remains here in California." "California law prohibits the sharing of license plate data with federal and out-of-state agencies" and doing so "jeopardize[s] the privacy and safety of individuals in its community."[16]

12.     Vigilant has shown complete and continued disregard for California law. Plaintiff now brings this class action lawsuit alleging violations of the ALPR Privacy Act, California's Unfair Competition Law, and California Constitutional and common law and requesting damages and injunctive relief.

## PARTIES

13.     Plaintiff Aaron Michael Roberts is a natural person and a citizen of the State of California. Plaintiff Roberts resides in Pleasanton, California.

14.     Defendant Vigilant Solutions, LLC is a corporation formed under the laws of Delaware. It is headquartered in Pleasanton, California. Defendant Vigilant Solutions, LLC is effectively a wholly owned subsidiary of Defendant Motorola Solutions, Inc. Vigilant Solutions was acquired by Motorola Solutions in January 2019 through VaaS International Holdings, a holding company owned by Motorola Solutions, Inc. In short, Vigilant is a wholly-owned subsidiary of VaaS, which is itself a wholly-owned subsidiary of Motorola Solutions.

---

[15] Julietta Bisharyan, *Modesto police find federal agencies had prohibited access to license plate data*, The Modesto Bee (updated Mar. 13, 2026), https://www.modbee.com/news/local/article315043571.html [https://archive.fo/kEu5r]; *see also* ALPR Map, *supra* note 3.

[16] Press Release, Off. of the Att'y Gen., Cal. Dep't of Just., Attorney General Bonta Sues El Cajon for Illegally Sharing License Plate Data with Out-of-State Law Enforcement (Oct. 3, 2025), https://oag.ca.gov/news/press-releases/attorney-general-bonta-sues-el-cajon-illegally-sharing-license-plate-data-out.

CLASS ACTION COMPLAINT

15.    Defendant Motorola Solutions, Inc. is a corporation formed under the laws of Delaware. It is headquartered in Chicago, Illinois.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

16.    This Court has jurisdiction over this controversy under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs, there are over 100 putative Class Members, and Plaintiff Roberts is a citizen of a different state than Defendant Motorola Solutions, Inc.

17.    This Court has personal jurisdiction over Defendant Vigilant Solutions, LLC because it is headquartered in California and regularly conducts business within this state.

18.    This Court has personal jurisdiction over Defendant Motorola Solutions, Inc. because it is licensed to do business in California, regularly conducts business in California, and purposefully collects the ALPR data of California residents and other drivers within California. Motorola also markets and sells its products to California customers. Motorola, therefore, has sufficient minimum contacts such that exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Indeed, Motorola has numerous contracts with California law enforcement agencies. Additionally, Motorola has over a thousand cameras located in California, which it uses to take billions of license plate scans of California vehicles, and regularly interacts with California law enforcement agencies. Plaintiff's claims arise out of and relate to Motorola's California contacts.

19.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District. Accordingly, under Local Rule 3-2, this matter should be assigned to the San Francisco Division.

CLASS ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

I.  **ALPR Cameras and California's ALPR Privacy Act**

20.  Modern ALPR technology uses specialized cameras and software to automatically scan, record, and convert vehicle license plates into digital data.[17] These systems are typically mounted onto local infrastructure and scan the license plate of every passing vehicle. While each camera captures one point in time, the data from each camera is merged to track and map a vehicle's movements across entire regions at all hours of the day, every day of the year. The ALPR cameras capture images of license plates, using AI and Optical Character Recognition (OCR) to convert the images into machine-readable text in real time.

21.  In 2015, the California Legislature enacted the ALPR Privacy Act to mitigate ALPR systems' risks to privacy and initiated strict requirements on operators and users of ALPR surveillance. The legislature noted that by aggregating license plate numbers with specific locations and timestamps, operators can reconstruct a person's exact location and day-to-day patterns:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system. This bill will put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users.[18]

22.  ALPR surveillance occurs almost exclusively without drivers' knowledge because it targets both active drivers and stationary vehicles parked on public streets in view of Vigilant technology.

---

[17] ALPR camera technology is distinguishable from a standard traffic camera. Traffic cameras only record specific violations at a single point in time, such as speeding on a stretch of road or running a red light at an intersection. In contrast, ALPRs are always recording, documenting, and uploading information into a centralized data store. Thus, ALPRs capture all vehicles that pass by ALPR cameras through a city or region. *See* Mario Lotmore, *Somebody's watching me: Flock versus red light cameras in Lynnwood*, LYNNWOOD TIMES (Nov. 10, 2025), https://lynnwoodtimes.com/2025/11/10/red-light.

[18] S. Comm. on Transportation and Housing, Bill Analysis, SB 34, ¶ 3 (2015).

7

CLASS ACTION COMPLAINT

23.     Vigilant has specifically ignored the ALPR Privacy Act's strict operator and end-user requirements.

24.     Cal. Civ. Code § 1798.90.5(c) defines an "ALPR operator" as "a person that operates an ALPR system, but does not include . . . a transportation agency when subject to Section 31490 of the Streets and Highways Code." Vigilant is an ALPR operator because it operates its own ALPR systems and is not a transportation agency subject to Section 31490 of the Streets and Highways Code.

25.     Cal. Civ. Code § 1798.90.5(a) defines an "ALPR end-user" as "a person that accesses or uses an ALPR system." Vigilant is an ALPR end-user because it accesses or uses an ALPR system to make ALPR data available to its customers; to provide, create, and improve its products and services; and provide analytics to customers.[19]

26.     Vigilant's customers, including law enforcement agencies, are also ALPR end-users because they access the ALPR data stored in Vigilant's ALPR system.

27.     The ALPR Privacy Act mandates that *both* operators and end-users and customers adhere to five fundamental requirements:[20]

    a.  **The Security Requirement:** Both ALPR operators and end-users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal Civ. Code § 1798.90.51(a); *id.* § 1798.90.53(a).

    b.  **The Privacy Requirement:** Both ALPR operators and end-users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for

---

[19] *License plate recognition usage and privacy policy*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/lpr_usage_and_privacy_policy.pdf [https://perma.cc/X8NM-QQNK].
[20] Cal. Civ. Code § 1798.90.5.

CLASS ACTION COMPLAINT

individuals' privacy and civil liberties." *Id*. § 1798.90.51(b)(1); *id*. § 1798.90.53(b)(1).

 c. **The Notice Requirement:** Both ALPR operators and end-users must post the usage and privacy policy "conspicuously" on their website and include the following information:

  i. The authorized purposes for using the ALPR system and collecting ALPR information.

  ii. A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

  iii. A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

  iv. The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

  v. The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

  vi. A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

  vii. The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

*Id*. §§ 1798.90.51(b), 1798.90.53(b).

28. Crucially, ALPR operators like Vigilant must also comply with two additional requirements to ensure consumer privacy and protect against unauthorized access:

 a. **The Audit Requirement.** ALPR operators must maintain a record of the times their ALPR system is accessed, whether by the operators, its employees, or an end-

9

CLASS ACTION COMPLAINT

user. *Id*. § 1798.90.52(a). The audit trail must note the date and time of the query, the data that was queried, who queried it, and the purpose of the query. *Id*. § 1798.90.52(a).

     b. **The Proper Use Requirement.** ALPR operators must also "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy . . . ." *Id*. §1798.90.52(b).

29. California public agencies collecting ALPR data may not share ALPR data with federal agencies or out-of-state law enforcement agencies. "A public agency ***shall not*** sell, share, or transfer ALPR information, except to another public agency, and only as otherwise permitted by law." *Id*. § 1798.90.55(b) (emphasis added).

30. "Public agency" for purposes of the ALPR Privacy Act means "the state, any city, county, or city and county, or any agency or political subdivision of the state or a city, county, or city and county, including, but not limited to, a law enforcement agency." *Id*. § 1798.90.5(f).

31. The California AG has interpreted this plain text of the ALPR Privacy Act (including, crucially, §§ 1798.90.5(f) & 1798.90.55(b)) as permitting sharing of ALPR data only with other California state and local agencies.

32. The California AG emphasized:[21]

Importantly, the definition of 'public agency' is limited to state or local agencies, including law enforcement agencies, and does not include out-of-state or federal law enforcement agencies. (See Civ. Code, § 1798.90.5, subd. (f).) Accordingly, [the ALPR Privacy Act] does not permit California LEAs [Law Enforcement Agencies] to share ALPR information with private entities or out-of-state or federal agencies, including out-of-state and federal law enforcement agencies. This prohibition applies to ALPR database(s) that LEAs access through private or public vendors who maintain ALPR information collected from multiple databases and/or public agencies.[22]

33. Likewise, the California AG has clarified that, under the ALPR Privacy Act, "ALPR operators [like Vigilant] . . . must develop a usage and privacy policy, which must be

---

[21] John D. Marsh, Div. of L. Enf't, Cal. Dep't of Just., Info Bull. 2023-DLE-06, California Automated License Plate Reader Data Guidance (Oct. 27, 2023), https://oag.ca.gov/system/files/media/2023-dle-06.pdf.

[22] *Id*.

10

CLASS ACTION COMPLAINT

conspicuously posted on their website, and must contain provisions designed to 'protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.'"[23]

34.    The ALPR Privacy Act contains no exceptions that would permit sharing ALPR data collected in California with federal or out-of-state agencies for any purpose. Consistent with the California AG's interpretation of the ALPR Privacy Act, any such sharing is clearly prohibited by the Act's plain text.

35.    An individual harmed by a violation of the ALPR Privacy Act—"including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system"—may bring a civil suit "against a person who knowingly caused the harm" and recover (1) actual damages, but not less than liquidated damages in the amount of $2,500, (2) punitive damages upon proof of willful or reckless disregard of the law, (3) reasonable attorney's fees and other litigation costs reasonably incurred, and (4) other preliminary and equitable relief as the court determines to be appropriate. *Id*. § 1798.90.54.

36.    Here, Vigilant has knowingly been in violation of the ALPR Privacy Act since its enactment in 2015, and its violations are made more egregious by its proprietary technologies described below.

**II.    Vigilant and Motorola's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories in Violation of California Law**

37.    In the decade since the ALPR Privacy Act was enacted, ALPR camera technology has become more sophisticated, as have the software and algorithms that companies like Vigilant use to analyze and organize that data. One of the primary shifts between historical and modern ALPR technology is the transition from merely capturing static images of license plates to conducting real-time analysis and extensive tracking of license plates and vehicles.

---

[23] *Id*.

11

38.     ALPR cameras, including Vigilant's, "automatically capture all license plate numbers that come into view, along with the location, date, and time."[24]

39.     Vigilant captures vehicle data and identifies automobiles through an integrated system of hardware, artificial intelligence, and cloud computing that goes far beyond just collecting license plates.

40.     Advancements in camera technology have allowed for the widespread proliferation of ALPR cameras. Vigilant has bragged about securing over 3,000 law enforcement agencies as clients.[25] The company offers easy access to its over 7 billion records of license plate data and adds 150 million more scans every month.[26] Vigilant has an enormous network of cameras deployed across the country as part of its "'hardware-as-a-subscription' offerings for law enforcement," which it markets as "simplifying procurement by offering cameras in a predictable subscription" model.[27]

41.     Vigilant offers several ALPR camera models, including its L6Q, L6D, L5F Fixed, and L5M Mobile, which can be mounted on police vehicles for free-wheeling license plate surveillance.[28]

[24] *Street Level Surveillance, Automated License Plate Readers*, Elec. Frontier Found. (October 1, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs.
[25] Conor Friedersdorf, *An Unprecedented Threat to Privacy*, The Atlantic (Jan. 27, 2016), https://www.theatlantic.com/politics/archive/2016/01/vigilant-solutions-surveillance/427047/.
[26] *The Data Broker to Deportation Pipeline*, *supra* note 7 at 8.
[27] 2025 10-K, Motorola Solutions, Inc., *supra* note 9 at 35.
[28] *See Automatic Number Plate Recognition (ANPR) Systems*, Motorola Sols., https://www.motorolasolutions.com/en_xa/video-security-access-control/number-plate-recognition-camera-systems.html [https://perma.cc/7MZB-UWAF]; *L6D Dual-Purpose LPR Camera*, Motorola Sols., https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l6d-dual-purpose-lpr.html [https://perma.cc/2NWZ-7FD3].

12

*Vigilant Camera Offerings*


L6Q


L5F Fixed


L6D


L5M Mobile

42.    Vigilant advertises that its cameras' "long-range, integrated infrared (IR) illumination and a new starlight sensor enable you to scan vehicles even in complete darkness."[29]

43.    Vigilant ALPR cameras capture photos of passing vehicles, along with date, time, and GPS coordinates.[30]

---

[29] *See Id.*; *The Best Camera to Start Your License Plate Recognition Program*, Motorola Sols., https://www.motorolasolutions.com/en_us/blog/l6q-license-plate-recognition-program [https://perma.cc/RHB7-CGPV].

[30] *Go Beyond Basic License Plate Recognition with VehicleManager*, Motorola Sols. (Nov. 18, 2024), https://www.youtube.com/watch?v=3RF0KWGZVzg&t=80s.

CLASS ACTION COMPLAINT

*Vigilant Vehicle-Detection Records (with Geolocation Pins and Timestamps)*



44.    Vigilant uses OCR software to isolate vehicle license plates from the images and converts them into machine-readable text, i.e., the plate number. Vigilant ALPR cameras capture at least the following information:[31]

    a.  License plate image;

    b.  Vehicle image;

    c.  Vehicle characteristics (e.g., color, make, model, and other vehicle attributes such as any vehicle accessories, damage, promotional writing, and bumper stickers);

    d.  Vehicle speed and travel direction;[32]

---

[31] *VehicleManager 7.0 User Guide - License Plate Query*, Motorola Sols., https://docs.motorolasolutions.com/bundle/84468/page/38f27c98.html [https://perma.cc/3HXM-ZPL8]; *VehicleManager*, Motorola Sols., https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/vehiclemanager-lpr-analytics-software.html [https://perma.cc/D345-UTDF].

[32] *Introduction to the L6D Dual-Purpose License Plate Recognition Camera*, Motorola Sols. (Jul. 28, 2025), https://www.youtube.com/watch?v=AqmVH5mokTE&list=PL-qcM_OQqRghfZaz-s6jxcDMBq5msT9Fy&index=11.

CLASS ACTION COMPLAINT

     e.   License plate number;

     f.   License plate state;

     g.   Date;

     h.   Time; and

     i.   Camera location.

*Vigilant Marketing Material*[33]



45.     Vigilant transmits these images and extracted information to its cloud servers. Once in the cloud, Vigilant then cross-checks the plate number against official state and law enforcement databases and feeds the ALPR data into a myriad of algorithms and tools to provide its customers with an ever-growing trove of information.

46.     Vigilant tells potential customers, "No license plate, no problem"; the company's powerful "AI Assist" enables customers to search for vehicles using natural language if they don't have a license plate number to search.[34] For example, a user could search for "red Mazda hatchback bumper sticker California today" to find all red Mazdas with bumper stickers captured in California today by the camera networks the user has access to. Vigilant's powerful tools allow

---

[33] *Id.*

[34] *VehicleManager Brochure*, *supra* note 2.

CLASS ACTION COMPLAINT

its customers to search for cars and people using granular details, and even narrow the search to vehicles near certain locations, such as parks.[35]

47.    Vigilant's marketing material tells police agencies that if they have no leads in a case, it's not a problem; Vigilant's ALPR software can help them identify burglary suspects based on vehicles in close proximity to the burglary site, drug trafficking suspects based on vehicles that appear to travel together (which Vigilant's software can infer to be part of a "trafficking convoy"), and can "[f]ind a suspect on the run" by tracking their vehicle to their most commonly-visited locations.[36] But error rates for ALPR technology are high (at least 1 in every 10 vehicles) and have resulted in innocent Californians being stopped and held at gunpoint by police.[37]

48.    From a single set of vehicle images, Vigilant thus creates detailed, searchable, and dangerously actionable data records that extend far beyond just a license plate number.

49.    Vigilant's high-end but inexpensive tools and the associated databases Vigilant has created grant law enforcement agencies across the country instant access to shared data from thousands of cameras—exactly the kind of practice the ALPR Privacy Act regulates.

50.    More than 160 California law enforcement agencies have used Vigilant's ALPR data.[38]

51.    Areas of California like Los Angeles, Riverside, Sacramento, Pleasanton, Modesto, and Chico are **blanketed** with Vigilant cameras:

---

[35] *Id*. at 7.

[36] *Id.* at 3.

[37] Adam Schwartz, *The Human Toll of ALPR Errors,* Elec. Frontier Found. (Nov. 1, 2024), https://www.eff.org/deeplinks/2024/11/human-toll-alpr-errors.

[38] *Table of Individual Responses to Selected Survey Questions re Automated License Plate Readers*, *supra* note 4.

16

CLASS ACTION COMPLAINT

*Select Vigilant Camera Locations within California*[39]

52.    Vigilant boasts that over 3,734 law enforcement agencies nationwide use its camera network and claims to collect over 100 million plate captures **per day**.[40] For reference, the entire adult population of the United States is only about 270 million people. In its marketing material, Vigilant touts its expansive "[c]amera network," from which agencies "can collect detection data from any LPR camera systems," and its generous "[d]ata sharing," which allows agencies to "'grow' their network" without buying or leasing any cameras.[41] Vigilant displays the following map in its marketing material to showcase the vastness of its base of camera installations, from which agencies can draw data to "'grow' their network," using Vigilant's over 35 billion historical vehicle detections:[42]

[39] *ALPR Map*, *supra* note 3.
[40] *VehicleManager Brochure*, *supra* note 2, at 6.
[41] *Id.*
[42] *Id.*; Vigilant PlateSearch Brochure, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vigilant-platesearch/vigilant_platesearch_brochure.pdf [https://perma.cc/W446-6CKC].

17

CLASS ACTION COMPLAINT

*Vigilant Marketing Material: Vigilant's Nationwide Camera Network*



53.     Vigilant encourages its customers to share data because there is a "data sharing network effect" when more Vigilant devices come online and make data available to other participants in Vigilant's nationwide surveillance network.[43]

54.     Vigilant's vast array of cameras enables its customers to track a vehicle across multiple locations, revealing "sensitive details about where individuals work, live, associate, worship, seek medical care, and travel."[44] Bypassing warrants and laws designed to protect personal liberties, Vigilant's ALPR system tracks, catalogues, and analyzes every turn of every driver's route, looking for "suspicious activity" to generate new business—not safer communities. As noted in recent reporting by the ACLU, each of Vigilant's advanced analytics and AI-powered

---

[43] *Id.* at 7.

[44] Letter from Jennifer Pinsof, Staff Att'y, Elec. Frontier Found.; Matt Cagle, Senior Staff Att'y, ACLU Found. of N. Cal.; Mohammad Tasjar, Senior Staff Att'y, ACLU Found. of S. Cal.; & David Trujillo, Chief Program & Strategy Officer, to Att'y Gen. Rob Bonta, Off. of the Att'y Gen., Cal. Dep't of Just., at 2 (Jan. 31, 2024) [hereinafter EFF–ACLU Joint Letter], https://www.eff.org/files/2024/01/30/2024-01-31_letter_to_ag_bonta_re_sb_34_final.pdf (citing *Automatic License Plate Readers*, Elec. Frontier Found. (Mar 29, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs; *You Are Being Tracked: How License Plate Readers Are Being Used to Record Americans' Movements*, ACLU (July 2013), https://www.aclu.org/you-are-being-tracked).

18

CLASS ACTION COMPLAINT

features "are variants on the same theme: using the camera network not just to investigate based on suspicion, but to generate suspicion itself."[45]

55.     While law enforcement may like how Vigilant makes their jobs easier, the convenience to police does not justify the increasingly invasive and pervasive surveillance and profiling of innocent Californians—which is highly offensive to a reasonable person.

**III.   Vigilant and Motorola Violate California Law by Sharing California ALPR Data with Out-of-State and Federal Agencies**

56.     Vigilant's amassing of ALPR camera data, its proprietary surveillance tools, and its ability to profile and track vehicles all raise serious privacy concerns. Of equal concern is that Vigilant shares this sensitive information with agencies outside of California's jurisdiction, robbing California drivers of the privacy protections afforded them under California law.

57.     While the ALPR Privacy Act explicitly prohibits California state and local agencies from sharing ALPR data with federal or out-of-state law enforcement, Vigilant's infrastructure and business model do just that. Vigilant's national network and permissive sharing tools enable and encourage out-of-state state and federal law enforcement entities like ICE to track California drivers.

58.     **LEARN and NVLS:**  Vigilant stores billions of historical vehicle detection records in its cloud servers as part of its Law Enforcement Archival Reporting Network (LEARN).[46]  Vigilant brags that its LEARN software enables 217,751 agency-to-agency license

---

[45] *See* Jay Stanley, *Surveillance Company Flock Now Using AI to Report Us to Police if It Thinks Our Movement Patterns Are "Suspicious"*, ACLU: NEWS & COMMENTARY (Aug. 7, 2025), https://www.aclu.org/news/national-security/surveillance-company-flock-now-using-ai-to-report-us-to-police-if-it-thinks-our-movement-patterns-are-suspicious [hereinafter Jay Stanley, *"Suspicious" Movement Patterns*].

[46] *Vigilant LEARN CJIS Security Compliance Guide*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/vigilant_learn_cjis_security_compliance_guide.pdf [https://perma.cc/29CJ-GSGN]; *Vigilant Solutions Enables Over 217,000 Law Enforcement Data Sharing Relationships*, Homeland Security Today (Oct. 26, 2015), https://www.hstoday.us/subject-matter-areas/transportation/vigilant-solutions-enables-over-217-000-law-enforcement-data-sharing-relationships/; *Vigilant PlateSearch Brochure*, *supra* note 42; *Vigilant ClientPortal Integration*, Avigilon,

19

plate reader LPR data sharing relationships in the United States, enabling agencies to continuously monitor the movements of over 17 million actively-tracked, unique vehicles-of-interest across the U.S.[47] Vigilant's National Vehicle Location Service (NVLS) creates a "a pool of data accessed by scores of agencies," which Vigilant used to offer to police free-of-charge.[48] In its marketing material, Vigilant tells law enforcement that it "is the only LPR (license plate recognition) Company capable of architecting a national LPR data conglomerate to proactively deliver as many as 100,000 LPR data scans to law enforcement weekly via NVLS. Vigilant Video is creating a virtual digital pipeline—a universal data system with one common goal in mind—making it easier for law enforcement to 'Catch the Bad Guy.'"[49] Some police departments, such as San Diego PD, admit they "subscribe[] to Vigilant in order to gain access to their nationwide database" despite "not hav[ing] any hardware assets" from Vigilant.[50]

59.    **VehicleManager and Data Sales:** Vigilant markets and sells its powerful ALPR data analytics software under the name "VehicleManager."[51] Vigilant's marketing brochure for VehicleManager says that the massive trove of ALPR data is "cumbersome," so VehicleManager can help you create "actionable intelligence" to "[f]ind the needle in the haystack" and "[d]iscover new vehicle leads."[52] The brochure says that VehicleManager will grant access to Vigilant's expansive "[c]amera network," from which agencies "can collect detection data from any LPR camera systems," including generous "[d]ata sharing," which allows agencies to "'grow' their network" without buying or leasing any cameras.[53]

---

https://www.avigilon.com/fs/documents/Vigilant_ClientPortal_Integration-Fact_Sheet.pdf [https://perma.cc/8DMA-R4GC].

[47] *Vigilant Solutions Enables Over 217,000 Law Enforcement Data Sharing Relationships, supra* note 46.

[48] *Data Driven: What We Learned*, Elec. Frontier Found., https://www.eff.org/pages/what-we-learned.

[49] *HighPoint PD Public Records*, ACLU, https://www.aclu.org/wp-content/uploads/document/alprpra_HighPointPD_HighPointNC.pdf.

[50] *Annual Surveillance Report 2024*, San Diego Police Dep't, 49, https://www.sandiego.gov/sites/default/files/2025-02/sdpd-annual-surveillance-report-2024.pdf.

[51] *VehicleManager Brochure*, *supra* note 2.

[52] *Id*.

[53] *Id*.

CLASS ACTION COMPLAINT

60.     VehicleManager allows agencies to upload a Memorandum of Understanding (MOU) that governs their sharing of ALPR data with other agencies, but Vigilant provides a "Default MOU" if agencies fail to do so.[54] Updating the MOU fails to have any actual effect on the data sharing settings within the VehicleManager platform.[55]

61.     VehicleManager makes it easy for any law enforcement agency to share its ALPR data with "**--ALL--**" other law enforcement agencies, including federal agencies and out-of-state police.[56]

62.     Vigilant specifically encourages agency clients to "[c]ontribute detections to the License Plate Recognition Data (LPRD) program funded by the Department of Justice,"[57] even though this program is currently "unavailable."[58] It is unclear what opting into sharing ALPR data with the LPRD program does and who Vigilant ultimately shares this information with.

63.     Vigilant tells its law enforcement customers that tapping into shared data is "as easy as adding a friend on your favorite social media platform."[59]

64.     Vigilant's contracts with some police departments, such as Chula Vista, allow the company to sell the department's ALPR data as long as it is "anonymized."[60] Vigilant has taken the position that *all* "LPR  is anonymous data – letters and numbers on a license plate" because "[t]here is no information about a registered owner or other person captured by an LPR system."[61]

---

[54] *VehicleManager 7.0 User Guide, Data Sharing*, Motorola Sols., https://docs.motorolasolutions.com/bundle/84468/page/6df9acd1.html [https://perma.cc/BW2N-DEAW].
[55] *See id*.
[56] *Id*. ("To automatically accept [all] Detection shares, select **--ALL--**.").
[57] *Id.* (Screenshot under "Data Sharing" section noting "Contribute Detections to the License Plate Recognition Data (LPRD) program funded by the Department of Justice.").
[58] *LPR for Police Leadership: The Experience*, George Mason University, https://cebcp.org/lpr/lpr-for-police-leadership/lprd-license-plate-recognition-data-system/.
[59] Dave Maass, *ICE Accesses a Massive Amount of License Plate Data. Will California Take Action?*, Elec. Frontier Found. (Jan. 29, 2018), https://www.eff.org/deeplinks/2018/01/ice-accesses-massive-amount-license-plate-data-will-california-take-action.
[60] Amita Sharma, *Chula Vista's contract with Motorola sells out residents' privacy, advocates say*, KPBS (Jan. 13, 2022), https://www.kpbs.org/news/local/2022/01/13/chula-vistas-contract-with-motorola-sells-out-residents-privacy-advocates-say.
[61] *Vigilant Solutions Enables Over 217,000 Law Enforcement Data Sharing Relationships*, *supra* note 47.

CLASS ACTION COMPLAINT

A former sales employee for Vigilant said it was the "worst and dirtiest company I've worked for."[62]

65.    These broad sharing practices provide avenues for illegal access to law enforcement ALPR data. "[ICE] often receives plate data indirectly through local and state agencies connected to commercial networks. ICE can therefore access LPR data from jurisdictions that, on paper, restrict sharing plate information with federal immigration authorities."[63]

66.    Importantly, Motorola Solutions is not a mere passive investor in Vigilant. Motorola directly designs, develops, markets, and promotes the VehicleManager platform—the ALPR analytics software at the heart of this case—under the Motorola Solutions brand. Motorola's own public-facing product webpage describes VehicleManager as a product of Motorola Solutions and markets it directly to law enforcement agencies as a tool that can "[t]ransform license plates into leads with patented, powerful vehicle location analytics and access to billions of detections beyond your own."[64]

67.    Motorola's branded marketing materials describe VehicleManager as a "vehicle location intelligence solution" built to do far more than basic license plate recognition.[65] As Motorola's official VehicleManager brochure explains, the system's stated purpose is to let agencies "find and review the location history of a vehicle of interest and determine where it may be located in the future."[66] The brochure further describes capabilities enabling law enforcement to generate a "heat map" revealing "when the vehicle is most likely to be" at a given location—intelligence derived from amassing and analyzing the location histories of millions of vehicles,

---

[62] *Motorola Solutions,* Glassdoor, https://www.glassdoor.sg/Reviews/Employee-Review-Motorola-Solutions-E427189-RVW89041077.htm.

[63] Anthony Kimery, *ICE's license plate app quietly expands a nationwide surveillance web*, BiometricUpdate.com (Nov. 18, 2025), https://www.biometricupdate.com/202511/ices-license-plate-app-quietly-expands-a-nationwide-surveillance-web.

[64] *Vigilant VehicleManager LPR Software*, Motorola Sols., https://www.motorolasolutions.com/en_xl/video-security-access-control/license-plate-recognition-camera-systems/vigilant-vehiclemanager-lpr-analytics-software.html.

[65] *VehicleManager Brochure*, *supra* note 2.

[66] *Id.*

22

CLASS ACTION COMPLAINT

including those of law-abiding California residents with no connection to any criminal investigation.[67]

68.    Central to Motorola's VehicleManager business model is data sharing across agency lines, including across state lines. Motorola's brochure touts the platform's ability to let agencies "grow" their surveillance network by sharing data with "business partners," and advertises that the system currently connects "3,734+ agencies and business partners capable of data sharing" and processes "100.1M+ daily detections from agency and business partners."[68]

69.    Motorola's product webpage similarly advertises access to "billions of detections beyond your own," inviting California law enforcement agencies to tap into a national surveillance network that includes data shared from out-of-state and federal partners.[69] This cross-jurisdictional data sharing, which Motorola affirmatively markets and enables, is precisely what California's ALPR Privacy Act prohibits.

70.    Motorola's VehicleManager system also integrates AI-powered search capabilities that Motorola markets and controls. Motorola's brochure describes an "AI-powered Search Assist" tool embedded in VehicleManager that allows officers to search for vehicles in natural language—including without a license plate number—by describing a vehicle's make, model, color, accessories, damage, and even its environment or surrounding area.[70] Motorola's VehicleManager product webpage likewise promotes this "Assist" feature as part of Motorola Solutions' broader AI suite, describing it as "thoughtfully integrated to offer insights drawn from your entire workflow."[71] Motorola has thus engineered VehicleManager not merely as a passive database, but as an active AI-driven surveillance engine capable of identifying and tracking California drivers' vehicles with increasing granularity.

71.    Motorola's own marketing materials acknowledge that Motorola Solutions, not just Vigilant, owns and controls the ALPR cameras and underlying data infrastructure. The

[67] *Id.*
[68] *Id.*
[69] *Vigilant VehicleManager LPR Software*, *supra* note 64.
[70] *VehicleManager Brochure*, *supra* note 2.
[71] *Vigilant VehicleManager LPR Software*, *supra* note 64.

23

CLASS ACTION COMPLAINT

VehicleManager brochure expressly states that the platform allows agencies to "[m]anage your Motorola Solutions LPR camera systems," confirming that the cameras feeding data into the VehicleManager system are Motorola Solutions' own products.[72]

72. Despite Motorola's claims about data retention flexibility, Motorola's VehicleManager brochure reveals that the platform's built-in data sharing features include "memorandum of understanding (MOU) templates" designed to enable agencies to share ALPR data with "other law enforcement agencies as well as local business partners."[73] These MOU templates—provided and standardized by Motorola—facilitate, encourage, and normalize precisely the kind of cross-jurisdictional and out-of-state ALPR data sharing that California law prohibits. By embedding data-sharing templates into the platform's design, Motorola has baked legal violations into VehicleManager's architecture.

73. Motorola markets VehicleManager directly to California law enforcement as part of a nationwide public safety ecosystem. Motorola's VehicleManager product webpage offers California agencies the ability to "leverage your local data and/or shared data" to "narrow your investigation" using "the most diverse LPR search platform"—a search platform that, as alleged herein, aggregates California ALPR data and makes it available to out-of-state and federal agencies in violation of the ALPR Privacy Act.[74] Motorola's promotion of VehicleManager thus directly induces California law enforcement agencies to participate in unlawful data sharing practices.

74. **ClientPortal for Private Businesses:** Vigilant markets and sells its ClientPortal ALPR software to private businesses. Vigilant says that "Vigilant ClientPortal empowers your team with detections from your own cameras or from our commercial partner network, patented vehicle location analytics and plate-based enforcement tools to generate actionable insights that grow and protect revenue."[75] Vigilant encourages any private parties that utilize ClientPortal to

---

[72] *VehicleManager Brochure*, *supra* note 2.
[73] *Id.*
[74] *Vigilant VehicleManager LPR Software*, *supra* note 64.
[75] *Vigilant ClientPortal Brochure*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-

24

CLASS ACTION COMPLAINT

"[s]hare data with Vigilant LEARN platform" to provide ALPR data from private cameras to law enforcement agencies, including those out-of-state.[76] Vigilant also encourages ClientPortal users to enable "NICB Sharing," which shares ALPR data from their camera systems with the National Insurance Crime Bureau's centralized Intelligence and Analytics Database, which makes vehicle data available nationwide from over 1,200 member insurance companies, vehicle finance companies, and law enforcement agencies.[77]

75.    **"Side-Door" Access:** A recent investigation reveals that federal agencies also have "side-door" access to Vigilant's ALPR data from California police departments.[78] This method bypasses the need for a formal data-sharing agreements prohibited by the ALPR Privacy Act. Police officers may, in contravention of California law, use their Vigilant system access to run plates on behalf of a federal agent or give their login credentials to a federal agent. For example, ICE agents and CBP agents utilized side-door access to the Long Beach Police Department's ALPR system to unlawfully run 278 and 578 plate searches in just a 9-month period.[79]

76.    This is possible only because Vigilant designed its product to allow local police to perform lookups in Vigilant's ALPR system on behalf of unauthorized external users and has no system for detecting a mismatch between the type of user and the types of searches they are running. This contravenes guidance from the California AG regarding the permissible uses of ALPR data under the ALPR Privacy Act.

**IV.    Vigilant Violates California Law by Failing to Implement an Adequate Policy**

77.    The ALPR Privacy Act requires operators and end-users like Vigilant to implement specific provisions in their usage and privacy policy to protect Californians. Cal. Civ. Code

---

systems/reaperhd-mobile-lpr-system/vigilant_clientportal_fact_sheet.pdf [https://perma.cc/928K-5CH8].

[76] *ClientPortal User Guide*, Data Sharing, Motorola Sols. (Last updated: Dec. 16, 2025), https://docs.motorolasolutions.com/bundle/70659/page/02da2e76.html [https://perma.cc/LGX9-THS7].

[77] *See id*.

[78] Kevin Hessel, *Ark investigation uncovers federal searches of Tiburon license-plate data*, THE ARK (February 8, 2026), https://www.thearknewspaper.com/live/ark-investigation-uncovers-federal-searches-of-tiburon-license-plate-data.

[79] *ICE Accesses a Massive Amount of License Plate Data*, *supra* note 59.

25

CLASS ACTION COMPLAINT

§ 1798.90.52(b); § 1798.90.53(b). Vigilant has a "license plate recognition usage and privacy policy," which was last updated in 2025,[80] but the policy violates California's ALPR statute in the following ways.

78. **Vigilant's Privacy Policy Fails to Respect Californians' Privacy and Civil Liberties.** California's ALPR statute requires that operators and end-users like Vigilant implement a privacy policy designed to "ensure that the access, use, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties." Cal. Civ. Code § 1798.90.51(b)(1). Vigilant's policy is not designed to respect individuals' privacy and civil liberties because it allows widescale surveillance of California's citizens, including their movement patterns over time, and sharing of their sensitive ALPR data to federal agents and police outside California.

79. **Restrictions on Who Can Access ALPR Data.** California's ALPR statute requires Vigilant's privacy policy to describe "the job title or other designation of the employees and independent contractors" who are authorized to use or access the system, or to collect ALPR information. Cal. Civ. Code §§ 1798.90.51(b)(2)(B), 1798.90.53(b)(2)(B). But Vigilant's policy states that "[a]ll employees of the company" and "[a]ll independent contractors of the company" are authorized to use the system, which fails to list all job titles of employees and contractors such that, for example, an outside auditor could evaluate whether access seems appropriate for those job titles. Vigilant fails to enumerate, for example, that it provides access to ALPR data to office managers and HR representatives—which would make apparent the company's lack of justification for doing so.

80. **ALPR Compliance Monitoring.** Vigilant's privacy policy is required to describe "how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws." Cal. Civ. Code §§1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C). Vigilant must have its own ALPR compliance monitoring program and describe the program in its privacy policy. *See id*. But Vigilant failed to adopt *any* compliance program or monitoring and instead put the onus on its

---

[80] *License plate recognition usage and privacy policy*, *supra* note 19.

26

CLASS ACTION COMPLAINT

customers, whom it says are "responsible for ensuring that they and their end-users comply with applicable laws (including data protection and privacy laws)" when using their LPR system or products. Vigilant cannot disclaim its explicit obligation under the ALPR Privacy Act. Vigilant's abdication to its customers of this responsibility for compliance means that Vigilant does not in fact monitor for compliance with applicable privacy laws, including the ALPR Privacy Act. This failure has resulted in the illegal sharing of ALPR data from California law enforcement agencies with out of state and federal law enforcement.

81.     **Restrictions on Sale, Sharing, or Transfer of ALPR Data.** Vigilant is required in its privacy policy to describe the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons." Cal. Civ. Code §§1798.90.51(b)(2)(D), 1798.90.53(b)(2)(D).

82.     Vigilant's policy, however, says only that it "licenses our commercially collected LPR data to customers for the authorized uses" and "[t]hrough an [unnamed] affiliate subsidiary of our parent company, the company collects data for commercial purposes and does not collect data on behalf of law enforcement agencies." The policy also states that "[w]ith respect to data collected by a [law enforcement agency] LEA, we facilitate sharing that data only with other LEAs and, in that case, only to the extent the agency has reviewed and agreed to the share."

83.     This privacy policy fails to inform Californians of the process Vigilant uses for sharing or selling commercial or law enforcement data, including which Vigilant entities control the data, how ALPR data is shared to nationwide surveillance networks (including how it is shared, sold, or integrated with Vigilant's LEARN and National Vehicle Location Service, Thomson Reuters's CLEAR database, Palantir's databases, the DEA's NLPRP database, and the NCIB database), Vigilant's process for determining which entities count as "law enforcement" and/or are eligible to receive law enforcement data, whether information shared by law enforcement is copied and separately stored on Vigilant's servers and/or is used to train Vigilant's AI algorithms, and why Vigilant reserves the right in certain law-enforcement contracts to sell "anonymized" ALPR data and what "anonymized" means to Vigilant. And Vigilant's privacy

policy fails to describe any restrictions on the sharing, sale, or transfer of commercially collected ALPR data.

84.    **Accuracy of ALPR Data.** Vigilant's privacy policy fails to describe "reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Cal. Civ. Code §§1798.90.51(b)(2)(F), 1798.90.53(b)(2)(F). Instead, Vigilant's privacy policy says that ALPR data is "collected" and "included in the system without review," despite acknowledging that "license plate translation is sometimes inaccurate." Vigilant thus has no "reasonable measures" to "ensure the accuracy of ALPR information and correct data errors," in violation of California's ALPR statute.

85.    **Conspicuous Posting Requirement.** The ALPR statute requires that ALPR providers like Vigilant post their privacy policy "conspicuously" on their internet website. Cal. Civ. Code §§1798.90.51(b)(1), 1798.90.53(b)(1). Vigilant has an internet website, but its privacy policy is not posted conspicuously. The Motorola Solutions homepage does not contain a link to the LPR usage and privacy policy.[81] Nor does the "Site Map" web page,[82] the "Trust Center" web page,[83] the "Privacy" sub-page to the "Trust Center" page,[84] or the "Compliance" web page.[85] Even Vigilant's "License Plate Recognition (LPR) Systems" webpage does not contain a link to the LPR usage and privacy policy.[86] Instead, the privacy policy is buried at the bottom of Vigilant's page on specific LPR camera products or software—at the very bottom—under a "Resources" tab[87] and heading.[88] Hiding the LPR usage and privacy policy alongside technical

---

[81] https://www.motorolasolutions.com/en_us.html.
[82] https://www.motorolasolutions.com/en_us/site-map.html.
[83] https://www.motorolasolutions.com/en_us/about/trust-center.html.
[84] https://www.motorolasolutions.com/en_us/about/trust-center/privacy.html.
[85] https://www.motorolasolutions.com/en_us/about/trust-center/compliance.html.
[86] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems.html.
[87] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l5f-fixed-lpr-camera-system.html.
[88] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l6q-quick-deploy-lpr/l6q-details.html.

CLASS ACTION COMPLAINT

specs and product whitepapers is an obvious tactic to make finding Vigilant's LPR privacy policy difficult for the individuals whose ALPR data is actually subject to it.

## V.    Vigilant Violates California Law by Failing to Implement Reasonable Security Procedures to Prevent Unlawful ALPR Information Sharing

86.    The ALPR Privacy Act requires ALPR operators to ensure that information in their ALPR system will be used exclusively for purposes authorized by their usage and privacy policy. Cal. Civ. Code § 1798.90.52(b).

87.    Vigilant's usage and privacy policy states:

> The company authorizes collection of LPR data for the use of the company and its customers consistent with this policy and *in compliance with applicable laws*.
>
> The authorized uses of the LPR system are:
>
> (1) By customers to identify or ascertain the location of a specific vehicle under circumstances when there is a legitimate commercial interest.
>
> (2) By law enforcement agencies for law enforcement purposes.
>
> (3) By the company to (i) make LPR data available to customers and law enforcement agencies (LEAs) for the purposes above, (ii) provide, create, and improve products and services, and (iii) to provide analytics to customers based on company owned aggregated LPR data.[89]

(emphasis added).

88.    By designing its ALPR system to allow out-of-state and federal agency sharing of California law enforcement ALPR data, Vigilant facilitates (and even encourages) unauthorized uses of ALPR data and fails to abide by its statutory duty to ensure compliance with its privacy policy's promise that ALPR data will only be used "in compliance with applicable laws," including California's ALPR Act.

89.    The ALPR Privacy Act requires Vigilant to maintain reasonable security procedures and practices to protect ALPR information from unauthorized access. Cal. Civ. Code

---

[89] *License plate recognition usage and privacy policy*, *supra* note 19.

29

§ 1798.90.51(a). Vigilant's practices, including those listed above, all allow out-of-state and federal law enforcement to access California ALPR data. But for Vigilant's policies, design, and infrastructure technology, California law enforcement agencies could not and would not violate the ALPR Privacy Act as it pertains to their use of Vigilant ALPR information.

90.    Vigilant disavows its compliance responsibilities and insists that its customers—not Vigilant—are the ones who bear the onus for obeying the law. But the burden of compliance rests not just on law enforcement agency customers but on Vigilant and other ALPR operators, too. The ALPR Privacy Act obligates Vigilant as an ALPR operator and end-user to "***ensure*** . . . compliance with applicable privacy laws." *See* Cal. Civ. Code. §§ 1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C) (emphasis added).

91.    While Vigilant maintains that its law enforcement customers choose whether to share LPR data with other customers in accordance with their laws and policies, this fails to acknowledge that the Vigilant platform is the means by which the illegal sharing occurs. Vigilant can and must build its ALPR system to abide by California law.

92.    While some California law enforcement agencies were surprised to learn that their Vigilant systems were sharing information in violation of the ALPR Privacy Act, others shared this information intentionally. Vigilant could have predicted and should have prevented these actions, particularly given the interpretative guidance from and enforcement actions taken by the California Attorney General. Law enforcement agencies (in California and elsewhere) have routinely flouted other California laws relating to, for example, bans on the use of facial recognition technology and the use of drones. Vigilant could not reasonably expect that every single one of its law enforcement customers would properly comply with California's ALPR law, especially when Vigilant encourages data sharing with federal and out-of-state police law enforcement.

93.    Vigilant is in a better position than its law enforcement customers to disable all sharing of Californians' ALPR data from Vigilant's system with out-of-state or federal agencies, and can easily done so. Had Vigilant spent at least as much time restricting unlawful ALPR data sharing as it did *facilitating* and *marketing* such sharing, California law enforcement agencies

30

CLASS ACTION COMPLAINT

would be technologically incapable of unlawfully sharing Californian's sensitive location data through Vigilant's platform.

94.    Had Vigilant implemented required and reasonable measures to prevent out-of-state and federal sharing of California ALPR data, it would have complied with the ALPR Privacy Act itself as well as prevented California law enforcement agencies from violating the ALPR Privacy Act through the Vigilant platform. These steps would be trivial for Vigilant to implement.

## VI.    Vigilant's Security Measures Fall Far Below Reasonable Procedures and Practices

95.    Vigilant violates the ALPR Privacy Act further by failing to implement and maintain reasonable security procedures and practices. Its lax approach to data security has further enabled information-sharing in violation of the ALPR Privacy Act and constitute privacy violations under California law.

96.    For example, Vigilant does not require multifactor authentication ("MFA") when law enforcement end-users access its ALPR database.[90] Mandating MFA—"an everyday, familiar technology"—would prevent rogue California law enforcement officers from easily sharing access credentials with their out-of-state and federal counterparts.

97.    Perhaps ironically, a Motorola Solutions cybersecurity specialist wrote an article in *Police Chief* magazine stating that public safety agencies "are often challenged when it comes to recruiting and retaining experienced cybersecurity personnel," even though "the potential for harm from external factors is substantial."[91]

98.    Vigilant regularly violates the "general tenet of cybersecurity that you should not collect and retain more personal data than you are capable of protecting."[92] An analysis by the

---

[90] *Technical Service Bulletin for VehicleManager 8.0.248*, Motorola Sols., 2, https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vehiclemanager/vehiclemanager_cjis_security_compliance_guide.pdf [https://perma.cc/4JJH-CKJR].
[91] Dave Maass and Cooper Quintin, *New ALPR Vulnerabilities Prove Mass Surveillance Is a Public Safety Threat*, Elec. Frontier Found. (June 18, 2024), https://www.eff.org/deeplinks/2024/06/new-alpr-vulnerabilities-prove-mass-surveillance-public-safety-threat.
[92] *Id.*

31

CLASS ACTION COMPLAINT

Electronic Frontier Foundation found that 99.9% of collected ALPR data was unrelated to any public safety interest.[93]

99.    The Michigan Cyber Command center found a total of seven vulnerabilities in Vigilant devices; two of which were medium severity and five of which were high severity vulnerabilities.[94] One of the most severe vulnerabilities was that every camera sold by Motorola had a Wi-Fi network turned on by default that used the same hardcoded password as every other camera, meaning that if someone was able to find the password to connect to one camera they could connect to any other camera as long as they were near it.[95] Someone with physical access to Vigilant cameras could easily install a backdoor, giving them full access to the camera, allowing them to see all historical license plate data which was stored without any encryption and to view logs containing authentication information which could be used to connect to a back-end server where more information is stored.[96]

100.    Security researcher Matt Brown found more than 150 Motorola ALPR cameras that had exposed their video feeds and were leaking data, as well as broadcasting live footage accessible to anyone on the internet.[97]

101.    Stronger safeguards would include "zero-trust access models, time-limited permissions, and multi-party approval for historical searches."[98]

102.    Vigilant also encourages police to access its ALPR databases through its mobile application, knowing full well that police officers are not typically issued cell phones by their departments, instead relying on two-way radios and mobile data terminals to communicate.[99]

---

[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] Matt Burgess and Dhruv Mehrotra, *License Plate Readers Are Leaking Real-Time Video Feeds and Vehicle Data*, Wired (Jan. 7, 2025), https://www.wired.com/story/license-plate-reader-live-video-data-exposed/.
[98] Juan Martinez, *Police Misuse of ALPR Technology for Stalking Romantic Partners Raises Privacy and Oversight Concerns in U.S. Law Enforcement*, BizTech Weekly (Apr 30, 2026), https://biztechweekly.com/police-misuse-of-alpr-technology-for-stalking-romantic-partners-raises-privacy-and-oversight-concerns-in-u-s-law-enforcement/.
[99] *VehicleManager Brochure, supra* note 2.

32

CLASS ACTION COMPLAINT

Vigilant thus encourages law enforcement officers to access sensitive ALPR through unsecured personal devices.

*Vigilant VehicleManager Brochure*



103.    The Auditor for the State of California criticized Vigilant for this practice, stating that "[b]ecause the Vigilant software is by default accessible via the Internet, an officer may be able to access it using his or her personal device," and "[t]he ability to access ALPR data in this manner bypasses the agencies' network security safeguards and violates CJIS policy requiring agencies to monitor and control access to the data."[100] The Auditor recommends, "One way to prevent users from signing in to the Vigilant system using personal devices would be to implement authentication controls, such as two-factor authentication," which "involves a second level of verification, such as a passcode sent to a specific device, and allows agencies to require that the passcode be sent only to department-issued devices."[101] Vigilant fails to implement such security safeguards to restrict access to ALPR data to only approved department-issued devices.

104.    Vigilant claims to be setting the standard for public safety technology and cybersecurity, yet continues to be in blatant violation of the ALPR Privacy Act.

---

[100] *Audit Results*, Auditor for the State of Cal., https://information.auditor.ca.gov/reports/2019-118/auditresults.html.
[101] *Id.*

CLASS ACTION COMPLAINT

## VII. Vigilant's Facilitation of California Law Enforcement Agencies' Unlawful Information Sharing is Highly Offensive

105. The ALPR Privacy Act is necessary because ALPR systems are not neutral public-safety tools. On paper, they are used to solve crime and make people feel safer. In practice, they disproportionately target low-income neighborhoods and communities and can reveal sensitive information about a person, threaten access to healthcare, and chill free speech.

106. **ALPR Networks Can Amplify Discriminatory Policing Practices.** As noted by several privacy advocates and the ACLU, "police often disproportionately deploy license plate readers in communities experiencing poverty and historically overpoliced communities of color, regardless of crime rates."[102] There are numerous accounts of police relying on ALPR data to hold innocent people-of-color at gunpoint.[103] ALPR systems have approximately a 1 in 10 error rate, and police frequently rely on ALPR when mistaking law-abiding citizens for car thieves, particularly for people-of-color.[104] Improper sharing of ALPR data increases the risk to the lives of everyday people.

107. **Threats to Access to Abortion and Gender-Affirming Care.** The weaponization of ALPR data also threatens individuals seeking constitutionally protected healthcare in California. Location information from California-based ALPR cameras can be used by agencies in restrictive states to monitor clinics, track vehicles, and survey the movements of patients and

---

[102] EFF–ACLU Joint Letter, *supra* note 44, at 2 (citing Dave Maass & Jeremy Gillula, *What You Can Learn from Oakland's Raw ALPR Data*, Elec. Frontier Found. (Jan. 21, 2015), https://www.eff.org/deeplinks/2015/01/what-we-learned-oakland-raw-alpr-data; Barton Gellman & Sam Adler-Bell, *The Disparate Impact of Surveillance*, Century Found. (Dec. 21, 2017), https://production-tcf.imgix.net/app/uploads/2017/12/03151009/the-disparate-impact-of-surveillance.pdf); *see also, e.g.*, Kaveh Waddell, *How License-Plate Readers Have Helped Police and Lenders Target the Poor*, The Atlantic (Apr. 22, 2016), https://www.theatlantic.com/technology/archive/2016/04/how-license-plate-readers-have-helped-police-and-lenders-target-the-poor/479436 (summarizing data indicating that Oakland Police Department deployed ALPRs disproportionately, often in low-income areas and in neighborhoods with high concentrations of African-American and Latino residents")).
[103] Schwartz, *The Human Toll of ALPR Errors, supra* note 37.
[104] *Id.*

34

CLASS ACTION COMPLAINT

providers.[105] An ALPR database has indeed been used to track a woman across state lines who had self-administered an abortion.[106]

108.    Given that multiple states have moved to criminalize obtaining or facilitating out-of-state abortions, sharing Vigilant data with their law enforcement agencies threatens anyone involved in abortion care within California.[107] Parallel efforts to criminalize out-of-state travel for gender-affirming care expose another vulnerable population to the same risks.

109.    **Threats to Protected First Amendment Activity**. ALPR data can and has also been used to track individuals in associated with constitutionally protected activity. "Aggregated location data allows law enforcement and private companies to create detailed profiles of a

[105] *See, e.g.*, Caroline Kitchener & Devlin Barrett, *Antiabortion lawmakers want to block patients from crossing state lines*, Wash. Post (June 29, 2022, at 18:17 ET), https://www.washingtonpost.com/politics/2022/06/29/abortion-state-lines (last updated June 30, 2022, at 8:30 ET); *Idaho governor signs 'abortion trafficking' bill into law*, AP NEWS (Apr. 6, 2023), https://apnews.com/article/idaho-abortion-minors-criminalization-b8fb4b6feb9b520d63f75432a1219588; Josh Moon, *Alabama AG: state may prosecute those who assist in out-of-state abortions*, Ala. Pol. Rep. (Sept. 15, 2022, at 6:30 CT), https://www.alreporter.com/2022/09/15/alabama-ag-state-may-prosecute-those-who-assist-in-out-of-state-abortions.

[106] Joseph Cox & Jason Koebler, *A Texas Cop Searched License Plate Cameras Nationwide for a Woman Who Got an Abortion*, 404 Media (May 29, 2025), https://www.404media.co/a-texas-cop-searched-license-plate-cameras-nationwide-for-a-woman-who-got-an-abortion.    Flock and the Johnson County, Texas, Sheriff initially insisted that the search was not "related to enforcing Texas's abortion ban" and that "media accounts" were "'false,' 'misleading,' and 'clickbait.'" These claims were proven false. *See* Dave Maass & Rindala Alajaji, *Flock Safety and Texas Sheriff Claimed License Plate Search Was for a Missing Person. It Was an Abortion Investigation.*, Elec. Frontier Found. (Oct. 7, 2025), https://www.eff.org/deeplinks/2025/10/flock-safety-and-texas-sheriff-claimed-license-plate-search-was-missing-person-it ("New documents and court records obtained by EFF show that Texas deputies queried Flock Safety's surveillance data in an abortion investigation. The new information shows that deputies had initiated a 'death investigation' of a 'non-viable fetus,' logged evidence of a woman's self-managed abortion, and consulted prosecutors about possibly charging her."); Jason Koebler & Joseph Cox, *Police Said They Surveilled Woman Who Had an Abortion for Her 'Safety.' Court Records Show They Considered Charging Her With a Crime*, 404 Media (Oct. 7, 2025), https://www.404media.co/police-said-they-surveilled-woman-who-had-an-abortion-for-her-safety-court-records-show-they-considered-charging-her-with-a-crime/.

[107] Dave Maass, *Automated License Plate Readers Threaten Abortion Access. Here's How Policymakers Can Mitigate the Risk*, Elec. Frontier Found. (Sept. 28, 2022), https://www.eff.org/deeplinks/2022/09/automated-license-plate-readers-threaten-abortion-access-heres-how-policymakers.

35

person's daily life. When considered in bulk, ALPR data can form an intimate picture of a driver's activities and even deter First Amendment–protected activities. This kind of targeted tracking threatens to erode fundamental freedoms of speech."[108] Law enforcement have indeed used ALPR data to track individuals exercising their First Amendment rights, including engaging in peaceful protest.[109]

110.    **ALPR Networks Facilitate Stalking.** Recent reporting indicates that some police officers use ALPR camera networks to "keep tabs on their romantic interests, including current partners, exes, and even strangers who unwittingly caught their eye in public."[110] Because no warrant is required to search an ALPR system, an officer can enter a fake "reason" for the license plate search, gaining access to a person's detailed location history and driving patterns.

111.    As above, the ALPR Privacy Act prohibits all unauthorized ALPR data sharing with federal agencies and out-of-state law enforcement agencies, minimizing who has access to this sensitive location data. The use and sharing of ALPR data for discriminatory purposes and to threaten access to healthcare, track those engaging in protected First Amendment activity, and stalk romantic interests heightens the highly offensive nature of the widespread collection, storage, use, and sharing of ALPR data.

## VIII.    Vigilant's Active Concealment Tolls the Statute of Limitations

112.    Vigilant actively concealed its violations of the ALPR Privacy Act from both its own customers and the California public for years.

---

[108] SB274 Analysis, Cal. State Assembly Comm. on Priv. and Consumer Prot., https://apcp.assembly.ca.gov/system/files/2025-07/sb-274-cervantes-apcp-analysis.pdf, at 4 (last visited Feb. 22, 2026).

[109] Dave Maass and Rindala Alajaji, *How Cops Are Using Flock Safety's ALPR Network to Surveil Protesters and Activists*, Elec. Frontier Found. (Nov. 20, 2025), https://www.eff.org/deeplinks/2025/11/how-cops-are-using-flock-safetys-alpr-network-surveil-protesters-and-activists.

[110] Christopher Ingraham, *Police Have Reportedly Used License Plate Readers to Stalk Romantic Interests at Least 18 Times in Recent Years*, Inst. For Just. (April 27, 2026), https://ij.org/police-have-reportedly-used-license-plate-readers-to-stalk-romantic-interests-at-least-14-times-in-recent-years/.

CLASS ACTION COMPLAINT

113.    For years, Vigilant concealed from the public that it had signed a lucrative contract with ICE to share billions of data points with the federal agency.[111] Only through public records requests was the Electronic Frontier Foundation able to determine that ICE had accessed ALPR data from numerous California police departments, including in Anaheim, Antioch, Bakersfield, Chino, Fontana, Fountain Valley, Glendora, Hawthorne, Long Beach, Montebello, Orange, Sacramento, San Diego, Simi Valley, and Tulare.[112] In another instance, Vigilant denied supplying ICE with camera data from shopping malls, until an ACLU lawsuit revealed the extent of this data sharing.[113] The Electronic Frontier Foundation noted that there is a "historic wall of secrecy maintained by Vigilant Solutions and its clients."[114]

114.    This secrecy is by design. Law enforcement agencies' agreements with Vigilant often include "non-disparagement" and "non-publication" clauses that contractually bind them to Vigilant's "media messaging" and prevent agencies from speaking candidly with the press.[115] Vigilant's former terms and conditions explicitly stated that "[t]his prohibition is specifically intended to prohibit users from cooperating with any media outlet to bring attention to LEARN or LEARN-NVLS."[116] Meanwhile, training materials created by Vigilant Solutions explicitly recommend that police leave ALPR out of their reports whenever possible.[117]

115.    Unlike its competitor Flock Safety, Vigilant does not maintain transparency portals for its customers where they can make ALPR audit logs—which show records of access to ALPR data—available to the public. The investigation of Vigilant has proceeded slowly through, for

---

[111] *ICE Accesses a Massive Amount of License Plate Data. Will California Take Action?*, *supra* note 59.

[112] *Id.*

[113] Dave Maass, *Here's Why You Can't Trust What Cops and Companies Claim About Automated License Plate Readers*, Elec. Frontier Found. (Mar. 19, 2019), https://www.eff.org/deeplinks/2019/03/heres-why-you-cant-trust-what-cops-and-companies-claim-about-automated-license.

[114] *Id.*

[115] *Id.*

[116] Kade Crockford, *Company Asks Cops to Keep Use of License Plate Trackers Secret*, ACLU (Mar. 3, 2015), https://www.aclu.org/news/national-security/company-asks-cops-keep-use-license-plate-trackers.

[117] *Here's Why You Can't Trust What Cops and Companies Claim About Automated License Plate Readers, supra* note 113.

CLASS ACTION COMPLAINT

example, citizen reporting of camera locations, such as through DeFlock,[118] and public records requests, such as by the Electronic Frontier Foundation.

116.    Plaintiff did not know and, in the exercise of reasonable diligence, could not have known that Vigilant was violating the ALPR Privacy Act with respect to their ALPR data until investigative reporting and public records disclosures revealed the full scope of Vigilant's violations in early 2026.

117.    Plaintiff's claims therefore did not accrue until early 2026, when Vigilant's violations became known or reasonably discoverable. Accordingly, the applicable limitations period is tolled from the date of Vigilant's concealment until the date of public discovery, and Plaintiff's claims extend to the full period during which Vigilant's violations caused harm.

**PLAINTIFF'S EXPERIENCES**

I.    **Plaintiff Roberts's Experience**

118.    Plaintiff Aaron Michael Roberts is a resident of Pleasanton, California.

119.    Plaintiff Roberts currently owns and drives a 2018 Jeep Compass.

120.    Plaintiff Roberts regularly drives in the Pleasanton, Dublin, Castro Valley, and Hayward, California areas to commute to work and for day-to-day activities, including along routes with Defendants' ALPR cameras installed.

121.    Plaintiff Roberts has regularly driven along these routes for the past several years.

122.    Because Defendants' ALPR cameras scan and collect the license plate, vehicle, and location information of every car passing by, Plaintiff Roberts's license plate, vehicle, and location data has been and continues to be collected and stored by Defendants.

123.    Defendants' ALPR cameras are situated such that Plaintiff Roberts cannot drive for his regular activities without passing a camera. If Plaintiff Roberts could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

---

[118] *ALPR Map*, *supra* note 3.

124.    The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Roberts's movement data.

125.    The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been shared with and is accessible by out-of-state and/or federal law enforcement agencies.[119]

126.    Given the pervasive nature of Defendants' broad data sharing agreements, Plaintiff Roberts's vehicle and location information data has been accessed by out-of-state and/or federal law enforcement agencies. Given the enormous scale of the illegal queries that Defendants permitted, it is likely that Plaintiff Roberts's information was illegally conveyed to out-of-state or federal law enforcement in the results of those queries.

127.    Plaintiff Roberts is concerned about the continuous collection, aggregation, and sharing of his vehicle and location data, including with out-of-state and federal law enforcement agencies. Plaintiff Roberts believes that this continuous collection, aggregation, and sharing violates his privacy.

128.    Plaintiff Roberts has also driven to attend a political event in Sacramento, where Defendants have a network of ALPR cameras installed. Plaintiff Roberts is concerned that his ALPR data obtained by Vigilant cameras while driving to a protest has been or could be accessed by or shared with federal law enforcement surveilling such activity.

129.    Defendants' tracking of Plaintiff Roberts's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

---

[119] SB 34 ALPR Data Sharing (Alameda County Sheriff's Office), MuckRock (Feb. 13, 2024), https://www.muckrock.com/foi/alameda-county-174/sb34-alpr-data-sharing-alameda-county-sheriffs-office-158034/#file-1157514; *see also* Letter from Elec. Frontier Found. to Alameda Cnty. Sheriff's Off. (Mar. 18, 2024), https://www.eff.org/files/2024/04/18/2024-03-18_acso_alpr_letter.pdf.

CLASS ACTION COMPLAINT

130.    Plaintiff Roberts finds the unauthorized sharing of his vehicle, location, and movement data with out-of-state and federal law enforcement agencies highly offensive.

## II.    Plaintiff's Data from Vigilant Cameras Has Economic Value

131.    Every day, commercial entities purchase data about individuals—including their location history—from data brokers[120] and other sources to run advertisements and target their services.[121]

132.    For the past decade, data brokers have sought out and combined data from private and public sources. While individual data sources "may provide only a few elements about a person's activities, data brokers combine these elements to form a detailed, composite view of the consumer's life."[122]

133.    Fusing Vigilant's ALPR data, including historical data about an individual's movements, with other data taken from ad tech and other companies enhances the economic value of any of the millions of existing datasets on California drivers.

134.    Moreover, it is easy to see how information regarding someone's daily commute or vehicle alone could be valuable to advertisers and other businesses. For example, where vehicles travel reveals an astonishing amount about the purchasing decisions, lifestyles, and interests of its occupants.

135.    The movement data Vigilant collects thus has economic value to its owners, including to Plaintiff. Vigilant has collected this data without compensating Plaintiff. By misappropriating Plaintiff's data through its illegal out-of-state and federal sharing practices, Vigilant has caused Plaintiff to suffer a concrete economic injury sufficient to establish standing under California's Unfair Competition Law.

---

[120] California law defines a "data broker" as "a business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship," subject to certain exceptions. Cal. Civ. Code § 1798.99.80(c).

[121] Justin Sherman, *Data Brokers and Sensitive Data on U.S. Individuals: Threats to American Civil Rights, National Security, and Democracy*, at 2 (2021), Duke Sanford Cyber Pol'y Program, https://techpolicy.sanford.duke.edu/report-data-brokers-and-sensitive-data-on-u-s-individuals/.

[122] Tehila Minkus et al., *The City Privacy Attack: Combining Social Media and Public Records for Detailed Profiles of Adults and Children*, COSN '15: Proceedings of the 2015 ACM on CONF. Online Social Networks 71, 71 (2015), https://dl.acm.org/doi/10.1145/2817946.2817957.

CLASS ACTION COMPLAINT

136.    Plaintiff finds the unauthorized sharing of his vehicle, location, and movement data, and the fusing of such data with sensitive information from third-party sources to generate even more detailed insights about Plaintiff highly offensive.

## CLASS ACTION ALLEGATIONS

137.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following classes:

> All individuals whose license plate data was collected in California by the Vigilant ALPR system and was accessible by, and thus disclosed to, federal law enforcement agencies and/or out-of-state agencies since the first Vigilant camera was installed in California (the "Class Period").

138.    Plaintiff also seeks certification of the following subclass (hereinafter referred to as "the Search Subclass"):

> All individuals whose license plate data was collected in California by the Vigilant ALPR system and appeared as the result of any search or query performed by federal law enforcement agencies and/or out-of-state agencies during the Class Period.

139.    Plaintiff also seeks certification of the following Data Sale Class:

> All individuals whose license plate data was collected in California and sold or licensed by Vigilant to commercial customers.

140.    The Class is defined by reference to objective, verifiable criteria: whether a California Vigilant customer's ALPR data was accessible by out-of-state and/or federal law enforcement agencies and whether an individual's vehicle passed a camera operated by that Vigilant customer during the relevant period. The Search Subclass is defined by reference to specific searches conducted by federal or out-of-state agencies. Both subgroups are therefore ascertainable through Vigilant's own business records without individualized inquiry.

141.    Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendant officer or director; any Judge who adjudicates this case, including their staff and immediate family; persons who properly execute and file a timely request for exclusion from the Class; persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; Plaintiff's counsel

and Defendants' counsel; and the legal representatives, successors, and assigns of any such excluded person.

142. Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

143. <u>Ascertainability</u>. Members of the Class ("Class Members") are ascertainable because the definition allows proposed class members to identify themselves as having a right to recover, and provides an objective, concrete basis for which to determine who will be bound by a judgment.

144. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. There are millions of drivers throughout California whose license plates were photographed, time stamped, and geolocation data collected by Vigilant and Vigilant's policies have permitted unauthorized sharing of this data with federal agencies, out-of-state agencies, and the general public. Because of the sophisticated nature and detailed, ongoing collection, Vigilant will be able to identify all these individuals through their amassed records.

145. <u>Predominance</u>. Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

(a)  Whether Vigilant implemented and maintained a usage and policy that complies with California's ALPR Privacy Act;

(b)  Whether Vigilant complies with the Notice, Privacy, Security, Audit, and Proper-Use Requirements set forth in California's ALPR Privacy Act;

(c)  Whether Vigilant gathered location data and license plan scans of Class Members;

(d)  Whether Vigilant's policies permit unauthorized access of Vigilant ALPR data owned by California law enforcement agencies by federal agencies or out-of-state law enforcement agencies;

(e)  Whether Class Members' data was shared with out-of-state or federal agencies;

(f)  Whether Vigilant knew or should have known that its infrastructure and inadequate policy facilitated unauthorized sharing of Class Members' ALPR data with federal and out-of-state agencies;

CLASS ACTION COMPLAINT

(g) Whether Vigilant knowingly and willfully violated the ALPR Privacy Act;

(h) Whether the unauthorized sharing of Class Members' ALPR data has harmed the Class;

(i) Whether Vigilant's failure to have an adequate usage and privacy policy has harmed the Class;

(j) Whether Vigilant violated California's Unfair Competition Law;

(k) Whether Vigilant violated California common law;

(l) Whether Vigilant's violations of California law have harmed the class;

(m) Whether Vigilant is subject to punitive damages under California's ALPR Privacy Act and California common law.

146.    Typicality. Plaintiff's claims are typical of those of other Class Members because all had their ALPR data compromised as a result of Vigilant's lax policy and infrastructure.

147.    Adequacy. Plaintiff will fairly and adequately represent and protect the interests of Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to Members of the Class and the infringement of the rights, and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

148.    Superiority. Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

43

CLASS ACTION COMPLAINT

149.    Policies Generally Applicable to the Class. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

150.    Unless a class-wide injunction is issued, Defendants will continue disclosing and retaining on their platform Class Member ALPR data, and Vigilant may continue to act unlawfully as set forth in this Complaint, particularly given its long history of ignoring and facilitating evasion of California law.

151.    Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to Class Members as a whole is appropriate.

152.    Issue Certification. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

153.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and/or the discovery process.

**COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO MAINTAIN REASONABLE SECURITY PROCEDURES TO PREVENT UNAUTHORIZED ACCESS**
**Cal. Civ. Code §§1798.90.5 *et seq.***
**(On behalf of Plaintiff, the Class, and the Search Subclass)**

154.    Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

155.    Vigilant operates a nationwide ALPR system that captures photographs of license plates and detailed physical characteristics of vehicles, together with the location, time, and date of Plaintiff's and the Class's travels, which can be searched via web interface or application.

44

CLASS ACTION COMPLAINT

156.    Vigilant is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and accesses or uses an ALPR system.

157.    As an ALPR operator and end-user in California, Vigilant is legally required to (1) maintain reasonable security procedures to protect ALPR information; (2) implement and enforce a usage and privacy policy ensuring collection and sharing respects individual privacy and civil liberties; and (3) monitor its system to ensure security and compliance with law. Vigilant is prohibited from allowing ALPR information to be used for any purpose not authorized by its own policy and compliant with the ALPR Privacy Act.

158.    The ALPR Privacy Act explicitly prohibits the sale, sharing, or transfer of ALPR information by a California "public agency," such as a law enforcement agency, except to another California "public agency. Cal. Civ. Code § 1798.90.55(b). Despite this, Vigilant designed and maintained a system with inadequate security and privacy controls that facilitated the unlawful sharing of California residents' ALPR data.

159.    Vigilant failed to implement basic technological safeguards that would have prevented California law enforcement data from being accessed by federal agencies and out-of-state law enforcement agencies.

160.    Among other security failures, Vigilant did not require MFA for access to or searches of its ALPR database, allowing California ALPR data to be shared with out-of-state and federal agencies. Vigilant's unreasonable security practices were demonstrated by researchers' recent exposure of numerous distinct vulnerabilities in its hardware and software.

161.    Vigilant knew or should have known that its failure to implement and maintain adequate privacy and security measures would permit unauthorized information sharing with federal agencies and out-of-state law enforcement agencies in violation of the ALPR Privacy Act.

162.    It was practically certain that unauthorized sharing of ALPR information with federal agencies and out-of-state law enforcement agencies in violation of the ALPR Privacy Act would follow from Vigilant' unlawful conduct of permitting and encouraging national sharing and searches of California ALPR information, sharing agreements between California law

45

CLASS ACTION COMPLAINT

enforcement agencies and agencies in other states, "side-door" access to Californians' ALPR information, and other failures to implement and maintain adequate privacy and security measures. As a result, Vigilant intentionally, or at the very least knowingly and recklessly, violated the ALPR Privacy Act.

163.    Vigilant did not introduce measures that would have prevented California law enforcement agencies' ALPR data from being shared with federal or out-of-state agencies, such as blocking sharing of California ALPR data with federal and out-of-state law enforcement agencies.

164.    Vigilant deliberately collected Plaintiff's and the Class's ALPR information and disclosed that information to its out-of-state and federal law enforcement customers, allowing them to identify physical characteristics and movement patterns of, and locations visited by, Plaintiff's and Class Members' vehicles, as well as potentially other identifying information.

165.    Vigilant's failure to implement these required safeguards constitutes a willful and reckless disregard for California law and resident privacy. Its conduct is highly offensive to a reasonable person and has directly harmed Plaintiff and the Class by exposing their sensitive personal information, such as location and movement information, to unauthorized entities.

166.    Vigilant's conduct was at all relevant times in willful and in reckless disregard of California's ALPR Privacy Law.

167.    Plaintiff seeks actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

**COUNT II: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT; FAILURE TO IMPLEMENT A COMPLIANT ADEQUATE USAGE AND PRIVACY POLICY**
**Cal. Civ. Code §§1798.90.5 *et seq.***
**(On behalf of Plaintiff, the Class, and the Search Subclass)**

168.    Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

46

CLASS ACTION COMPLAINT

169. Vigilant is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and accesses or uses an ALPR system.

170. As such, Vigilant is required to comply with Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b), which require Vigilant to implement a usage and privacy policy containing specific provisions.

171. Vigilant's usage and privacy policy violates the requirements of Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b) in the following ways:

172. Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code § 1798.90.51(b)(1) because it is not designed to "ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties."

173. Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(B) and 1798.90.53(b)(2)(B) because it fails to describe "the job title or other designation of the employees and independent contractors who are authorized to use or access the system, or to collect ALPR information."

174. Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(C) and 1798.90.53(b)(2)(C) because it fails to describe "how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws."

175. Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(D) and 1798.90.53(b)(2)(D) because it fails to describe the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons."

176. Vigilant's use usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(F) and 1798.90.53(b)(2)(F) because it does not describe "the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors."

CLASS ACTION COMPLAINT

177. Vigilant is also in violation of Cal. Civ. Code §§ 1798.90.51(b)(1) and 1798.90.53(b)(1) because its usage and privacy policy is not "posted conspicuously" on its website.

178. Vigilant's failure to conspicuously post a compliant ALPR usage and privacy policy constitutes a willful and reckless disregard for California law and resident privacy. Its conduct is highly offensive to a reasonable person, amounts to willful and reckless disregard of the law, and has directly harmed Plaintiff and the Class by violating their right to know when, how, and by whom their ALPR information is being collected, used, accessed, and maintained. It has also directly harmed Plaintiff and the Class because Vigilant's failure to have and implement a compliant policy has led to the exposure of their sensitive personal information, such as location and movement information, to unauthorized entities, including the sharing of ALPR data collected by California law enforcement agencies with out-of-state and federal law enforcement.

179. Vigilant's conduct was at all relevant times in willful and in reckless disregard of California's ALPR Privacy Law.

180. Plaintiff seeks actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

## COUNT III: NEGLIGENCE
### (On behalf of Plaintiff, the Class, and the Search Subclass)

181. Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

182. Vigilant owed Plaintiff and Class Members a duty to prevent unauthorized sharing and to maintain reasonable and adequate information and data security practices.

183. Vigilant's duty is demonstrated by California's ALPR Privacy Act.

184. The ALPR Privacy Act expressly identifies California drivers whose ALPR data is subject to collection as the class of persons its protections are intended to benefit. (See Cal. Civ. Code §1798.90.54 [providing a private cause of action to "an individual harmed by a violation"].) Vigilant, as the operator and architect of the surveillance infrastructure, was therefore aware that

CLASS ACTION COMPLAINT

it's failure to implement adequate sharing controls would injure California drivers specifically. This awareness further establishes Vigilant's duty of care to Plaintiff and the Class.

185.     Vigilant breached that duty by violating the ALPR Privacy Act—allowing federal and out-of-state agencies to access California ALPR data in direct violation of the ALPR Privacy Act and against the repeated warnings from the California Attorney General's office.

186.     Vigilant further breached its duty by failing to implement reasonable security practices.

187.     Plaintiff and the Class have been injured by Vigilant's conduct because their ALPR information has been improperly shared with federal and out-of-state law enforcement agencies as well as, potentially, other unauthorized third parties. This has harmed Plaintiff and the Class in ways enumerated above. Vigilant's facilitation of unlawful ALPR data sharing with federal and out-of-state law enforcement agencies is highly offensive to a reasonable person.

188.     As a direct and proximate cause of Vigilant's business practices, Plaintiff and Class Members were damaged because their ALPR data has been improperly shared with federal and out-of-state law enforcement agencies as well as, potentially, other unauthorized third parties, and that data was not properly safeguarded.

189.     Vigilant's violation of the ALPR Privacy Act constitutes negligence per se, and its willful and reckless conduct warrants an award of compensatory and punitive damages.

190.     Vigilant's failure to limit ALPR information-sharing and maintain reasonable and adequate information- and data-security practices was precisely the kind of conduct the ALPR Privacy Act was designed to prevent.

191.     Plaintiff and the Class are the class of persons the ALPR Privacy Act is intended to protect—drivers within California whose data is subject to ALPR collection.

192.     Vigilant's willful and reckless breach of its duty caused Plaintiff and the Class to suffer damages.

193.     Under California law—specifically, the evidentiary doctrine of negligence per se—these circumstances create a presumption of negligence.

49

CLASS ACTION COMPLAINT

194.    There is no justification or excuse for Vigilant's violation of the ALPR Privacy Act.

195.    Vigilant is therefore liable for compensatory and punitive damages under California law.

## COUNT IV: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION
### (On behalf of Plaintiff, the Class, and the Search Subclass)

196.    Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

197.    Plaintiff and Class Members have an interest in: (i) conducting lawful personal and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to move from place to place without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicle and movements generated and logged over a period of weeks, months, or years that third parties may use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third-party data sets about Plaintiff and Class Members; (iv) not sharing the aforementioned information with out-of-state or federal law enforcement agencies; and (v) controlling the dissemination of private information about themselves.

198.    By conducting widespread and round-the-clock surveillance of Plaintiff's and Class Members' movements using its ALPR technology, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights, as well as intruded upon Plaintiff's and Class Members' seclusion.

199.    The right to privacy protects not only discrete pieces of information individually, but the reasonable expectations of the populace regarding the systematic aggregation and use of information about their activities.

200.    The aggregation of location data which captures one's movements over time violates the populace's reasonable expectations of privacy.

201. Vigilant does not merely capture a license plate at a moment in time, it constructs a mosaic of each vehicle's movements, cross-references those movements against state and law enforcement databases, and makes that mosaic available for search and analysis by thousands of law enforcement agencies across the country.

202. By aggregating and analyzing Plaintiff's and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights, as well as intruded upon Plaintiff's and Class Members' seclusion.

203. By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles, reporting past movements, and predicting future movements, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

204. By developing and deploying proprietary software that allows Defendants to share the aforementioned information about Plaintiff and Class Members with any of Defendants' customers across California and the United States, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

205. By developing and deploying technology that allows Defendants to merge the aforementioned data about Plaintiff and Class Members with data from external sources, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

206. Plaintiff and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about them, let alone profiles that local and out-of-state law enforcement agencies may easily search, access, and act upon.

207. By sharing data on California drivers' vehicles and movements with federal law enforcement agencies who have amassed information on individuals and are able to merge these datasets, Defendants have further intruded upon and eroded Plaintiff's privacy rights.

51

CLASS ACTION COMPLAINT

208. Plaintiff and Class Members did not and could not authorize Defendants to intercept data on their activities.

209. By engaging in the aforementioned actions, Vigilant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

210. This invasion of privacy is serious in nature, scope, and impact. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

211. As a result of Vigilant's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

212. Plaintiff and Class Members have been damaged as a direct and proximate result of Vigilant's invasion of their privacy and are entitled to just compensation, including monetary damages.

213. Plaintiff and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

214. Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Vigilant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights.

215. Such damages are needed to deter Vigilant from engaging in such conduct in the future.

216. Plaintiff also seeks such other relief as the Court may deem just and proper.

**COUNT V: INTRUSION UPON SECLUSION**
**(On behalf of Plaintiff, the Class, and the Search Subclass)**

217. Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

218. To state a claim for intrusion upon seclusion, "[Plaintiff] must possess a legally protected privacy interest … [Plaintiff's] expectations of privacy must be reasonable … [and Plaintiff] must show that the intrusion is so serious in 'nature, scope, and actual or potential impact

as to constitute an egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009).

219. Plaintiff and Class Members have an interest in: (i) conducting lawful personal, professional, and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to travel without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicles and movements generated and logged over a period of weeks, months, or years for third parties to use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third party data sets or profiles about Plaintiff and Class Members; (iv) not sharing the aforementioned information with out-of-state or federal law enforcement agencies; and (v) controlling the dissemination of private information about themselves.

220. By conducting widespread and round-the-clock surveillance of Plaintiff's and Class Members' movements using its ALPR technology, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights, as well as intruded upon Plaintiff's and Class Members' seclusion.

221. By aggregating and analyzing Plaintiff's and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights, as well as intruded upon Plaintiff's and Class Members' seclusion.

222. By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles, reporting past movements, and predicting future movements, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

223. By developing and deploying proprietary software that allows Defendants to share the aforementioned information about Plaintiff and Class Members with any of Defendants' customers across California and the United States, Defendants intentionally invaded Plaintiff's

and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

224. By developing and deploying technology that allows Defendants and third parties to merge the aforementioned data about Plaintiff and Class Members with data from external sources, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights as well as intruded upon Plaintiff's and Class Members' seclusion.

225. Plaintiff and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about them, let alone profiles that local and out-of-state law enforcement agencies may easily search, access, and act upon.

226. By sharing data on California drivers' vehicles and movements with federal law enforcement agencies who have amassed information on individuals and are able to merge these datasets, Defendants have further intruded upon and eroded Plaintiff's privacy rights.

227. Plaintiff and Class Members did not and could not authorize Defendants to intercept data on their activities.

228. The conduct described herein is highly offensive to a reasonable person and constitutes an egregious breach of social norms.

229. Plaintiff and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

230. Accordingly, Plaintiff and Class Members and Search Subclass Members seek all relief available for invasion of privacy claims under common law.

**COUNT VI: VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiff and the Data Sale Class)**

231. Plaintiff incorporates all prior allegations as if fully set forth herein and brings this Count individually and on behalf of the proposed Class and Search Subclass.

CLASS ACTION COMPLAINT

232.    Plaintiff pleads this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

233.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

234.    Vigilant engages in unlawful business practices in connection with its disclosure of ALPR data belonging to Plaintiff and Class Members to federal and out-of-state law enforcement agencies despite the legal, moral, ethical, and policy requirements against doing so.

235.    Vigilant's acts, omissions, and conduct, as alleged herein, constitute "business practices" within the meaning of the UCL.

236.    Vigilant violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiff's and Class Members' constitutional rights to privacy, state privacy statutes, state consumer protection statutes, and ALPR technology specific statutes.

237.    Vigilant's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omission, and conduct offend public policy (namely the ALPR Privacy Act and Consumer Privacy Act) and constitute immoral, unethical, oppressive, and unscrupulous activities that cause substantial injury, including to Plaintiff and Class Members.

238.    Vigilant's conduct was unfair because it knew or should have known that it was collecting and sharing sensitive personal information and continued to do so despite knowing about Californians' privacy rights and the harms that could result by disseminating such information to federal and out-of-state law enforcement agencies as well as creating detailed inferences about Plaintiff and Class Members using insights and analytics from aggregated ALPR data, third party data, and its proprietary software.

239.    As the California Legislature made clear when passing the ALPR Privacy Act, the harm caused by Vigilant's conduct outweighs any potential public safety benefits attributable to such conduct, and there are reasonable alternatives to further Vigilant's legitimate business interests other than Vigilant's conduct described herein. Similarly, the CCPA requires businesses of Vigilant's size to consider "the negative impacts to consumers' privacy" of its ALPR data

55

CLASS ACTION COMPLAINT

collection and processing and consider "restricting or prohibiting the processing of personal information if the risks to privacy of the consumer outweigh the benefits." Cal. Code Regs. § 7152(a), § 7154(a). Vigilant has come out on the wrong side of the equation, profiting by building, facilitating, and encouraging a massive surveillance state that can track the movements of citizens across multiple cameras mounted in their home cities at the most trafficked intersections, highways, and locations, thereby enabling deeply invasive inferences about their private actions and personal lives, in exchange for a relatively scant improvement in police efficacy in solving a small subset of crimes (*i.e.*, vehicle thefts and hit-and-runs).

240.    As a result of Vigilant's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief. This is particularly true since the dissemination of Plaintiff's and Class Members' ALPR is ongoing. Such injunctive relief should require Vigilant to permanently cease all sharing of Californians' ALPR information on its platform with any out-of-state or federal law enforcement organizations, and to immediately delete all information about Californians that out-of-state or federal law enforcement agencies are storing on the Vigilant platform or within Vigilant's possession or control.

241.    Plaintiff and Class Members have suffered an injury-in-fact as a proximate result of the violations of law and wrongful conduct of Vigilant alleged herein, including the loss of the economic value of their data, deprivation of the property right to exclude others from accessing or using their personal location and movement information, and the infringement of their statutory and California constitutional privacy rights. The damages remedies under Counts I to IV do not provide an adequate remedy for the ongoing and prospective harms Vigilant's unfair and unlawful business practices continue to cause absent injunctive relief. Plaintiff seeks an injunction to end Vigilant's wrongful practices pursuant to § 17203.

242.    Vigilant has been unjustly enriched by its violations. Vigilant profits from paid contracts with customers, to which it advertises its nationwide ALPR network. To boost sales, Vigilant boasts of its system's broad sharing abilities. These broad sharing abilities —including the ability of out-of-state and federal law enforcement customers to access ALPR data from California, the most populous state in the United States—increase Vigilant's customer base, the

value of its products, and in turn, Vigilant's profits. Vigilant has thus been unjustly enriched by the illegal use of Plaintiff's and Class Members' ALPR data to increase sales and profits.

243.    Plaintiff and Class Members are entitled to restitution of the economic value of their data that Vigilant misappropriated without authorization or compensation. Plaintiff and the Class also seek an order requiring Vigilant to make full restitution of all monies it received through its wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the proposed Classes, respectfully requests that the Court grant the following relief:

    a.  Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Classes;

    b.  A declaratory judgement that Defendants violated Cal. Civ. Code §§1798.90.5 *et seq.*, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California constitutional and common law;

    c.  An order enjoining Vigilant from engaging in or facilitating the unlawful practices and illegal acts described herein; and forcing Vigilant to delete any California ALPR information stored on its platform by anyone other than California law enforcement agencies.

    d.  An order awarding Plaintiff and the Classes: (1) actual or liquidated damages (whichever is higher); (2) punitive damages—as warranted—in an amount to be determined at trial; (3) restitution in an amount to be determined at trial; (4) injunctive relief as the Court may deem proper; (5) reasonable attorneys' fees and expenses and costs of suit pursuant to Cal. Code of Civil Procedure § 1021.5 and/or other applicable law; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other and further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the proposed Classes, requests a trial by jury of all claims that can be so tried.


Dated: June 18, 2026

**GIBBS MURA LLP**

By: */s/ David M. Berger*
David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classlawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Gary M. Klinger*
Mike Acciavatti*
Heather M. Lopez (SBN 354022)
**Milberg PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (331) 240-3015
gklinger@milberg.com
macciavatti@milberg.com
hmlopez@milberg.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com

*pro hac vice forthcoming*
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT