David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classlawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Gary M. Klinger*
Mike Acciavatti*
Heather M. Lopez (SBN 354022)
**MILBERG PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (331) 240-3015
gklinger@milberg.com
macciavatti@milberg.com
hlopez@milberg.com

*pro hac vice forthcoming*
*Attorneys for Plaintiffs*

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
Jacob R. Leiken*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com
jleiken@hausfeld.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON MICHAEL ROBERTS, KATHERINE RENEE ROHRER, STEPHEN STUBBINGS, MATTHEW GONZALES, CONNOR RIEDEMAN, DANIEL YELISEY TIMOFEYEV, HOPE DINNEEN WHITE, LUIS FERNANDO BRITO MONTENEGRO, CHARLES CONNELL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> MOTOROLA SOLUTIONS, INC., and VIGILANT SOLUTIONS, LLC, <br><br> Defendants. | Case No.: 3:26-cv-06099-JD <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

NATURE OF THE CASE .................................................................................................... 2

PARTIES ........................................................................................................................... 6

JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT ........................................... 7

FACTUAL ALLEGATIONS ................................................................................................ 8

    I.    ALPR Cameras and California's ALPR Privacy Act ................................................ 8

    II.    Vigilant and Motorola's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories in Violation of California Law ................................................................... 13

    III.    Vigilant and Motorola Violate California Law by Sharing California ALPR Data with Out-of-State and Federal Agencies ........................................................ 20

    IV.    Vigilant Violates California Law by Failing to Implement an Adequate Policy ... 28

    V.    Vigilant Violates California Law by Failing to Implement Reasonable Security Procedures to Prevent Unlawful ALPR Information Sharing .................. 31

    VI.    Vigilant's Security Measures Fall Far Below Reasonable Procedures and Practices ............................................................................................................... 33

    VII.    Vigilant's ALPR Data Collection, Aggregation, and Dissemination Practices Are Highly Offensive ............................................................................ 37

    VIII.  Vigilant's Recordkeeping Is Insufficient to Comply with Its Statutory Duties ..... 41

    IX.    Vigilant's Active Concealment Tolls the Statute of Limitations .......................... 43

PLAINTIFFS' INDIVIDUAL EXPERIENCES ..................................................................... 45

    I.    Plaintiff Roberts's Experience ............................................................................. 45

    II.    Plaintiff Rohrer's Experience .............................................................................. 47

    III.    Plaintiff Stubbings's Experience ......................................................................... 49

    IV.    Plaintiff Gonzales's Experience .......................................................................... 51

    V.    Plaintiff Riedeman's Experience ......................................................................... 53

    VI.    Plaintiff Timofeyev's Experience ........................................................................ 55

    VII.    Plaintiff White's Experience ............................................................................... 57

    VIII.  Plaintiff Brito Montenegro's Experience ............................................................ 59

    IX.    Plaintiff Connell's Experience ............................................................................ 61

    X.    Plaintiffs' Data from Vigilant Cameras Has Economic Value ............................ 63

CLASS ACTION ALLEGATIONS ..................................................................................... 65

COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO
    MAINTAIN REASONABLE SECURITY PROCEDURES TO PREVENT
    UNAUTHORIZED ACCESS ................................................................................. 70

COUNT II: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT; FAILURE TO
    IMPLEMENT A COMPLIANT USAGE AND PRIVACY POLICY ............................ 73

COUNT III: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT; FAILURE TO
    MAINTAIN ADEQUATE RECORDS OF ALPR ACCESS ......................................... 74

COUNT IV: NEGLIGENCE .................................................................................................. 76

COUNT V: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION ... 77

COUNT VI: INTRUSION UPON SECLUSION ..................................................................... 80

COUNT VII: VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
    ("UCL") ................................................................................................................ 82

COUNT VIII: UNJUST ENRICHMENT ............................................................................. 84

COUNT IX: VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT ............ 86

PRAYER FOR RELIEF ....................................................................................................... 88

DEMAND FOR JURY TRIAL ............................................................................................. 89

Throughout California and the United States, drivers are tracked by a network of automated license plate recognition ("ALPR") cameras and software—tens of thousands of high-definition cameras combined with artificial intelligence ("AI") and sophisticated communications networks. While other cameras used by law enforcement activate only upon detecting a violation—a vehicle running a red light, for example—these ALPR cameras record information on every passing vehicle, forming a vast, interconnected surveillance dragnet. Defendants Vigilant Solutions, LLC and Motorola Solutions, Inc. ("Defendants" or "Vigilant") own and operate a massive network of these cameras, oversee the data warehouse that holds the billions of images and data points they capture, and control the software and AI architecture that facilitates this nationwide surveillance network.

The California Legislature has recognized the serious threat to privacy rights and civil liberties posed by Vigilant's mass surveillance. In 2015, California enacted Senate Bill 34 (the "ALPR Privacy Act"), which places clear limits on the ability to legally capture, use, store, and share ALPR data. For example, Vigilant and other ALPR operators are barred from sharing California ALPR data with federal or out-of-state law enforcement agencies and are required to implement a conspicuously posted usage and privacy policy informing the public of how it uses and shares ALPR data. For years, Vigilant has blatantly violated these rules, imposing minimal restrictions on nationwide access to California ALPR data, facilitating nationwide sharing of ALPR data on a massive scale, and burying a wholly inadequate and uninformative usage and privacy policy deep within their website, which in turn fails to protect ALPR data from unauthorized use. Vigilant could easily implement policies and design its system in compliance with the ALPR Privacy Act; indeed, it is legally required to do so. But Vigilant has instead encouraged its customers to illegally share information about California drivers' daily movements. In so doing, Vigilant has ignored its duties under California law.

Plaintiffs bring this Class Action Complaint against Vigilant individually and on behalf of all others similarly situated, and allege upon personal knowledge and their counsel's investigations as follows:

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

## **NATURE OF THE CASE**

1.      Vigilant has created a mass-surveillance infrastructure that is practically impossible to avoid, particularly for anyone operating a vehicle anywhere in the country where Vigilant has installed its cameras. Vigilant violates California law by amassing and sharing data on California drivers with out-of-state and federal law enforcement agencies. Vigilant attempts to evade responsibility and shift liability for its violations by pointing fingers at its own customers.[1] But Vigilant cannot rely on weaponized incompetence when its obligations under California law are clear.

2.      Vigilant's ALPR technology captures, analyzes, and shares vehicle data, including a vehicle's license plate number, often paired with any distinguishing features. Vigilant aggregates and permits its customers to search this vehicle data, which reveals the vehicle's location and movements over time. Vigilant markets its video-surveillance-as-a-service (VSaaS) platform as able to "[f]ind [a] needle in the haystack."[2] It manufactures, owns, and operates the ALPR cameras. And Vigilant also creates, maintains, and controls data warehouses, web interfaces, and applications that enable its customers to access and analyze ALPR data gathered by other customers.

3.      Vigilant operates ALPR systems nationwide, including over a thousand devices throughout California.[3] More than 160 California law enforcement agencies have used Vigilant's ALPR data.[4]

4.      Vigilant places high-definition ALPR cameras in fixed, high-traffic locations that

---

[1] *See VehicleManager Enterprise User Guide*, Motorola Sols., https://docs.motorolasolutions.com/bundle/87977/page/8e3acb80.html [https://perma.cc/5L29-HSPP] ("Refer to your legal department to ensure that data shares are in compliance with any local or state regulations and your Site policies.").

[2] *VehicleManager Brochure*, Motorola Sols., 2, https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vehiclemanager/vehiclemanager_brochure.pdf [https://perma.cc/5S7J-QA94].

[3] *See ALPR Map*, DeFlock, https://deflock.me/map [hereinafter "ALPR Map"].

[4] *Table of Individual Responses to Selected Survey Questions re Automated License Plate Readers*, Auditor of the State of Cal., https://information.auditor.ca.gov/reports/2019-118/surveys.html.

2

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

record the time and position of any vehicle that passes by, including the license plate number, along with vehicle characteristics such as make, color, and distinguishing features.

5.    While the California Legislature recognizes the benefits ALPR technology can provide to law enforcement agencies, it also recognizes that ALPR technology can invade personal privacy and harm civil liberties.

6.    California's ALPR Privacy Act[5] explicitly prohibits ALPR operators and end-users, such as California law enforcement agencies and Vigilant, from sharing California ALPR data with federal agencies or out-of-state law enforcement agencies. It also requires Vigilant to ensure its California customers use ALPR information only for authorized purposes and maintain reasonable security measures to prevent unauthorized access and use. The ALPR Privacy Act further requires Vigilant to implement and make conspicuous on its website an ALPR usage and privacy policy containing several specific provisions. Vigilant has blatantly violated these requirements for the California entities using its products and services.

7.    Vigilant's business practices flout California law. These practices include maintenance of "[b]illions of historical detections shared between agencies and from our commercial partner network" and making this information available to state and federal law enforcement nationwide.[6] Vigilant also shares its billions of records of license plate data with other data brokers, such as Thomson Reuters, CLEAR,[7] and Palantir.[8] In its public filings,

---

[5] Throughout this Complaint, "the ALPR Privacy Act" will refer to the laws codified in Cal. Civ. Code §§1798.90.5 *et seq*.

[6] *License Plate Recognition for Law Enforcement*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/LPR_for_Law_Enforcement_Solution_Brief.pdf [https://perma.cc/342P-XA23] [hereinafter "Law Enforcement Marketing Brochure"].

[7] *The Data Broker to Deportation Pipeline*, Just Futures L., https://static1.squarespace.com/static/62c3198c117dd661bd99eb3a/t/62df020189b0681d1b9398a8/1658782211567/Commercial+and+Utility+Data+Report.pdf, at 8.

[8] *Vigilant Solutions (Motorola Solutions) — License Plate Reader Network for ICE*, Transparency Cascade Press, https://detention-pipeline.transparencycascade.org/players/contractors/vigilant-solutions-motorola/.

3

Vigilant lists California's ALPR law as a material risk to its business.[9]

8.      In fact, Vigilant explicitly advertises its interconnected, nationwide network of ALPR data as a coveted product feature to potential customers. Its marketing brochure for law enforcement invites agencies to tap into Vigilant's vast trove of data to "aid detectives in generating leads and even determin[e] the probable location of vehicles of interest using [Vigilant's] patented analytics."[10] Vigilant bills itself as the right choice for law enforcement that "needs cross-jurisdictional data sharing."[11]

9.      Throughout California, out-of-state and federal agency sharing is pervasive. An investigation by the Electronic Frontier Foundation found that at least 71 California police agencies' ALPR data was being illegally shared with out-of-state or federal law enforcement.[12] For example, Vigilant allowed 9 federal and 187 non-California entities across 38 states to access University of California, Merced Police Department's ALPR data, and allowed federal and non-California law enforcement agencies to access the ALPR data of the Alameda County Sheriff's Department.[13]

10.      Despite Defendants' own marketing materials denying its possibility, Vigilant also permits private companies to access California law enforcement agency ALPR data—which is

---

[9] 2025 10-K, Motorola Solutions, Inc., 18, https://www.motorolasolutions.com/content/dam/msi/investors/doc_financials/2025/q4/msi_2025_10-k.pdf.

[10] Law Enforcement Marketing Brochure, *supra* note 6, at 1.

[11] *Flock Safety Alternatives & Competitors: Top ALPR Solutions for Government Agencies in 2026*, Civic IQ (Apr. 3, 2026), https://blogs.civiciq.com/2026/04/03/flock-safety-alternatives-competitors-top-alpr-solutions-for-government-agencies-in-2026/.

[12] *Civil Liberties Groups Demand California Police Stop Sharing Drivers' Location Data With Police In Anti-Abortion States*, Ele. Frontier Found. (May 25, 2023), https://www.eff.org/press/releases/civil-liberties-groups-demand-california-police-stop-sharing-drivers-location-data.

[13] *UC Merced shares data with federal agencies, including Border Patrol*, EdSource (Apr. 24, 2026), https://edsource.org/updates/student-population-at-risk-uc-merced-shares-data-with-federal-agencies; Letter from Jennifer Pinsof, Staff Attorney, Elec. Frontier Found.; Matt Cagle, Senior Staff Att'y, ACLU Found. of N. Cal. to Yesenia L. Sanchez, Alameda Cnty. Sheriff; and Donna Ziegler, Cnty. Counsel, Alameda Cnty. (Mar. 18, 2024), https://www.eff.org/files/2024/04/18/2024-03-18_acso_alpr_letter.pdf.

4

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

illegal under California law.[14] Public records show that Vigilant has shared California law enforcement data with companies like Enterprise Rent-A-Car and Gold Strike Casino.[15]

11. Vigilant blatantly ignores the ALPR Privacy Act's clear and intentional restrictions on ALPR data sharing, so much so that its own customers are often unaware that their data is being shared with out-of-state and federal agencies. For example, a long-time Vigilant Solutions customer, the Modesto Police Department ("MPD"),[16] "recently discovered," after being prompted to respond to ALPR Privacy Act–enabled public records requests, that federal agencies such as Border Patrol still had access to its cameras' data, "[d]espite [MPD's prior] attempts to bring the system into compliance with state law" by disabling such data sharing.[17]

12. As part of a lawsuit to stop the El Cajon Police Department from permitting illegal ALPR information sharing, the California Attorney General stated: "When information about Californians leaves the state, we no longer have any say over how it is used or shared. That's why the California Legislature passed the ALPR Privacy Act — to ensure information about Californians remains here in California." "California law prohibits the sharing of license plate data with federal and out-of-state agencies" and doing so "jeopardize[s] the privacy and safety of individuals in its community."[18]

---

[14] *Managing your LPR data*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vigilant-vehiclemanager/lpr_data_management_faq_en_us.pdf [https://perma.cc/2T5S-E89N].

[15] *See, e.g.*, VehicleManager Agency Data Sharing Report (Newport Beach PD), June 10, 2026, https://www.documentcloud.org/documents/28239850-newport-beach-pd-vehicle-manager-detections-shared/#document/p103; VehicleManager Agency Data Sharing Report (Fresno County Sheriff's Office), Feb. 5, 2026, https://www.documentcloud.org/documents/28239845-fresno-co-sheriff-pra-26-183/.

[16] *Response to the Survey From—Modesto Police Department*, Auditor of the State of Cal., https://information.auditor.ca.gov/reports/2019-118/surveys/modesto_police_department.html.

[17] Julietta Bisharyan, *Modesto police find federal agencies had prohibited access to license plate data*, The Modesto Bee (updated Mar. 13, 2026), https://www.modbee.com/news/local/article315043571.html [https://archive.fo/kEu5r]; *see also* ALPR Map, *supra* note 3.

[18] Press Release, Off. of the Att'y Gen., Cal. Dep't of Just., Attorney General Bonta Sues El Cajon for Illegally Sharing License Plate Data with Out-of-State Law Enforcement (Oct. 3, 2025),

5

13.     Vigilant exhibits complete and continued disregard for California law. Plaintiffs now bring this class action lawsuit alleging violations of the ALPR Privacy Act, California's Unfair Competition Law, and California Constitutional and common law and requesting damages and injunctive relief.

## PARTIES

14.     Plaintiff Aaron Michael Roberts is a natural person and a citizen of the State of California. Plaintiff Roberts resides in Pleasanton, California.

15.     Plaintiff Katherine Renee Rohrer is a natural person and a citizen of the State of California. Plaintiff Rohrer resides in Modesto, California.

16.     Plaintiff Stephen Stubbings is a natural person and a citizen of the State of California. Plaintiff Stubbings resides in Modesto, California.

17.     Plaintiff Matthew Gonzales is a natural person and a citizen of the State of California. Plaintiff Gonzales resides in Antioch, California.

18.     Plaintiff Connor Riedeman is a natural person and a citizen of the State of California. Plaintiff Riedeman resides in Clearlake, California.

19.     Plaintiff Daniel Yelisey Timofeyev is a natural person and a citizen of the State of California. Plaintiff Timofeyev resides in Sacramento, California.

20.     Plaintiff Hope Dinneen White is a natural person and a citizen of the State of California. Plaintiff White resides in Escalon, California.

21.     Plaintiff Luis Fernando Brito Montenegro is a natural person and a citizen of the State of California. Plaintiff Brito Montenegro resides in San Francisco, California.

22.     Plaintiff Charles Connell is a natural person and a citizen of the State of California. Plaintiff White resides in Sacramento, California.

23.     Defendant Vigilant Solutions, LLC is a limited liability company formed under the laws of Delaware. It is headquartered in Pleasanton, California. Defendant Vigilant Solutions,

---

https://oag.ca.gov/news/press-releases/attorney-general-bonta-sues-el-cajon-illegally-sharing-license-plate-data-out.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

LLC is a wholly owned subsidiary of Defendant Motorola Solutions, Inc. Vigilant Solutions was acquired by Motorola Solutions in January 2019 through VaaS International Holdings, a holding company also owned by Motorola Solutions, Inc. VaaS International Holdings is the sole member of Vigilant Solutions, LLC.

24.    Defendant Motorola Solutions, Inc. is a corporation formed under the laws of Delaware. It is headquartered in Chicago, Illinois.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

25.    This Court has jurisdiction over this controversy under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs, there are over 100 putative Class Members, and at least one Plaintiff is a citizen of a different state than Defendant Motorola Solutions, Inc.

26.    This Court has personal jurisdiction over Defendant Vigilant Solutions, LLC because it is headquartered in California and regularly conducts business within this state.

27.    This Court has personal jurisdiction over Defendant Motorola Solutions, Inc. because it is licensed to do business in California, regularly conducts business in California, and purposefully collects the ALPR data of California residents and other drivers within California. Motorola also markets and sells its products to California customers. Motorola, therefore, has sufficient minimum contacts such that exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Indeed, Motorola has numerous contracts with California law enforcement agencies. Additionally, Motorola has over a thousand cameras located in California, which it uses to take billions of license plate scans of California vehicles, and regularly interacts with California law enforcement agencies. Plaintiffs' claims arise out of and relate to Motorola's California contacts.

28.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District. Accordingly, under Local Rule 3-2, this matter should be assigned to the San Francisco Division.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

## FACTUAL ALLEGATIONS

### I. ALPR Cameras and California's ALPR Privacy Act

29.    Modern ALPR technology uses specialized cameras and software to automatically scan, record, and convert vehicle license plates into digital data.[19] These systems are typically mounted onto local infrastructure and scan the license plate of every passing vehicle. While each camera captures one point in time, the data from each camera is merged to track and map a vehicle's movements across entire regions at all hours of the day, every day of the year. The ALPR cameras capture images of license plates, using AI and Optical Character Recognition (OCR) to convert the images into machine-readable text in real time.

30.    In 2015, the California Legislature enacted the ALPR Privacy Act to mitigate ALPR systems' risks to privacy and initiated strict requirements on operators and end-users of ALPR surveillance. The legislature noted that by aggregating license plate numbers with specific locations and timestamps, operators can reconstruct a person's exact location and day-to-day patterns:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system. This bill will put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users.[20]

31.    Vigilant's ALPR surveillance occurs almost exclusively without drivers' knowledge because it targets both active drivers and stationary vehicles parked on public streets

---

[19] ALPR camera technology is distinguishable from a standard traffic camera. Traffic cameras only record specific violations at a single point in time, such as speeding on a stretch of road or running a red light at an intersection. In contrast, ALPRs are always recording, documenting, and uploading information into a centralized data store. Thus, ALPRs capture all vehicles that pass by ALPR cameras through a city or region. *See* Mario Lotmore, *Somebody's watching me: Flock versus red light cameras in Lynnwood*, LYNNWOOD TIMES (Nov. 10, 2025), https://lynnwoodtimes.com/2025/11/10/red-light.

[20] S. Comm. on Transportation and Housing, Bill Analysis, SB 34, ¶ 3 (2015).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

in view of Vigilant technology.

32.     Vigilant has specifically ignored the ALPR Privacy Act's strict operator and end-user requirements.

33.     Cal. Civ. Code § 1798.90.5(c) defines an "ALPR operator" as "a person that operates an ALPR system, but does not include . . . a transportation agency when subject to Section 31490 of the Streets and Highways Code." Vigilant is an ALPR operator because it operates its own ALPR systems and is not a transportation agency subject to Section 31490 of the Streets and Highways Code.

34.     Cal. Civ. Code § 1798.90.5(a) defines an "ALPR end-user" as "a person that accesses or uses an ALPR system." Vigilant is an ALPR end-user because it accesses or uses an ALPR system to make ALPR data available to its customers; to provide, create, and improve its products and services; and provide analytics to customers.[21]

35.     Vigilant's customers, including law enforcement agencies, are also ALPR end-users because they access the ALPR data stored in Vigilant's ALPR system.

36.     The ALPR Privacy Act mandates that *both* operators and end-users and customers adhere to five fundamental requirements:[22]

    a.  **The Security Requirement:** Both ALPR operators and end-users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal Civ. Code § 1798.90.51(a); *id*. § 1798.90.53(a).

    b.  **The Privacy Requirement:** Both ALPR operators and end-users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance,

---

[21] *License plate recognition usage and privacy policy*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/lpr_usage_and_privacy_policy.pdf [https://perma.cc/X8NM-QQNK].
[22] Cal. Civ. Code § 1798.90.5.

9

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." *Id*. § 1798.90.51(b)(1); *id*. § 1798.90.53(b)(1).

   c. **The Notice Requirement:** Both ALPR operators and end-users must post the usage and privacy policy "conspicuously" on their website and include the following information:

     i.  The authorized purposes for using the ALPR system and collecting ALPR information.

     ii.  A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

     iii.  A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

     iv.  The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

     v.  The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

     vi.  A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

     vii.  The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

*Id*. §§ 1798.90.51(b), 1798.90.53(b).

37.   Crucially, ALPR operators like Vigilant must also comply with two additional requirements to ensure consumer privacy and protect against unauthorized access:

   a. **The Audit Requirement.** California's ALPR statute provides that any time an

10

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

ALPR operator "provides access to ALPR information" in its systems (whether access is by the operator itself, its employees, or an end-user), the ALPR operator must "[m]aintain a record of that access." *Id*. § 1798.90.52(a). The statute provides a non-exhaustive list of what is required to maintain adequate ALPR access records. An ALPR access record will be automatically deemed non-compliant if it fails to include (1) "[t]he date and time the information is accessed"; (2) the search term used to query the system to return the ALPR information (such as license plate number or vehicle description); (3) who accessed the ALPR information and their entity affiliation; and (4) "[t]he purpose for accessing the information." *Id*. § 1798.90.52(a).

    b. **The Proper Use Requirement.** ALPR operators must also "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy . . . ." *Id*. §1798.90.52(b).

38. California public agencies collecting ALPR data may not share ALPR data with federal agencies or out-of-state law enforcement agencies. "A public agency ***shall not*** sell, share, or transfer ALPR information, except to another public agency, and only as otherwise permitted by law." *Id*. § 1798.90.55(b) (emphasis added).

39. "Public agency" for purposes of the ALPR Privacy Act means "the state, any city, county, or city and county, or any agency or political subdivision of the state or a city, county, or city and county, including, but not limited to, a law enforcement agency." *Id*. § 1798.90.5(f).

40. The California AG has interpreted this plain text of the ALPR Privacy Act (including, crucially, §§ 1798.90.5(f) & 1798.90.55(b)) as permitting sharing of ALPR data only with other California state and local agencies.

41. The California AG emphasized:[23]

Importantly, the definition of 'public agency' is limited to state or local agencies,

___

[23] John D. Marsh, Div. of L. Enf't, Cal. Dep't of Just., Info Bull. 2023-DLE-06, California Automated License Plate Reader Data Guidance (Oct. 27, 2023), https://oag.ca.gov/system/files/media/2023-dle-06.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

including law enforcement agencies, and does not include out-of-state or federal law enforcement agencies. (See Civ. Code, § 1798.90.5, subd. (f).) Accordingly, [the ALPR Privacy Act] does not permit California LEAs [Law Enforcement Agencies] to share ALPR information with private entities or out-of-state or federal agencies, including out-of-state and federal law enforcement agencies. This prohibition applies to ALPR database(s) that LEAs access through private or public vendors who maintain ALPR information collected from multiple databases and/or public agencies.[24]

42.     Likewise, the California AG has clarified that, under the ALPR Privacy Act, "ALPR operators [like Vigilant] . . . must develop a usage and privacy policy, which must be conspicuously posted on their website, and must contain provisions designed to 'protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.'"[25]

43.     The ALPR Privacy Act contains no exceptions that would permit sharing ALPR data collected in California with federal or out-of-state agencies for any purpose. Consistent with the California AG's interpretation of the ALPR Privacy Act, any such sharing is clearly prohibited by the Act's plain text.

44.     An individual harmed by a violation of the ALPR Privacy Act—"including, but not limited to, unauthorized access or use of ALPR information or a breach of security of an ALPR system"—may bring a civil suit "against a person who knowingly caused the harm" and recover (1) actual damages, but not less than liquidated damages in the amount of $2,500, (2) punitive damages upon proof of willful or reckless disregard of the law, (3) reasonable attorney's fees and other litigation costs reasonably incurred, and (4) other preliminary and equitable relief as the court determines to be appropriate. *Id*. § 1798.90.54.

45.     Here, Vigilant has knowingly been in violation of the ALPR Privacy Act since its enactment in 2015, and its violations are made more egregious by its proprietary technologies described below.

---

[24] *Id*.
[25] *Id*.

12

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

II.    **Vigilant and Motorola's ALPR Cameras and Software Amass, Analyze, and Interpret Massive Amounts of Data, Creating Detailed Vehicle Profiles and Histories in Violation of California Law**

46.    In the decade since the ALPR Privacy Act was enacted, ALPR camera technology has become more sophisticated, as have the software and algorithms that companies like Vigilant use to analyze and organize that data. One of the primary shifts between historical and modern ALPR technology is the transition from merely capturing static images of license plates to conducting real-time analysis and extensive tracking of license plates and vehicles.

47.    ALPR cameras, including Vigilant's, "automatically capture all license plate numbers that come into view, along with the location, date, and time."[26]

48.    Vigilant captures vehicle data and identifies automobiles through an integrated system of hardware, artificial intelligence, and cloud computing that goes far beyond just collecting license plates.

49.    Advancements in camera technology have allowed for the widespread proliferation of ALPR cameras. Vigilant has bragged about securing over 3,000 law enforcement agencies as clients.[27] The company offers easy access to its over 7 billion records of license plate data and adds 150 million more scans every month.[28] Vigilant has an enormous network of cameras deployed across the country as part of its "'hardware-as-a-subscription' offerings for law enforcement," which it markets as "simplifying procurement by offering cameras in a predictable subscription" model.[29]

50.    Vigilant offers several ALPR camera models, including its L6Q, L6D, L5F Fixed, and L5M Mobile, which can be mounted on police vehicles for free-wheeling license plate surveillance.[30]

---

[26] *Street Level Surveillance, Automated License Plate Readers*, Elec. Frontier Found. (October 1, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs.
[27] Conor Friedersdorf, *An Unprecedented Threat to Privacy*, The Atlantic (Jan. 27, 2016), https://www.theatlantic.com/politics/archive/2016/01/vigilant-solutions-surveillance/427047/.
[28] *The Data Broker to Deportation Pipeline*, *supra* note 7 at 8.
[29] 2025 10-K, Motorola Sols., Inc., *supra* note 9 at 35.
[30] *See Automatic Number Plate Recognition (ANPR) Systems*, Motorola Sols., https://www.motorolasolutions.com/en_xa/video-security-access-control/number-plate-

13

*Vigilant Camera Offerings*



L6Q



L5F Fixed



L6D



L5M Mobile

51.    Vigilant advertises that its cameras' "long-range, integrated infrared (IR) illumination and a new starlight sensor enable you to scan vehicles even in complete darkness."[31]

52.    Vigilant ALPR cameras capture photos of passing vehicles, along with date, time, and GPS coordinates.[32]

---

recognition-camera-systems.html [https://perma.cc/7MZB-UWAF]; *L6D Dual-Purpose LPR Camera*, Motorola Sols., https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l6d-dual-purpose-lpr.html [https://perma.cc/2NWZ-7FD3].

[31] *See Id.*; *The Best Camera to Start Your License Plate Recognition Program*, Motorola Sols., https://www.motorolasolutions.com/en_us/blog/l6q-license-plate-recognition-program [https://perma.cc/RHB7-CGPV].

[32] *Go Beyond Basic License Plate Recognition with VehicleManager*, Motorola Sols. (Nov. 18, 2024), https://www.youtube.com/watch?v=3RF0KWGZVzg&t=80s.

14

*Vigilant Vehicle-Detection Records (with Geolocation Pins and Timestamps)*



53.    Vigilant uses OCR software to isolate vehicle license plates from the images and converts them into machine-readable text, i.e., the plate number. Vigilant ALPR cameras capture at least the following information:[33]

      a.    License plate image;

      b.    Vehicle image;

      c.    Vehicle characteristics (e.g., color, make, model, and other vehicle attributes such as any vehicle accessories, damage, promotional writing, and bumper stickers);

      d.    Vehicle speed and travel direction;[34]

---

[33] *VehicleManager 7.0 User Guide - License Plate Query*, Motorola Sols., https://docs.motorolasolutions.com/bundle/84468/page/38f27c98.html [https://perma.cc/3HXM-ZPL8]; *VehicleManager*, Motorola Sols., https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/vehiclemanager-lpr-analytics-software.html [https://perma.cc/D345-UTDF].

[34] *Introduction to the L6D Dual-Purpose License Plate Recognition Camera*, Motorola Sols. (Jul. 28, 2025), https://www.youtube.com/watch?v=AqmVH5mokTE&list=PL-qcM_OQqRghfZaz-s6jxcDMBq5msT9Fy&index=11.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

e.  License plate number;

f.  License plate state;

g.  Date;

h.  Time; and

i.  Camera location.

*Vigilant Marketing Material[35]*



54.     Vigilant transmits these images and extracted information to its cloud servers. Once in the cloud, Vigilant then cross-checks the plate number against official state and law enforcement databases and feeds the ALPR data into a myriad of algorithms and tools to provide its customers with an ever-growing trove of information.

55.     Vigilant tells potential customers, "No license plate, no problem"; the company's powerful "AI Assist" enables customers to search for vehicles using natural language if they don't have a license plate number to search.[36] For example, a user could search for "red Mazda hatchback bumper sticker California today" to find all red Mazdas with bumper stickers captured in California today by the camera networks the user has access to. Vigilant's powerful tools allow

---

[35] *Id.*
[36] *VehicleManager Brochure*, *supra* note 2.

16

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

its customers to search for cars and people using granular details and even narrow the search to vehicles near certain locations, such as parks.[37]

56.    Vigilant's marketing material tells police agencies that if they have no leads in a case, it's not a problem; Vigilant's ALPR software can help them identify burglary suspects based on vehicles in close proximity to the burglary site, drug trafficking suspects based on vehicles that appear to travel together (which Vigilant's software can infer to be part of a "trafficking convoy"), and can "[f]ind a suspect on the run" by tracking their vehicle to their most commonly-visited locations.[38] But error rates for ALPR technology are high (at least 1 in every 10 vehicles) and have resulted in innocent Californians being stopped and held at gunpoint by police.[39]

57.    From a single set of vehicle images, Vigilant thus creates detailed, searchable, and dangerously actionable data records that extend far beyond just a license plate number.

58.    The insights that Vigilant garners from multiple vehicle captures are even more extensive. Vigilant's advanced location analytics use multiple data points for the same vehicle ("cluster detection") to "rate the likelihood of finding the vehicle at a specific location."[40] Vigilant's software can generate a probability field of every location where the vehicle (and its driver) is likely to be, along with expected "dates and times" when the vehicle will be at those locations.[41]

59.    Vigilant's high-end but inexpensive tools and the associated databases it has created grant law enforcement agencies across the country instant access to shared data from thousands of cameras—exactly the kind of practice the ALPR Privacy Act regulates.

60.    More than 160 California law enforcement agencies have used Vigilant's ALPR

---

[37] *Id*. at 7.
[38] *Id.* at 3.
[39] Adam Schwartz, *The Human Toll of ALPR Errors,* Elec. Frontier Found. (Nov. 1, 2024), https://www.eff.org/deeplinks/2024/11/human-toll-alpr-errors.
[40] *VehicleManager Enterprise User Guide, Audits*, Motorola Solutions (May 11, 2026), https://docs.motorolasolutions.com/bundle/87977/page/bd123441.html.
[41] *Motorola Solutions Proposal to Palos Verdes Police*, https://pvestates.granicus.com/MetaViewer.php?view_id=1&clip_id=2090&meta_id=100162.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

data.[42]

61.    Areas of California like Los Angeles, Riverside, Sacramento, Pleasanton, Modesto, and Chico are **blanketed** with Vigilant cameras:

*Select Vigilant Camera Locations within California*[43]



62.    Vigilant boasts that over 3,734 law enforcement agencies nationwide use its camera network and claims to collect over 100 million plate captures ***per day***.[44] For reference, the entire adult population of the United States is only about 270 million people. In its marketing material, Vigilant touts its expansive "[c]amera network," from which agencies "can collect detection data from any LPR camera systems," and its generous "[d]ata sharing," which allows agencies to "'grow' their network" without buying or leasing any cameras.[45] Vigilant displays the following map in its marketing material to showcase the vastness of its base of camera installations, from which agencies can draw data to "'grow' their network," using Vigilant's over

---

[42] *Table of Individual Responses to Selected Survey Questions re Automated License Plate Readers*, *supra* note 4.
[43] *ALPR Map*, *supra* note 3.
[44] *VehicleManager Brochure*, *supra* note 2, at 6.
[45] *Id.*

18

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

35 billion historical vehicle detections:[46]

*Vigilant Marketing Material: Vigilant's Nationwide Camera Network*



63.     Vigilant encourages its customers to share data because there is a "data sharing network effect" when more Vigilant devices come online and make data available to other participants in Vigilant's nationwide surveillance network.[47]

64.     Vigilant's vast array of cameras enable its customers to track a vehicle across multiple locations, revealing "sensitive details about where individuals work, live, associate, worship, seek medical care, and travel."[48] Bypassing warrants and laws designed to protect

---

[46] *Id.*; Vigilant PlateSearch Brochure, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vigilant-platesearch/vigilant_platesearch_brochure.pdf [https://perma.cc/W446-6CKC].

[47] *Id.* at 7.

[48] Letter from Jennifer Pinsof, Staff Att'y, Elec. Frontier Found.; Matt Cagle, Senior Staff Att'y, ACLU Found. of N. Cal.; Mohammad Tasjar, Senior Staff Att'y, ACLU Found. of S. Cal.; & David Trujillo, Chief Program & Strategy Officer, to Att'y Gen. Rob Bonta, Off. of the Att'y Gen., Cal. Dep't of Just., at 2 (Jan. 31, 2024) [hereinafter EFF–ACLU Joint Letter], https://www.eff.org/files/2024/01/30/2024-01-31_letter_to_ag_bonta_re_sb_34_final.pdf (citing *Automatic License Plate Readers*, Elec. Frontier Found. (Mar 29, 2023), https://sls.eff.org/technologies/automated-license-plate-readers-alprs; *You Are Being Tracked: How License Plate Readers Are Being Used to Record Americans' Movements*, ACLU (July 2013), https://www.aclu.org/you-are-being-tracked).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

personal liberties, Vigilant's ALPR system tracks, catalogues, and analyzes every turn of every driver's route, looking for "suspicious activity" to generate new business—not safer communities. As noted in recent reporting by the ACLU, each of Vigilant's advanced analytics and AI-powered features "are variants on the same theme: using the camera network not just to investigate based on suspicion, but to generate suspicion itself."[49]

65.    Law enforcement may appreciate that Vigilant makes their jobs easier, such convenience to police does not justify the increasingly invasive and pervasive surveillance and profiling of innocent Californians—which is highly offensive to a reasonable person.

### III.    Vigilant and Motorola Violate California Law by Sharing California ALPR Data with Out-of-State and Federal Agencies

66.    Vigilant's amassing of ALPR camera data, its proprietary surveillance tools, and its ability to profile and track vehicles raises serious privacy concerns. Of equal concern is that Vigilant shares this sensitive information with agencies outside of California's jurisdiction, robbing California drivers of the privacy protections afforded them under California law.

67.    While the ALPR Privacy Act explicitly prohibits California state and local agencies from sharing ALPR data with federal or out-of-state law enforcement, Vigilant's infrastructure and business model do just that. Vigilant's national network and permissive sharing tools enable and encourage out-of-state and federal law enforcement entities, such as Customs and Border Patrol, to track California drivers.

68.    **LEARN and NVLS:** Vigilant stores billions of historical vehicle detection records in its cloud servers as part of its Law Enforcement Archival Reporting Network (LEARN).[50]

---

[49] *See* Jay Stanley, *Surveillance Company Flock Now Using AI to Report Us to Police if It Thinks Our Movement Patterns Are "Suspicious"*, ACLU: NEWS & COMMENTARY (Aug. 7, 2025), https://www.aclu.org/news/national-security/surveillance-company-flock-now-using-ai-to-report-us-to-police-if-it-thinks-our-movement-patterns-are-suspicious [hereinafter Jay Stanley, *"Suspicious" Movement Patterns*].

[50] *Vigilant LEARN CJIS Security Compliance Guide*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/vigilant_learn_cjis_security_compliance_guide.pdf [https://perma.cc/29CJ-GSGN]; *Vigilant Solutions Enables Over 217,000 Law Enforcement*

Vigilant brags that its LEARN software enables 217,751 agency-to-agency license plate reader LPR data sharing relationships in the United States, enabling agencies to continuously monitor the movements of over 17 million actively-tracked, unique vehicles-of-interest across the U.S.[51] Vigilant's National Vehicle Location Service (NVLS) creates a "a pool of data accessed by scores of agencies," which Vigilant used to offer to police free-of-charge.[52] In its marketing material, Vigilant tells law enforcement that it "is the only LPR (license plate recognition) Company capable of architecting a national LPR data conglomerate . . . via NVLS. Vigilant Video is creating a virtual digital pipeline—a universal data system with one common goal in mind—making it easier for law enforcement to 'Catch the Bad Guy.'"[53] Vigilant brags that its law enforcement database comes "pre-loaded with private data."[54] Vigilant pitches potential law enforcement customers on its "Shared Law Enforcement Data," asserting that it has the "largest LPR database in the United States" that "hosts over 75 billion LPR scans" and that is "growing at a rate of 1 billion scans per month."[55] Some police departments, such as San Diego PD, admit they "subscribe[] to Vigilant in order to gain access to their nationwide database" despite "not hav[ing] any hardware assets" from Vigilant.[56]

69.    **VehicleManager and Data Sales:** Vigilant markets and sells its powerful ALPR

---

*Data Sharing Relationships*, Homeland Security Today (Oct. 26, 2015), https://www.hstoday.us/subject-matter-areas/transportation/vigilant-solutions-enables-over-217-000-law-enforcement-data-sharing-relationships/; *Vigilant PlateSearch Brochure*, *supra* note 46; *Vigilant ClientPortal Integration*, Avigilon, https://www.avigilon.com/fs/documents/Vigilant_ClientPortal_Integration-Fact_Sheet.pdf [https://perma.cc/8DMA-R4GC].
[51] *Vigilant Solutions Enables Over 217,000 Law Enforcement Data Sharing Relationships, supra* note 50.
[52] *Data Driven: What We Learned*, Elec. Frontier Found., https://www.eff.org/pages/what-we-learned.
[53] *HighPoint PD Public Records*, ACLU, https://www.aclu.org/wp-content/uploads/document/alprpra_HighPointPD_HighPointNC.pdf.
[54] *Id.*
[55] *Motorola Solutions Proposal to Palos Verdes Police*, *supra* note 41.
[56] *Annual Surveillance Report 2024*, San Diego Police Dep't, 49, https://www.sandiego.gov/sites/default/files/2025-02/sdpd-annual-surveillance-report-2024.pdf.

21

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

data analytics software under the name "VehicleManager."[57] Vigilant's marketing brochure for VehicleManager claims that the massive trove of ALPR data is "cumbersome," so VehicleManager can help you create "actionable intelligence" to "[f]ind the needle in the haystack" and "[d]iscover new vehicle leads."[58] The brochure asserts that VehicleManager will grant access to Vigilant's expansive "[c]amera network," from which agencies "can collect detection data from any LPR camera systems," including generous "[d]ata sharing," which allows agencies to "'grow' their network" without buying or leasing any cameras.[59]

70. VehicleManager allows agencies to upload a Memorandum of Understanding (MOU) that governs their sharing of ALPR data with other agencies, but Vigilant provides a "Default MOU" if agencies fail to do so.[60] Updating the MOU has no actual effect on the data sharing settings within the VehicleManager platform.[61]

71. VehicleManager makes it easy for any law enforcement agency to share ALPR data from its network with "**--ALL--**" other law enforcement agencies, including federal agencies and out-of-state police.[62]

72. Based on VehicleManager Agency Data Sharing Reports, VehicleManager also allows California law enforcement agencies to share ALPR data from their networks with private companies, such as Enterprise Rent-A-Car and Gold Strike Casino,[63] even though VehicleManager marketing materials state that this should be impossible.[64]

73. Vigilant specifically encourages agency clients to "[c]ontribute detections to the

---

[57] *VehicleManager Brochure*, *supra* note 2.
[58] *Id.*
[59] *Id.*
[60] *VehicleManager 7.0 User Guide, Data Sharing*, Motorola Sols., https://docs.motorolasolutions.com/bundle/84468/page/6df9acd1.html [https://perma.cc/BW2N-DEAW].
[61] *See id.*
[62] *Id.* ("To automatically accept [all] Detection shares, select **--ALL--**.").
[63] *See* VehicleManager Agency Data Sharing Reports, *supra* note 15.
[64] *Managing your LPR data*, *supra* note 14 ("To prevent the inadvertent sharing of data from law enforcement accounts, Motorola has physically separated Law Enforcement data within Azure Gov and enterprise data in Azure Commercial. This physical segmentation of networks blocks the data passing from VehicleManager (LE) data into our enterprise environments.").

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

License Plate Recognition Data (LPRD) program funded by the Department of Justice,"[65] even though this program is currently "unavailable."[66] It is unclear what opting into sharing ALPR data with the LPRD program does and who Vigilant ultimately shares this information with.

74.     Vigilant tells its law enforcement customers that tapping into shared data is "as easy as adding a friend on your favorite social media platform."[67]

75.     Vigilant's contracts with some police departments, such as Chula Vista PD, allow the company to sell the department's ALPR data as long as it is "anonymized."[68] Vigilant has taken the position that *all* "LPR is anonymous data – letters and numbers on a license plate" because "[t]here is no information about a registered owner or other person captured by an LPR system."[69] A former sales employee for Vigilant said it was the "worst and dirtiest company I've worked for."[70]

76.     These broad sharing practices provide avenues for illegal access to law enforcement ALPR data. "[ICE] often receives plate data indirectly through local and state agencies connected to commercial networks. ICE can therefore access LPR data from jurisdictions that, on paper, restrict sharing plate information with federal immigration authorities."[71]

77.     Recent reporting revealed that Vigilant gave hundreds more out-of-state and

---

[65] *Id.* (Screenshot under "Data Sharing" section noting "Contribute Detections to the License Plate Recognition Data (LPRD) program funded by the Department of Justice.").

[66] *LPR for Police Leadership: The Experience*, George Mason University, https://cebcp.org/lpr/lpr-for-police-leadership/lprd-license-plate-recognition-data-system/.

[67] Dave Maass, *ICE Accesses a Massive Amount of License Plate Data. Will California Take Action?*, Elec. Frontier Found. (Jan. 29, 2018), https://www.eff.org/deeplinks/2018/01/ice-accesses-massive-amount-license-plate-data-will-california-take-action.

[68] Amita Sharma, *Chula Vista's contract with Motorola sells out residents' privacy, advocates say*, KPBS (Jan. 13, 2022), https://www.kpbs.org/news/local/2022/01/13/chula-vistas-contract-with-motorola-sells-out-residents-privacy-advocates-say.

[69] *Vigilant Solutions Enables Over 217,000 Law Enforcement Data Sharing Relationships*, *supra* note 50.

[70] *Motorola Solutions,* Glassdoor, https://www.glassdoor.sg/Reviews/Employee-Review-Motorola-Solutions-E427189-RVW89041077.htm.

[71] Anthony Kimery, *ICE's license plate app quietly expands a nationwide surveillance web*, BiometricUpdate.com (Nov. 18, 2025), https://www.biometricupdate.com/202511/ices-license-plate-app-quietly-expands-a-nationwide-surveillance-web.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

federal agencies access to California ALPR data from the California Highway Patrol, Fresno County Sheriff, Newport Beach Police Department, West Covina Police Department, Oakley Police Department, San Pablo Police Department, Pleasanton Police Department, Pittsburg Police Department, Redding Police Department, Laguna Beach Police Department, and Solano County Sheriff's Office.[72]

78.    Federal law enforcement agencies with access to California ALPR data include the San Diego Sector Border Patrol, Federal Bureau of Investigation, Drug Enforcement Administration, Department of Defense, "ICE ERO" (presumably Enforcement and Removal Operations), Department of Homeland Security, NASA, and the US Patent and Trademark Office.[73] Out-of-state law enforcement agencies with access to California ALPR data include the Houston Police Department (TX), the Alabama Drug Enforcement Task Force (ADETF), and Arizona Office of Child Welfare Investigations (AZ).[74]

79.    Motorola Solutions is no mere passive investor in Vigilant. Motorola directly designs, develops, markets, and promotes the VehicleManager platform—the ALPR analytics software at the heart of this case—under the Motorola Solutions brand. Motorola's own public-facing product webpage describes VehicleManager as a product of Motorola Solutions and markets it directly to law enforcement agencies as a tool that can "[t]ransform license plates into leads with patented, powerful vehicle location analytics and access to billions of detections beyond your own."[75]

80.    Motorola's branded marketing materials describe VehicleManager as a "vehicle location intelligence solution" built to do far more than basic license plate recognition.[76] As

---

[72] Mike Katz-Lacabe, *Dozens of California Law Enforcement Agencies Illegally Sharing License Plate Reader Data*, Oakland Privacy (June 18, 2026), https://oaklandprivacy.org/dozens-of-california-law-enforcement-agencies-illegally-sharing-license-plate-reader-data/.
[73] *See* VehicleManager Agency Data Sharing Reports, *supra* note 15.
[74] *Id.*
[75] *Vigilant VehicleManager LPR Software*, Motorola Sols., https://www.motorolasolutions.com/en_xl/video-security-access-control/license-plate-recognition-camera-systems/vigilant-vehiclemanager-lpr-analytics-software.html.
[76] *VehicleManager Brochure*, *supra* note 2.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Motorola's official VehicleManager brochure explains, the system's stated purpose is to let agencies "find and review the location history of a vehicle of interest and determine where it may be located in the future."[77] The brochure further describes capabilities enabling law enforcement to generate a "heat map" revealing "when the vehicle is most likely to be" at a given location—intelligence derived from amassing and analyzing the location histories of millions of vehicles, including those of law-abiding California residents with no connection to any criminal investigation.[78]

81.    Central to Motorola's VehicleManager business model is data sharing across agency lines, including across state lines. Motorola's brochure touts the platform's ability to let agencies "grow" their surveillance network by sharing data with "business partners," and advertises that the system currently connects "3,734+ agencies and business partners capable of data sharing" and processes "100.1M+ daily detections from agency and business partners."[79]

82.    Motorola's product webpage similarly advertises access to "billions of detections beyond your own," inviting California law enforcement agencies to tap into a national surveillance network that includes data shared from out-of-state and federal partners.[80] This cross-jurisdictional data sharing, which Motorola affirmatively markets and enables, is precisely what California's ALPR Privacy Act prohibits.

83.    Motorola's VehicleManager system also integrates AI-powered search capabilities that Motorola markets and controls. Motorola's brochure describes an "AI-powered Search Assist" tool embedded in VehicleManager that allows officers to search for vehicles in natural language—including without a license plate number—by describing a vehicle's make, model, color, accessories, damage, and even its environment or surrounding area.[81] Motorola's VehicleManager product webpage likewise promotes this "Assist" feature as part of Motorola

---

[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Vigilant VehicleManager LPR Software*, *supra* note 75.
[81] *VehicleManager Brochure*, *supra* note 2.

25

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Solutions' broader AI suite, describing it as "thoughtfully integrated to offer insights drawn from your entire workflow."[82] Motorola has thus engineered VehicleManager not merely as a passive database but as an active AI-driven surveillance engine capable of identifying and tracking California drivers' vehicles with increasing granularity.

84. Motorola's own marketing materials acknowledge that Motorola Solutions, not just Vigilant, owns and controls the ALPR cameras and underlying data infrastructure. The VehicleManager brochure expressly states that the platform allows agencies to "[m]anage your Motorola Solutions LPR camera systems," confirming that the cameras feeding data into the VehicleManager system are Motorola Solutions' own products.[83]

85. Despite Motorola's claims about data-retention flexibility, Motorola's VehicleManager brochure reveals that the platform's built-in data sharing features include "memorandum of understanding (MOU) templates" designed to enable agencies to share ALPR data with "other law enforcement agencies as well as local business partners."[84] These MOU templates—provided and standardized by Motorola—facilitate, encourage, and normalize precisely the kind of cross-jurisdictional and out-of-state ALPR data sharing that California law prohibits. By embedding data-sharing templates into the platform's design, Motorola has baked legal violations into VehicleManager's architecture.

86. Motorola markets VehicleManager directly to California law enforcement as part of a purported nationwide "public safety" ecosystem. Motorola's VehicleManager product webpage offers California agencies the ability to "leverage your local data and/or shared data" to "narrow your investigation" using "the most diverse LPR search platform"—a search platform that, as alleged herein, aggregates California ALPR data and makes it available to out-of-state and federal agencies in violation of the ALPR Privacy Act.[85] Motorola's promotion of VehicleManager thus directly induces California law enforcement agencies to participate in

---

[82] *Vigilant VehicleManager LPR Software*, *supra* note 75.
[83] *VehicleManager Brochure*, *supra* note 2.
[84] *Id.*
[85] *Vigilant VehicleManager LPR Software*, *supra* note 75.

26

unlawful data sharing practices.

87.     **ClientPortal for Private Businesses:** Vigilant markets and sells its ClientPortal ALPR software to private businesses. Vigilant says that "Vigilant ClientPortal empowers your team with detections from your own cameras or from our commercial partner network, patented vehicle location analytics and plate-based enforcement tools to generate actionable insights that grow and protect revenue."[86] Vigilant encourages any private parties that utilize ClientPortal to "[s]hare data with Vigilant LEARN platform" to provide ALPR data from private cameras to law enforcement agencies, including those out-of-state.[87] Vigilant also encourages ClientPortal users to enable "NICB Sharing," which shares ALPR data from their camera systems with the National Insurance Crime Bureau's centralized Intelligence and Analytics Database, which makes vehicle data available nationwide from over 1,200 member insurance companies, vehicle finance companies, and law enforcement agencies.[88]

88.     **"Side-Door" Access:** A recent investigation reveals that federal agencies also have "side-door" access to Vigilant's ALPR data from California police departments.[89] This method bypasses the need for a formal data-sharing agreements prohibited by the ALPR Privacy Act. Police officers may, in contravention of California law, use their Vigilant system access to run plates on behalf of a federal agent or give their login credentials to a federal agent. For example, ICE agents and CBP agents utilized side-door access to the Long Beach Police Department's ALPR system to unlawfully run 278 and 578 plate searches in just a 9-month period.[90]

---

[86] *Vigilant ClientPortal Brochure*, Motorola Sols., https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/vigilant_clientportal_fact_sheet.pdf [https://perma.cc/928K-5CH8].
[87] *ClientPortal User Guide*, Data Sharing, Motorola Sols. (Last updated: Dec. 16, 2025), https://docs.motorolasolutions.com/bundle/70659/page/02da2e76.html [https://perma.cc/LGX9-THS7].
[88] *See id*.
[89] Kevin Hessel, *Ark investigation uncovers federal searches of Tiburon license-plate data*, THE ARK (February 8, 2026), https://www.thearknewspaper.com/live/ark-investigation-uncovers-federal-searches-of-tiburon-license-plate-data.
[90] *ICE Accesses a Massive Amount of License Plate Data*, *supra* note 67.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

89.     This is possible only because Vigilant designed its product to allow local police to perform lookups in Vigilant's ALPR system on behalf of unauthorized external users and has no system for detecting a mismatch between the type of user and the types of searches they are running. This contravenes guidance from the California AG regarding the permissible uses of ALPR data under the ALPR Privacy Act.

**IV.   Vigilant Violates California Law by Failing to Implement an Adequate Policy**

90.     The ALPR Privacy Act requires operators and end-users like Vigilant to implement specific provisions in their usage and privacy policy to protect Californians. Cal. Civ. Code § 1798.90.52(b); § 1798.90.53(b). Defendants have a "license plate recognition usage and privacy policy," which was last updated in 2025,[91] but the policy violates California's ALPR statute in the following ways.

91.     **Defendants' Privacy Policy Fails to Respect Californians' Privacy and Civil Liberties.** California's ALPR statute requires that operators and end-users like Vigilant implement a privacy policy designed to "ensure that the access, use, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties." Cal. Civ. Code § 1798.90.51(b)(1). Vigilant's policy is not designed to respect individuals' privacy and civil liberties because it allows widescale surveillance of California's citizens, including their movement patterns over time, and sharing of their sensitive ALPR data to out-of-state and federal law enforcement agencies and private entities.

92.     **Restrictions on Who Can Access ALPR Data.** California's ALPR statute requires Vigilant's privacy policy to describe "the job title or other designation of the employees and independent contractors" who are authorized to use or access the system, or to collect ALPR information. Cal. Civ. Code §§ 1798.90.51(b)(2)(B), 1798.90.53(b)(2)(B). But Vigilant's policy states that "[a]ll employees of the company" and "[a]ll independent contractors of the company" are authorized to use the system, which fails to list all job titles of employees and contractors such that, for example, an outside auditor could evaluate whether access seems appropriate for those

---

[91] *License plate recognition usage and privacy policy*, *supra* note 21.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

job titles. Vigilant fails to enumerate, for example, that it provides access to ALPR data to office managers and HR representatives—which would make apparent the company's lack of justification for doing so.

93.    **ALPR Compliance Monitoring.** Vigilant's privacy policy is required to describe "how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws." Cal. Civ. Code §§1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C). Vigilant must have its own ALPR compliance monitoring program and describe the program in its privacy policy. *See id*. But Vigilant failed to adopt *any* compliance program or monitoring and instead put the onus on its customers, whom it says are "responsible for ensuring that they and their end-users comply with applicable laws (including data protection and privacy laws)" when using their LPR system or products. Vigilant cannot disclaim its explicit obligation under the ALPR Privacy Act. Vigilant's abdication to its customers of this responsibility for compliance means that Vigilant does not in fact monitor for compliance with applicable privacy laws, including the ALPR Privacy Act. This failure has resulted in the illegal sharing of ALPR data from California law enforcement agencies with out-of-state and federal law enforcement and private entities.

94.    **Restrictions on Sale, Sharing, or Transfer of ALPR Data.** Vigilant is required in its privacy policy to describe the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons." Cal. Civ. Code §§1798.90.51(b)(2)(D), 1798.90.53(b)(2)(D).

95.    Vigilant's policy, however, says only that it "licenses our commercially collected LPR data to customers for the authorized uses" and "[t]hrough an [unnamed] affiliate subsidiary of our parent company, the company collects data for commercial purposes and does not collect data on behalf of law enforcement agencies." The policy also states that, "[w]ith respect to data collected by a [law enforcement agency] LEA, we facilitate sharing that data only with other LEAs and, in that case, only to the extent the agency has reviewed and agreed to the share."

96.    This privacy policy fails to inform Californians of the process Vigilant uses for sharing or selling commercial or law enforcement data, including which Vigilant entities control the data, how ALPR data is shared to nationwide surveillance networks (including how it is

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

shared, sold, or integrated with Vigilant's LEARN and National Vehicle Location Service, Thomson Reuters's CLEAR database, Palantir's databases, the DEA's NLPRP database, and the NICB database), Vigilant's process for determining which entities count as "law enforcement" and/or are eligible to receive law enforcement data, whether information shared by law enforcement is copied and separately stored on Vigilant's servers and/or is used to train Vigilant's AI algorithms, and why Vigilant reserves the right in certain law-enforcement contracts to sell "anonymized" ALPR data and what "anonymized" means to Vigilant. And Vigilant's privacy policy fails to describe any restrictions on the sharing, sale, or transfer of commercially collected ALPR data.

97.    **Accuracy of ALPR Data.** Vigilant's privacy policy fails to describe "reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors." Cal. Civ. Code §§1798.90.51(b)(2)(F), 1798.90.53(b)(2)(F). Instead, Vigilant's privacy policy says that ALPR data is "collected" and "included in the system without review," despite acknowledging that "license plate translation is sometimes inaccurate." Vigilant thus has no "reasonable measures" to "ensure the accuracy of ALPR information and correct data errors," in violation of the ALPR Privacy Act.

98.    **Conspicuous Posting Requirement.** The ALPR Privacy Act requires that ALPR providers like Vigilant post their privacy policy "conspicuously" on their internet website. Cal. Civ. Code §§1798.90.51(b)(1), 1798.90.53(b)(1). Vigilant has an internet website, but its privacy policy is not posted conspicuously. The Motorola Solutions homepage does not contain a link to the LPR usage and privacy policy.[92] Nor does the "Site Map" web page,[93] the "Trust Center" web page,[94] the "Privacy" sub-page to the "Trust Center" page,[95] or the "Compliance" web page.[96] Not even Vigilant's "License Plate Recognition (LPR) Systems" webpage contains a link to the

---

[92] https://www.motorolasolutions.com/en_us.html.
[93] https://www.motorolasolutions.com/en_us/site-map.html.
[94] https://www.motorolasolutions.com/en_us/about/trust-center.html.
[95] https://www.motorolasolutions.com/en_us/about/trust-center/privacy.html.
[96] https://www.motorolasolutions.com/en_us/about/trust-center/compliance.html.

30

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

LPR usage and privacy policy.[97] Instead, the privacy policy is buried at the very bottom of Vigilant's page on specific LPR camera products or software under a "Resources" tab[98] and heading.[99] Concealing the LPR usage and privacy policy within technical specs and product whitepapers is an obvious tactic to make finding Vigilant's LPR privacy policy difficult for the individuals whose ALPR data is actually subject to it.

## V. Vigilant Violates California Law by Failing to Implement Reasonable Security Procedures to Prevent Unlawful ALPR Information Sharing

99.     The ALPR Privacy Act requires ALPR operators to ensure that information in their ALPR system will be used exclusively for purposes authorized by their usage and privacy policy. Cal. Civ. Code § 1798.90.52(b).

100.     Vigilant's usage and privacy policy states:

> The company authorizes collection of LPR data for the use of the company and its customers consistent with this policy and *in compliance with applicable laws*.
>
> The authorized uses of the LPR system are:
>
> (1) By customers to identify or ascertain the location of a specific vehicle under circumstances when there is a legitimate commercial interest.
>
> (2) By law enforcement agencies for law enforcement purposes.
>
> (3) By the company to (i) make LPR data available to customers and law enforcement agencies (LEAs) for the purposes above, (ii) provide, create, and improve products and services, and (iii) to provide analytics to customers based on company owned aggregated LPR data.[100]

(emphasis added).

---

[97] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems.html.
[98] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l5f-fixed-lpr-camera-system.html.
[99] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/l6q-quick-deploy-lpr/l6q-details.html.
[100] *License plate recognition usage and privacy policy*, *supra* note 21.

31

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

101.    By designing its ALPR system to allow out-of-state and federal agency sharing of California law enforcement ALPR data, Vigilant facilitates (and even encourages) unauthorized uses of ALPR data and fails to abide by its statutory duty to ensure compliance with its privacy policy's promise that ALPR data will only be used "in compliance with applicable laws," including California's ALPR Act.

102.    The ALPR Privacy Act requires Vigilant to maintain reasonable security procedures and practices to protect ALPR information from unauthorized access. Cal. Civ. Code § 1798.90.51(a). Vigilant's practices, including those listed above, all allow out-of-state and federal law enforcement, as well as private entities, to access California ALPR data. But for Vigilant's policies, design, and infrastructure technology, California law enforcement agencies could not and would not violate the ALPR Privacy Act as it pertains to their use of Vigilant ALPR information.

103.    Vigilant disavows its compliance responsibilities and insists that its customers—not Vigilant—are the ones who bear the onus for obeying the law. But the burden of compliance rests not just on law enforcement agency customers but on Vigilant and other ALPR operators, too. The ALPR Privacy Act obligates Vigilant as an ALPR operator and end-user to "***ensure*** . . . compliance with applicable privacy laws." *See* Cal. Civ. Code. §§ 1798.90.51(b)(2)(C), 1798.90.53(b)(2)(C) (emphasis added).

104.    While Vigilant maintains that its law enforcement customers choose whether to share LPR data with other customers in accordance with their laws and policies, this fails to acknowledge that the Vigilant platform is the means by which the illegal sharing occurs. Vigilant can and must build its ALPR system to abide by California law.

105.    While some California law enforcement agencies were surprised to learn that their Vigilant systems were sharing information in violation of the ALPR Privacy Act, others shared this information intentionally. Vigilant could have predicted and should have prevented these actions, particularly given the interpretative guidance from and enforcement actions taken by the California Attorney General. Law enforcement agencies (in California and elsewhere) have routinely flouted other California laws relating to, for example, bans on the use of facial

32

recognition technology and the use of drones. Vigilant could not reasonably expect that every single one of its law enforcement customers would properly comply with California's ALPR law, especially when Vigilant encourages data sharing with federal and out-of-state police law enforcement.

106.    Vigilant is in a better position than its law enforcement customers to disable all sharing of Californians' ALPR data from Vigilant's system with out-of-state or federal agencies or private entities, and can easily do so. Had Vigilant spent at least as much time restricting unlawful ALPR data sharing as it did *facilitating* and *marketing* such sharing, California law enforcement agencies would be technologically incapable of unlawfully sharing Californian's sensitive location data through Vigilant's platform.

107.    Had Vigilant implemented required and reasonable measures to prevent the dissemination of California ALPR data to out-of-state and federal agencies and private entities, it would have complied with the ALPR Privacy Act itself and prevented California law enforcement agencies from violating the ALPR Privacy Act through the Vigilant platform. These steps would be trivial for Vigilant to implement.

**VI.    <u>Vigilant's Security Measures Fall Far Below Reasonable Procedures and Practices</u>**

108.    Vigilant violates the ALPR Privacy Act further by failing to implement and maintain reasonable security procedures and practices. Its lax approach to data security has further enabled information-sharing in violation of the ALPR Privacy Act and constitutes privacy violations under California law.

109.    For example, Vigilant does not require multifactor authentication ("MFA") when law enforcement end-users access its ALPR database.[101] Mandating MFA—"an everyday, familiar technology"—would prevent rogue California law enforcement officers from easily sharing access credentials with their out-of-state and federal counterparts.

---

[101] *Technical Service Bulletin for VehicleManager 8.0.248*, Motorola Sols., 2, https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vehiclemanager/vehiclemanager_cjis_security_compliance_guide.pdf [https://perma.cc/4JJH-CKJR].

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

110.    Perhaps ironically, a Motorola Solutions cybersecurity specialist wrote an article in *Police Chief* magazine stating that public safety agencies "are often challenged when it comes to recruiting and retaining experienced cybersecurity personnel," even though "the potential for harm from external factors is substantial."[102]

111.    Vigilant regularly violates the "general tenet of cybersecurity that you should not collect and retain more personal data than you are capable of protecting."[103] An analysis by the Electronic Frontier Foundation found that 99.9% of collected ALPR data was unrelated to any public safety interest.[104]

112.    The Michigan Cyber Command center found a total of seven vulnerabilities in Vigilant devices; two of which were medium severity and five of which were high severity vulnerabilities.[105] One of the most severe vulnerabilities was that every camera sold by Motorola had a Wi-Fi network turned on by default that used the same hardcoded password as every other camera, meaning that if someone was able to find the password to connect to one camera they could connect to any other camera as long as they were near it.[106] Someone with physical access to Vigilant cameras could easily install a backdoor, giving them full access to the camera, allowing them to see all historical license plate data which was stored without any encryption and to view logs containing authentication information which could be used to connect to a back-end server where more information is stored.[107]

113.    Security researcher Matt Brown found more than 150 Motorola ALPR cameras that had exposed their video feeds and were leaking data, as well as broadcasting live footage

---

[102] Dave Maass & Cooper Quintin, *New ALPR Vulnerabilities Prove Mass Surveillance Is a Public Safety Threat*, Elec. Frontier Found. (June 18, 2024), https://www.eff.org/deeplinks/2024/06/new-alpr-vulnerabilities-prove-mass-surveillance-public-safety-threat.
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

accessible to anyone on the internet.[108]

114.    Stronger safeguards would include "zero-trust access models, time-limited permissions, and multi-party approval for historical searches."[109]

115.    Vigilant also encourages police to access its ALPR databases through its mobile application, knowing full well that police officers are not typically issued cell phones by their departments, instead relying on two-way radios and mobile data terminals to communicate.[110] Vigilant thus encourages law enforcement officers to access sensitive ALPR information through unsecured personal devices. Vigilant also lets police officers "scan license plates" using their mobile devices.[111]

*Vigilant Marketing to Police Departments Showing Mobile Plate Scan*



---

[108] Matt Burgess & Dhruv Mehrotra, *License Plate Readers Are Leaking Real-Time Video Feeds and Vehicle Data*, Wired (Jan. 7, 2025), https://www.wired.com/story/license-plate-reader-live-video-data-exposed/.

[109] Juan Martinez, *Police Misuse of ALPR Technology for Stalking Romantic Partners Raises Privacy and Oversight Concerns in U.S. Law Enforcement*, BizTech Wkly. (Apr 30, 2026), https://biztechweekly.com/police-misuse-of-alpr-technology-for-stalking-romantic-partners-raises-privacy-and-oversight-concerns-in-u-s-law-enforcement/.

[110] *VehicleManager Brochure, supra* note 2.

[111] *Motorola Solutions Proposal to Palos Verdes Police*, *supra* note 41.

35

*Vigilant VehicleManager Brochure Showing Mobile PlateSearch*



116.    The Auditor for the State of California criticized Vigilant for this practice, stating that, "[b]ecause the Vigilant software is by default accessible via the Internet, an officer may be able to access it using his or her personal device," and "[t]he ability to access ALPR data in this manner bypasses the agencies' network security safeguards and violates CJIS policy requiring agencies to monitor and control access to the data."[112] The Auditor recommends, "One way to prevent users from signing in to the Vigilant system using personal devices would be to implement authentication controls, such as two-factor authentication," which "involves a second level of verification, such as a passcode sent to a specific device, and allows agencies to require that the passcode be sent only to department-issued devices."[113] Vigilant fails to implement such security safeguards to restrict access to ALPR data to only approved department-issued devices.

117.    Vigilant claims to be setting the standard for public safety technology and cybersecurity yet continues to be in blatant violation of the ALPR Privacy Act.

---

[112] *Audit Results*, Auditor for the State of Cal., https://information.auditor.ca.gov/reports/2019-118/auditresults.html.
[113] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

## VII. Vigilant's ALPR Data Collection, Aggregation, and Dissemination Practices Are Highly Offensive

118. Vigilant collects Plaintiffs' ALPR data, constantly and indiscriminately, any time Plaintiffs' vehicles drive by one of the thousands of Vigilant ALPR cameras spread throughout the state of California. Across Vigilant's network of thousands of cameras, Plaintiffs' location and movement are tracked throughout their lives—including on their commutes, while visiting loved ones, getting food, attending protests, or going to church or healthcare appointments. In the aggregate, this data is especially sensitive; Vigilant can infer their food preferences, their health problems, their religion, their political affiliation, who they associate with and many other sensitive details of their lives.

119. Vigilant's practices have caused Plaintiffs to completely lose control over their ALPR data, including location, movement, and travel data. Because of Vigilant's permissive sharing settings, Plaintiffs' data is, has been, and any moment can be shared illegally with an enormous network of out-of-state and federal law enforcement agencies and private entities.[114]

120. Defendants' usage and privacy policy provides Plaintiffs only with scant and vague information as to when, how, and by whom their ALPR information is collected, used, accessed, or maintained, or for what purpose. Plaintiffs cannot know what entities or actors their ALPR information has been disseminated or sold to, including their sensitive location and movement data, or for what their data is disseminated or otherwise used. If Plaintiffs' ALPR data is misused, Defendants' inadequate recordkeeping ensures that Plaintiffs cannot know who misused their information or for what purpose.

121. When combined with a corresponding license plate number, this location and movement data, can be easily used to identify an individual (such as in combination with DMV records). Defendants also use Plaintiffs' ALPR data to generate insights and analytics from aggregated ALPR data, third-party data, and its proprietary software, such as predicting their

---

[114] *See Chula Vista's contract with Motorola sells out residents' privacy*, *supra* note 68.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

future location.

122.    Plaintiffs know that every time they drive their vehicle along their usual routes, their location and movement data is captured and stored in a database disseminated illegally to unknown out-of-state and federal law enforcement, and even private entities. Many of the entities that this data is or can be disseminated to are states away from where Plaintiffs drive, and many of those entities sit outside California's jurisdiction. Plaintiffs' movement and driving patterns can therefore be observed and analyzed by law enforcement, of other sovereigns with their own political agendas, hundreds or thousands of miles away from where Plaintiffs drive.

123.    In addition to the entities the Plaintiffs' ALPR data has already been and currently is disseminated to, Plaintiffs go about their daily lives with the knowledge that their location and movement data can at any moment be disseminated to and viewed by additional out-of-state and federal law enforcement and private entities without their knowledge or consent.

124.    This pervasive surveillance of their location and movement data, which is collected, aggregated, analyzed, and then disseminated to unknown parties causes Plaintiffs to feel watched in their daily lives.

125.    Vigilant's practices are made more offensive by the ways in which ALPR data is used for discriminatory purposes, threatens access to healthcare, and chills free speech.

126.    **ALPR Networks Can Amplify Discriminatory Policing Practices.** As noted by several privacy advocates and the ACLU, "police often disproportionately deploy license plate readers in communities experiencing poverty and historically overpoliced communities of color, regardless of crime rates."[115] There are numerous accounts of police relying on ALPR data to hold

---

[115] EFF–ACLU Joint Letter, *supra* note 48, at 2 (citing Dave Maass & Jeremy Gillula, *What You Can Learn from Oakland's Raw ALPR Data*, Elec. Frontier Found. (Jan. 21, 2015), https://www.eff.org/deeplinks/2015/01/what-we-learned-oakland-raw-alpr-data; Barton Gellman & Sam Adler-Bell, *The Disparate Impact of Surveillance*, Century Found. (Dec. 21, 2017), https://production-tcf.imgix.net/app/uploads/2017/12/03151009/the-disparate-impact-of-surveillance.pdf); *see also, e.g.,* Kaveh Waddell, *How License-Plate Readers Have Helped Police and Lenders Target the Poor*, The Atlantic (Apr. 22, 2016), https://www.theatlantic.com/technology/archive/2016/04/how-license-plate-readers-have-helped-police-and-lenders-target-the-poor/479436 (summarizing data indicating that Oakland

38

innocent people of color at gunpoint.[116] ALPR systems have approximately a 1 in 10 error rate, and police frequently rely on ALPR when mistaking law-abiding citizens for car thieves, particularly for people of color.[117] Improper sharing of ALPR data increases the risk to the lives of everyday people.

127.    **Threats to Access to Abortion and Gender-Affirming Care.** The weaponization of ALPR data also threatens individuals seeking constitutionally protected healthcare in California. Location information from California-based ALPR cameras can be used by agencies in restrictive states to monitor clinics, track vehicles, and survey the movements of patients and providers.[118] An ALPR database has indeed been used to track a woman across state lines who had self-administered an abortion.[119]

---

Police Department deployed ALPRs disproportionately, often in low-income areas and in neighborhoods with high concentrations of African-American and Latino residents")).

[116] Schwartz, *The Human Toll of ALPR Errors, supra* note 39.

[117] *Id.*

[118] *See, e.g.*, Caroline Kitchener & Devlin Barrett, *Antiabortion lawmakers want to block patients from crossing state lines*, Wash. Post (June 29, 2022, at 18:17 ET), https://www.washingtonpost.com/politics/2022/06/29/abortion-state-lines (last updated June 30, 2022, at 8:30 ET); *Idaho governor signs 'abortion trafficking' bill into law*, AP NEWS (Apr. 6, 2023), https://apnews.com/article/idaho-abortion-minors-criminalization-b8fb4b6feb9b520d63f75432a1219588; Josh Moon, *Alabama AG: state may prosecute those who assist in out-of-state abortions*, Ala. Pol. Rep. (Sept. 15, 2022, at 6:30 CT), https://www.alreporter.com/2022/09/15/alabama-ag-state-may-prosecute-those-who-assist-in-out-of-state-abortions.

[119] Joseph Cox & Jason Koebler, *A Texas Cop Searched License Plate Cameras Nationwide for a Woman Who Got an Abortion*, 404 Media (May 29, 2025), https://www.404media.co/a-texas-cop-searched-license-plate-cameras-nationwide-for-a-woman-who-got-an-abortion. Flock and the Johnson County, Texas, Sheriff initially insisted that the search was not "related to enforcing Texas's abortion ban" and that "media accounts" were "'false,' 'misleading,' and 'clickbait.'" These claims were proven false. *See* Dave Maass & Rindala Alajaji, *Flock Safety and Texas Sheriff Claimed License Plate Search Was for a Missing Person. It Was an Abortion Investigation.*, Elec. Frontier Found. (Oct. 7, 2025), https://www.eff.org/deeplinks/2025/10/flock-safety-and-texas-sheriff-claimed-license-plate-search-was-missing-person-it ("New documents and court records obtained by EFF show that Texas deputies queried Flock Safety's surveillance data in an abortion investigation. The new information shows that deputies had initiated a 'death investigation' of a 'non-viable fetus,' logged evidence of a woman's self-managed abortion, and consulted prosecutors about possibly charging her."); Jason Koebler & Joseph Cox, *Police Said They Surveilled Woman Who Had an Abortion for Her 'Safety.' Court Records Show They Considered Charging Her With a Crime*, 404 Media (Oct. 7, 2025),

39

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

128.    Given that multiple states have moved to criminalize obtaining or facilitating out-of-state abortions, sharing Vigilant data with their law enforcement agencies threatens anyone involved in abortion care within California.[120] Parallel efforts to criminalize out-of-state travel for gender-affirming care expose another vulnerable population to the same risks.

129.    **Threats to Protected First Amendment Activity**. ALPR data can and has also been used to track individuals in association with constitutionally protected activity. "Aggregated location data allows law enforcement and private companies to create detailed profiles of a person's daily life. When considered in bulk, ALPR data can form an intimate picture of a driver's activities and even deter First Amendment–protected activities. This kind of targeted tracking threatens to erode fundamental freedoms of speech."[121] Law enforcement has indeed used ALPR data to track individuals exercising their First Amendment rights, including engaging in peaceful protest.[122]

130.    **ALPR Networks Facilitate Stalking.** Recent reporting indicates that some police officers use ALPR camera networks to "keep tabs on their romantic interests, including current partners, exes, and even strangers who unwittingly caught their eye in public."[123] Because no warrant is required to search an ALPR system, an officer can enter a fake "reason" for the license

https://www.404media.co/police-said-they-surveilled-woman-who-had-an-abortion-for-her-safety-court-records-show-they-considered-charging-her-with-a-crime/.
[120] Dave Maass, *Automated License Plate Readers Threaten Abortion Access. Here's How Policymakers Can Mitigate the Risk*, Elec. Frontier Found. (Sept. 28, 2022), https://www.eff.org/deeplinks/2022/09/automated-license-plate-readers-threaten-abortion-access-heres-how-policymakers.
[121] SB274 Analysis, Cal. State Assembly Comm. on Priv. and Consumer Prot., https://apcp.assembly.ca.gov/system/files/2025-07/sb-274-cervantes-apcp-analysis.pdf, at 4 (last visited Feb. 22, 2026).
[122] Dave Maass and Rindala Alajaji, *How Cops Are Using Flock Safety's ALPR Network to Surveil Protesters and Activists*, Elec. Frontier Found. (Nov. 20, 2025), https://www.eff.org/deeplinks/2025/11/how-cops-are-using-flock-safetys-alpr-network-surveil-protesters-and-activists.
[123] Christopher Ingraham, *Police Have Reportedly Used License Plate Readers to Stalk Romantic Interests at Least 18 Times in Recent Years*, Inst. For Just. (Apr. 27, 2026), https://ij.org/police-have-reportedly-used-license-plate-readers-to-stalk-romantic-interests-at-least-14-times-in-recent-years/.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

plate search, gaining access to a person's detailed location history and driving patterns.

131. As above, the ALPR Privacy Act prohibits all unauthorized ALPR data sharing with federal agencies and out-of-state law enforcement agencies, minimizing who has access to this sensitive location data. The use and sharing of ALPR data for discriminatory purposes and to threaten access to healthcare, track those engaging in protected First Amendment activity, and stalk romantic interests heightens the highly offensive nature of the widespread collection, storage, use, and sharing of ALPR data.

## VIII. Vigilant's Recordkeeping Is Insufficient to Comply with Its Statutory Duties

132. Vigilant is required to comply with Cal. Civ. Code § 1798.90.52, which requires Vigilant to "[m]aintain a record of [any and all] access" to ALPR data in its systems.

133. An ALPR access record fails to comply with California's ALPR statute if, for example, it does not include (1) "[t]he date and time the information is accessed"; (2) the search term used to query the system to return the ALPR information (such as license plate number or vehicle description); (3) who accessed the ALPR information and their entity affiliation; and (4) "[t]he purpose for accessing the information." Cal. Civ. Code § 1798.90.52(a).

134. The privacy policy that Vigilant is required to maintain under California's ALPR statute limits the use of ALPR data by "law enforcement agencies" to "law enforcement purposes."

135. As such, Vigilant is required under Cal. Civ. Code § 1798.90.52(b) to design its systems or perform checks to ensure that the "purpose for accessing the information" entered by a law enforcement end-user is a valid "law enforcement purpose[]."

136. A "VehicleManager Audit Queries Report" for one police agency revealed the "Case #" or "Reason" field for the query was often listed as "crime" or "N/A."

137. Vigilant's vehicle search parameters contain a field for "Authorized purpose," but

41

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Vigilant has made the field non-mandatory.[124]

138.    Vigilant's ALPR access records fall well below the statutory requirements because when someone accesses ALPR information through Vigilant's systems, Vigilant does not "[m]aintain a record of that access," such as which person or vehicle's ALPR information was accessed, the date and time of that access, the purpose for that access, and the search query used to return the person or vehicle's ALPR information.

139.    Vigilant also fails to limit its law enforcement customers' use of ALPR information to only law enforcement purposes. Freeform entry, such as through the "Case #" field, is inadequate to ensure a proper purpose is entered. Even when a law enforcement user enters "N/A" meaning there is no case number or valid purpose, the Vigilant system does not stop them from accessing ALPR information. Vigilant could, but does not, check whether the purpose entered is facially invalid or limit law enforcement customers to selecting from a list of predetermined valid purposes (as data brokers often do when providing access to protected FCRA or voter information).

140.    Vigilant's unlawfully inadequate recordkeeping harmed Plaintiffs and the relevant classes by infringing their right to know whether their sensitive ALPR information was accessed, when it was accessed, how it was accessed (*e.g.*, what search dragnet pulled them in), and for what purpose it was accessed.

141.    Vigilant assures its law enforcement customers that if they share data with other law enforcement agencies, they comply with their obligation to log this data sharing and access because "[a]ll [such] data sharing and access is logged" in Vigilant's systems.[125] Vigilant keeps these audit logs "indefinitely unless specified for deletion by the customer."[126] Vigilant has

---

[124] *VehicleManager Enterprise User Guide, Vehicle Search*, Motorola Sols., https://docs.motorolasolutions.com/bundle/87977/page/5156e01e.html (last updated May 11, 2026).

[125] *Vigilant LEARN CJIS Compliance Guide*, Motorola Sols., at *3, https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/reaperhd-mobile-lpr-system/vigilant_learn_cjis_security_compliance_guide.pdf.

[126] *Id*. at *4.

42

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

created a feature where the law enforcement customer can set a "retention routine" to routinely purge these audit records.[127]

142.    By enabling the purging of or failure to maintain audit records that show sharing with or access by out-of-state or federal agencies, Vigilant has violated its statutory recordkeeping obligations under California's ALPR statute, which requires Vigilant to maintain a record of everyone who has accessed Californians' ALPR information.

143.    To the extent that Vigilant's features, software, or systems have facilitated the destruction of audit logs that would show unlawful out-of-state or federal sharing or access of Plaintiffs' or the classes' ALPR information, Vigilant should be estopped from arguing that Plaintiffs' or class members' ALPR information was not shared with or accessed by out-of-state or federal agencies.

**IX.    Vigilant's Active Concealment Tolls the Statute of Limitations**

144.    Vigilant actively concealed its violations of the ALPR Privacy Act from both its own customers and the California public for years.

145.    Unlike some competitors, Vigilant does not maintain transparency portals for its customers where they can make data sharing agreements and ALPR audit logs—which show records of access to ALPR data—available to the public. The investigation of Vigilant has proceeded slowly through, for example, citizen reporting of camera locations, such as through DeFlock,[128] and public records requests, such as by the Electronic Frontier Foundation.

146.    This secrecy is by design. Law enforcement agencies' agreements with Vigilant often include "non-disparagement" and "non-publication" clauses that contractually bind them to Vigilant's "media messaging" and prevent agencies from speaking candidly with the press.[129] Vigilant's former terms and conditions explicitly stated that "[t]his prohibition is specifically intended to prohibit users from cooperating with any media outlet to bring attention to LEARN or

---

[127] *Id.*
[128] *ALPR Map*, *supra* note 3.
[129] *Id.*

LEARN-NVLS."130 Meanwhile, training materials created by Vigilant Solutions explicitly recommend that police leave ALPR out of their reports whenever possible.131

147.    For years, Vigilant also concealed from the public that it had signed a lucrative contract with ICE to share billions of data points with the federal agency.132 Only through public records requests was the Electronic Frontier Foundation able to determine that ICE had accessed ALPR data from numerous California police departments, including in Anaheim, Antioch, Bakersfield, Chino, Fontana, Fountain Valley, Glendora, Hawthorne, Long Beach, Montebello, Orange, Sacramento, San Diego, Simi Valley, and Tulare.133 In another instance, Vigilant denied supplying ICE with camera data from shopping malls until an ACLU lawsuit revealed the extent of this data sharing.134 The Electronic Frontier Foundation noted that there is a "historic wall of secrecy maintained by Vigilant Solutions and its clients."135

148.    Plaintiffs did not know and, in the exercise of reasonable diligence, could not have known that Vigilant was violating the ALPR Privacy Act with respect to their ALPR data until investigative reporting and public records disclosures revealed the full scope of Vigilant's violations in early 2026.

149.    This contractual suppression of information prevented class members from learning that their data was being shared with out-of-state and federal agencies. The true scope of unlawful out-of-state and federal ALPR data sharing was not revealed until a slew of public

---

130 Kade Crockford, *Company Asks Cops to Keep Use of License Plate Trackers Secret*, ACLU (Mar. 3, 2015), https://www.aclu.org/news/national-security/company-asks-cops-keep-use-license-plate-trackers.
131 *Here's Why You Can't Trust What Cops and Companies Claim About Automated License Plate Readers, supra* note 134.
132 *ICE Accesses a Massive Amount of License Plate Data. Will California Take Action?, supra* note 67.
133 *Id.*
134 Dave Maass, *Here's Why You Can't Trust What Cops and Companies Claim About Automated License Plate Readers*, Elec. Frontier Found. (Mar. 19, 2019), https://www.eff.org/deeplinks/2019/03/heres-why-you-cant-trust-what-cops-and-companies-claim-about-automated-license.
135 *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

reporting on the issue in early 2026.[136] Because Vigilant affirmatively concealed its violations through contractual non-disclosure provisions and by instructing its customers to suppress information about its data-sharing practices, the discovery rule and fraudulent concealment doctrine toll the statute of limitations for all Class Members' claims from the date that Class Members reasonably could have discovered Vigilant's violations.

## PLAINTIFFS' INDIVIDUAL EXPERIENCES

### I. Plaintiff Roberts's Experience

150. Plaintiff Aaron Michael Roberts is a resident of Pleasanton, California.

151. Plaintiff Roberts currently owns and drives a 2018 Jeep Compass.

152. Plaintiff Roberts regularly drives in the Pleasanton, Dublin, Castro Valley, and Hayward, California areas to commute to work and for day-to-day activities, including along routes with Defendants' ALPR cameras installed.

153. Plaintiff Roberts has regularly driven along these routes for the past several years.

154. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, and location information of every car passing by, Plaintiff Roberts's license plate, vehicle, and location data has been and continues to be collected and stored by Defendants.

155. Defendants' ALPR cameras are situated such that Plaintiff Roberts cannot drive for his regular activities without passing a camera. If Plaintiff Roberts could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

156. The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Roberts's movement data.

157. The ALPR data collected and stored by Defendants, including from cameras where

---

[136] *Modesto police find federal agencies had prohibited access to license plate data*, *supra* note 17; *see also* ALPR Map, *supra* note 3; Kevin Hessel, *Ark investigation uncovers federal searches of Tiburon license-plate data*, The Ark (Feb. 8, 2026), https://www.thearknewspaper.com/live/ark-investigation-uncovers-federal-searches-of-tiburon-license-plate-data.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Plaintiff drives, has been shared with and is accessible by out-of-state and/or federal law enforcement agencies.[137]

158.   Given the pervasive nature of Defendants' broad data sharing agreements, Plaintiff Roberts's vehicle and location information data has been accessed by out-of-state and/or federal law enforcement agencies. Given the enormous scale of the illegal queries that Defendants permitted, it is likely that Plaintiff Roberts's information was illegally conveyed to out-of-state or federal law enforcement in the results of those queries.

159.   Plaintiff Roberts is concerned about the continuous collection, aggregation, and sharing of his vehicle and location data, including with out-of-state and federal law enforcement agencies. Plaintiff Roberts believes that this continuous collection, aggregation, and sharing violates his privacy.

160.   Plaintiff Roberts has also driven to attend a political event in Sacramento, where Defendants have a network of ALPR cameras installed. Plaintiff Roberts is concerned that his ALPR data obtained by Vigilant cameras while driving to a protest has been or could be accessed by or shared with federal law enforcement surveilling such activity.

161.   Defendants' tracking of Plaintiff Roberts's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

162.   Plaintiff Roberts finds the unauthorized sharing of his vehicle, location, and movement data with out-of-state and federal law enforcement agencies highly offensive.

---

[137] *Dozens of California Law Enforcement Agencies Illegally Sharing, supra* note 72; SB 34 ALPR Data Sharing (Alameda County Sheriff's Office), MuckRock (Feb. 13, 2024), https://www.muckrock.com/foi/alameda-county-174/sb34-alpr-data-sharing-alameda-county-sheriffs-office-158034/#file-1157514; *see also* Letter from Elec. Frontier Found. to Alameda Cnty. Sheriff's Off. (Mar. 18, 2024), https://www.eff.org/files/2024/04/18/2024-03-18_acso_alpr_letter.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

## II.    Plaintiff Rohrer's Experience

163.    Plaintiff Katherine Renee Rohrer is a resident of Modesto, California.

164.    Plaintiff Rohrer owns a car registered in the state of California and regularly drives in California, including in the Modesto area to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

165.    Plaintiff Rohrer has regularly driven along these routes for the past several years.

166.    Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Rohrer's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

167.    Defendants' ALPR cameras are situated such that Plaintiff Rohrer cannot drive for her regular activities without passing a camera. If Plaintiff Rohrer could easily avoid routes where Defendants' ALPR cameras are installed, she would, but she cannot.

168.    The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Rohrer's movements and probable locations.

169.    The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[138] As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Rohrer's sensitive ALPR information.

170.    Plaintiff Rohrer faces an imminent risk that further ALPR data about her will be captured by Defendants and disseminated without her consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

---

[138] *Modesto police find federal agencies had prohibited access to license plate data*, *supra* note 17; *see also* ALPR Map, *supra* note 3.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

171. Plaintiff Rohrer has been harmed by Defendants' violation of her right to know when, how, and by whom her ALPR information is being collected, used, accessed, and maintained. Plaintiff Rohrer does not know the full circumstances under which her information is or will be shared and with whom her information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Rohrer's sensitive ALPR information and for what purpose.

172. Plaintiff Rohrer has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Rohrer's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

173. Plaintiff Rohrer has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Rohrer to correct information about herself or her vehicle so that if her vehicle incorrectly appears on a "Hot List," she will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

174. Plaintiff Rohrer finds Defendants' continuous collection, aggregation, and dissemination of her vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

175. Plaintiff Rohrer believes that Defendants' widespread surveillance of her vehicle and location information encroaches on her right to privacy and harms her personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on her everyday movements makes Plaintiff Rohrer feel monitored in her daily life.

176. Plaintiff Rohrer is additionally concerned about use of ALPRs and racial profiling of her family members.

177. Defendants' tracking of Plaintiff Rohrer's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of her daily life, including when she leaves home, the activities she participates in, and the communities in which she travels. Disclosing this information to out-of-state and federal agencies constitutes the type of

48

harm that the ALPR Privacy Act was enacted to address.

**III.    Plaintiff Stubbings's Experience**

178.    Plaintiff Stephen Stubbings is a resident of Modesto, California.

179.    Plaintiff Stubbings owns a car registered in the state of California and regularly drives in California, including in the Modesto area, to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed. In the past several years, Plaintiff Stubbings also drove frequently in the Pleasanton, California area, including along routes where Defendants' ALPR cameras are installed.

180.    Plaintiff Stubbings has regularly driven along these routes for the past several years.

181.    Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Stubbings's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

182.    Defendants' ALPR cameras are situated such that Plaintiff Stubbings cannot drive for his regular activities without passing a camera. If Plaintiff Stubbings could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

183.    The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Stubbings's movements and probable locations.

184.    The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[139] As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Stubbings's sensitive ALPR information.

---

[139] *Dozens of California Law Enforcement Agencies Illegally Sharing, supra* note 72; *Modesto police find federal agencies had prohibited access to license plate data*, *supra* note 17; *see also* ALPR Map, *supra* note 3.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

185. Plaintiff Stubbings faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

186. Plaintiff Stubbings has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Stubbings does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Stubbings's sensitive ALPR information and for what purpose.

187. Plaintiff Stubbings has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Stubbings's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

188. Plaintiff Stubbings has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Stubbings to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

189. Plaintiff Stubbings uses a cell phone app to monitor the placement of ALPR cameras in his area.

190. Plaintiff Stubbings finds Defendants' continuous collection, aggregation, and dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

191. Plaintiff Stubbings believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data

50

on his everyday movements makes Plaintiff Stubbings feel monitored in his daily life.

192. Defendants' tracking of Plaintiff Stubbings's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

## IV.   **Plaintiff Gonzales's Experience**

193. Plaintiff Matthew Gonzales is a resident of Antioch, California.

194. Plaintiff Gonzales owns a car registered in the state of California and regularly drives in California, including in the Pleasanton, Modesto, and Sacramento, California, areas for work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

195. Plaintiff Gonzales has regularly driven along these routes for the past several years.

196. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Gonzales's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

197. Defendants' ALPR cameras are situated such that Plaintiff Gonzales cannot drive for his regular activities without passing a camera. If Plaintiff Gonzales could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

198. The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Gonzales's movements and probable locations.

199. The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[140]

---

[140] *Dozens of California Law Enforcement Agencies Illegally Sharing, supra* note 72; *Modesto police find federal agencies had prohibited access to license plate data*, *supra* note 17; *see also*

51

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Gonzales's sensitive ALPR information.

200. Plaintiff Gonzales faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who not only will give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

201. Plaintiff Gonzales has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Gonzales does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Gonzales's sensitive ALPR information and for what purpose.

202. Plaintiff Gonzales has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Gonzales's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

203. Plaintiff Gonzales has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Gonzales to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

204. Plaintiff Gonzales finds Defendants' continuous collection, aggregation, and

---

ALPR Map, *supra* note 3; Letter from Jennifer Pinsof, Staff Attorney, Elec. Frontier Found. and Nick Hidalgo, Staff Att'y, ACLU Found. of N. Cal. to Katherline Lester, Chief of Police, Sacramento Police Department and Susana Alcala Wood, Office of the City Attorney, City of Sacramento (May 9, 2024), https://www.eff.org/document/05-09-2024-sb34-alpr-demand-letter-sacramento-pd.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

205. Plaintiff Gonzales believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on his everyday movements makes Plaintiff Gonzales feel monitored in his daily life.

206. Plaintiff Gonzales is also concerned about his political and journalistic activity and medical appointments being tracked.

207. Defendants' tracking of Plaintiff Gonzales's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

**V.    Plaintiff Riedeman's Experience**

208. Plaintiff Connor Riedeman is a resident of Clearlake, California.

209. Plaintiff Riedeman owns a car registered in the state of California and regularly drives in California, including in the Sacramento and Merced, California areas to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

210. Plaintiff Riedeman has regularly driven along these routes for the past several years.

211. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Riedeman's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

212. Defendants' ALPR cameras are situated such that Plaintiff Riedeman cannot drive for his regular activities without passing a camera. If Plaintiff Riedeman could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

213. The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Riedeman's movements and probable locations.

214. The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[141] As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Riedeman's sensitive ALPR information.

215. Plaintiff Riedeman faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

216. Plaintiff Riedeman has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Riedeman does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Riedeman's sensitive ALPR information and for what purpose.

217. Plaintiff Riedeman has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Riedeman's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

218. Plaintiff Riedeman has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Riedeman to correct information about

---

[141] Letter from Jennifer Pinsof, *supra* note 140; *UC Merced shares data with federal agencies*, *supra* note 13.

54

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

219. Plaintiff Riedeman finds Defendants' continuous collection, aggregation, and dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

220. Plaintiff Riedeman believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on his everyday movements makes Plaintiff Riedeman feel monitored in his daily life.

221. Defendants' tracking of Plaintiff Riedeman's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

## VI.   **Plaintiff Timofeyev's Experience**

222. Plaintiff Daniel Yelisey Timofeyev is a resident of Sacramento, California.

223. Plaintiff Timofeyev owns a car registered in the state of California and regularly drives in California, including in the Sacramento areas to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

224. Plaintiff Timofeyev has regularly driven along these routes for the past several years.

225. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Timofeyev's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

226. Defendants' ALPR cameras are situated such that Plaintiff Timofeyev cannot drive for his regular activities without passing a camera. If Plaintiff Timofeyev could easily avoid routes

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

where Defendants' ALPR cameras are installed, he would, but he cannot.

227. The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Timofeyev's movements and probable locations.

228. The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[142] As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Timofeyev's sensitive ALPR information.

229. Plaintiff Timofeyev faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

230. Plaintiff Timofeyev has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Timofeyev does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Timofeyev's sensitive ALPR information and for what purpose.

231. Plaintiff Timofeyev has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Timofeyev's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

232. Plaintiff Timofeyev has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Timofeyev to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be

---

[142] Letter from Jennifer Pinsof, *supra* note 140.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

233. Plaintiff Timofeyev finds Defendants' continuous collection, aggregation, and dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

234. Plaintiff Timofeyev believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on his everyday movements makes Plaintiff Timofeyev feel monitored in his daily life.

235. Defendants' tracking of Plaintiff Timofeyev's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

## VII.   Plaintiff White's Experience

236. Plaintiff Hope Dinneen White is a resident of Escalon, California.

237. Plaintiff White owns a car registered in the state of California and regularly drives in California, including in the Modesto and Sacramento, California areas to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

238. Plaintiff White has regularly driven along these routes for the past several years.

239. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff White's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

240. Defendants' ALPR cameras are situated such that Plaintiff White cannot drive for her regular activities without passing a camera. If Plaintiff White could easily avoid routes where Defendants' ALPR cameras are installed, she would, but she cannot.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

241.    The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff White's movements and probable locations.

242.    The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.  As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff White's sensitive ALPR information.

243.    Plaintiff White faces an imminent risk that further ALPR data about her will be captured by Defendants and disseminated without her consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility towards Californians.

244.    Plaintiff White has been harmed by Defendants' violation of her right to know when, how, and by whom her ALPR information is being collected, used, accessed, and maintained. Plaintiff White does not know the full circumstances under which her information is or will be shared and with whom her information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed White's sensitive ALPR information and for what purpose.

245.    Plaintiff White has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of White's sensitive ALPR data to law enforcement purposes only. Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

246.    Plaintiff White has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff White to correct information about herself or her vehicle so that if her vehicle incorrectly appears on a "Hot List," she will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

247.    Plaintiff White finds Defendants' continuous collection, aggregation, and dissemination of her vehicle and location data, including with out-of-state and federal law

58

enforcement agencies, highly offensive.

248.     Plaintiff White believes that Defendants' widespread surveillance of her vehicle and location information encroaches on her right to privacy and harms her personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on her everyday movements makes Plaintiff White feel monitored in her daily life.

249.     Plaintiff White is also concerned about her political activity being tracked, as well as ALPR use and racial profiling. In the past, Plaintiff White has been wrongly pulled over by police due to a mistaken identity.

250.     Defendants' tracking of Plaintiff White's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of her daily life, including when she leaves home, the activities she participates in, and the communities in which she travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

## VIII.     Plaintiff Brito Montenegro's Experience

251.     Plaintiff Luis Fernando Brito Montenegro is a resident of San Francisco, California.

252.     Plaintiff Brito Montenegro owns a car registered in the state of California and regularly drives in California, including in Modesto, Pleasanton, and Hayward, California, areas to commute to work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

253.     Plaintiff Brito Montenegro has regularly driven along these routes for the past several years.

254.     Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Brito Montenegro's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

255.     Defendants' ALPR cameras are situated such that Plaintiff Brito Montenegro cannot drive for his regular activities without passing a camera. If Plaintiff Brito Montenegro

could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

256.    The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Brito Montenegro's movements and probable locations.

257.    The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies.[143] As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Brito Montenegro's sensitive ALPR information.

258.    Plaintiff Brito Montenegro faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility toward Californians.

259.    Plaintiff Brito Montenegro has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Brito Montenegro does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Brito Montenegro's sensitive ALPR information and for what purpose.

260.    Plaintiff Brito Montenegro has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Brito Montenegro's sensitive ALPR data to law enforcement purposes only.

---

[143] Julietta Bisharyan, *Modesto police find federal agencies had prohibited access to license plate data*, The Modesto Bee (updated Mar. 13, 2026), https://www.modbee.com/news/local/article315043571.html [https://archive.fo/kEu5r]; *see also* ALPR Map, *supra* note 3; Mike Katz-Lacabe, *Dozens of California Law Enforcement Agencies Illegally Sharing License Plate Reader Data*, Oakland Privacy (June 18, 2026), https://oaklandprivacy.org/dozens-of-california-law-enforcement-agencies-illegally-sharing-license-plate-reader-data/

60

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Defendants query logs are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

261. Plaintiff Brito Montenegro has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Brito Montenegro to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

262. Plaintiff Brito Montenegro finds Defendants' continuous collection, aggregation, and dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

263. Plaintiff Brito Montenegro believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on his everyday movements makes Plaintiff Brito Montenegro feel monitored in his daily life.

264. Plaintiff Brito Montenegro is also concerned about his political activity being tracked.

265. Defendants' tracking of Plaintiff Brito Montenegro's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

## IX.   Plaintiff Connell's Experience

266. Plaintiff Charles Connell is a resident of Sacramento, California.

267. Plaintiff Connell owns a car registered in the state of California and regularly drives in California, including in the Sacramento, Modesto, and Pleasanton, California areas for work and for day-to-day activities. This includes driving along routes where Defendants' ALPR cameras are installed.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

268. Plaintiff Connell has regularly driven along these routes for the past several years.

269. Because Defendants' ALPR cameras scan and collect the license plate, vehicle, travel (speed and direction), and location information of every car passing by, Plaintiff Connell's license plate, vehicle, travel (speed and direction), and location data has been and continues to be collected, stored, aggregated, and disseminated by Defendants.

270. Defendants' ALPR cameras are situated such that Plaintiff Connell cannot drive for his regular activities without passing a camera. If Plaintiff Connell could easily avoid routes where Defendants' ALPR cameras are installed, he would, but he cannot.

271. The location data collected by Defendants from their sprawling network of cameras also allows those with access to Defendants' systems to ascertain Plaintiff Connell's movements and probable locations.

272. The ALPR data collected and stored by Defendants, including from cameras where Plaintiff drives, has been disseminated to out-of-state and federal law enforcement agencies. As a result, out-of-state and federal law enforcement agencies had and continue to have unauthorized access to Plaintiff Connell's sensitive ALPR information.

273. Plaintiff Connell faces an imminent risk that further ALPR data about him will be captured by Defendants and disseminated without his consent to other sovereigns, aside from California, who will not only give it less protection but also have adverse political agendas, including outright contempt and hostility towards Californians.

274. Plaintiff Connell has been harmed by Defendants' violation of his right to know when, how, and by whom his ALPR information is being collected, used, accessed, and maintained. Plaintiff Connell does not know the full circumstances under which his information is or will be shared and with whom his information is or will be shared. Defendants fail to maintain access and query logs, as required by California's ALPR statute, adequate to show which entities have accessed Connell's sensitive ALPR information and for what purpose.

275. Plaintiff Connell has been harmed by Defendants' violation of their promise in their terms of service—a promise made enforceable by California's ALPR statute—to limit the use of Connell's sensitive ALPR data to law enforcement purposes only. Defendants query logs

62

are inadequate (do not require a "[p]urpose" be entered) and lack any enforcement mechanism or protocol to ensure that the reason entered for the query is a valid law enforcement purpose.

276.   Plaintiff Connell has been harmed by Defendants' violation of their right to correct. Defendants maintain no protocol for Plaintiff Connell to correct information about himself or his vehicle so that if his vehicle incorrectly appears on a "Hot List," he will not be immediately detained and potentially held at gunpoint by law enforcement due to mistaken identity.

277.   Plaintiff Connell finds Defendants' continuous collection, aggregation, and dissemination of his vehicle and location data, including with out-of-state and federal law enforcement agencies, highly offensive.

278.   Plaintiff Connell believes that Defendants' widespread surveillance of his vehicle and location information encroaches on his right to privacy and harms his personal freedom and autonomy. Knowing that Defendants' cameras collect, store, and disseminate data on his everyday movements makes Plaintiff Connell feel monitored in his daily life.

279.   Plaintiff Connell is also concerned about his political activity being tracked, as well as ALPR use and racial profiling of his family members.

280.   Defendants' tracking of Plaintiff Connell's driving patterns enables any authorized user of Defendants' systems to generate a comprehensive, intimate portrait of his daily life, including when he leaves home, the activities he participates in, and the communities in which he travels. Disclosing this information to out-of-state and federal agencies constitutes the type of harm that the ALPR Privacy Act was enacted to address.

**X.   Plaintiffs' Data from Vigilant Cameras Has Economic Value**

281.   Every day, commercial entities purchase data about individuals—including their location history—from data brokers[144] and other sources to run advertisements and target their

---

[144] California law defines a "data broker" as "a business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship," subject to certain exceptions. Cal. Civ. Code § 1798.99.80(c).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

services.[145]

282.   For the past decade, data brokers have sought out and combined data from private and public sources. While individual data sources "may provide only a few elements about a person's activities, data brokers combine these elements to form a detailed, composite view of the consumer's life."[146]

283.   Fusing Vigilant's ALPR data, including historical data about an individual's movements, with other data taken from ad tech and other companies enhances the economic value of any of the millions of existing datasets on California drivers.

284.   Moreover, it is easy to see how information regarding someone's daily commute or vehicle alone, without being combined with other sources, is valuable to advertisers and other businesses. For example, where vehicles travel reveals an astonishing amount about the purchasing decisions, lifestyles, and interests of its occupants. Indeed, Vigilant sells access to a commercial database of ALPR information, and police departments pay to subscribe to Vigilant specifically to access their nationwide ALPR database. *See supra*, ¶ 68.

285.   The value of this data is also demonstrated by the $27.5 million recovered in *Brooks v. Thomson Reuters Corp.* based on claims that data collected about individuals had value and needed to be compensated under the UCL or an unjust enrichment theory.[147]

286.   The movement data Vigilant collects thus have economic value to its owners, including to Plaintiffs. Vigilant has collected this data without compensating Plaintiffs. By misappropriating Plaintiffs' data through its illegal out-of-state and federal sharing practices, Vigilant has caused Plaintiffs to suffer a concrete economic injury sufficient to establish standing under California's Unfair Competition Law.

---

[145] Justin Sherman, *Data Brokers and Sensitive Data on U.S. Individuals: Threats to American Civil Rights, National Security, and Democracy*, at 2 (2021), Duke Sanford Cyber Pol'y Program, https://techpolicy.sanford.duke.edu/report-data-brokers-and-sensitive-data-on-u-s-individuals/.

[146] Tehila Minkus et al., *The City Privacy Attack: Combining Social Media and Public Records for Detailed Profiles of Adults and Children*, COSN '15: Proceedings of the 2015 ACM on CONF. Online Social Networks 71, 71 (2015), https://dl.acm.org/doi/10.1145/2817946.2817957.

[147] Order Granting Final Approval, *Brooks v. Thomson Reuters Corp.*, No. 3:21-cv-01418-EMC (N.D. Cal. Feb. 21, 2025).

64

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

## CLASS ACTION ALLEGATIONS

287.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of the following classes:

> All individuals whose license plate data was collected in California by the Vigilant ALPR system and was accessible by, and thus disclosed to, federal law enforcement agencies and/or out-of-state agencies since the first Vigilant camera was installed in California (the "Class Period").

288.    Plaintiffs also seek certification of the following subclass (hereinafter referred to as "the Search Subclass"):

> All individuals whose license plate data was collected in California by the Vigilant ALPR system and appeared as the result of any search or query performed by federal law enforcement agencies and/or out-of-state agencies during the Class Period.

289.    Plaintiffs also seek certification of the following Data Sale Class:

> All individuals whose license plate data was collected in California and sold or licensed by Vigilant to commercial customers.

290.    The Class is defined by reference to objective, verifiable criteria: whether a California Vigilant customer's ALPR data was accessible by out-of-state and/or federal law enforcement agencies and whether an individual's vehicle passed a camera operated by that Vigilant customer during the relevant period. The Search Subclass is defined by reference to specific searches conducted by federal or out-of-state agencies. Both subgroups are therefore ascertainable through Vigilant's own business records without individualized inquiry.

291.    Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendant officer or director; any Judge who adjudicates this case, including their staff and immediate family; persons who properly execute and file a timely request for exclusion from the Class; persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; Plaintiffs' counsel and Defendants' counsel; and the legal representatives, successors, and assigns of any such excluded person.

292.    Plaintiffs reserve the right to modify or amend the definition of the proposed class

65

before the Court determines whether certification is appropriate.

293. <u>Ascertainability</u>. Members of the Class ("Class Members") are ascertainable because the definition allows proposed class members to identify themselves as having a right to recover, and provides an objective, concrete basis for which to determine who will be bound by a judgment.

294. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. There are millions of drivers throughout California whose license plates were photographed, time stamped, and geolocation data collected by Vigilant and Vigilant's policies have permitted unauthorized sharing of this data with federal agencies, out-of-state agencies, and the general public. Because of the sophisticated nature and detailed, ongoing collection, Vigilant will be able to identify all these individuals through their amassed records.

295. <u>Commonality & Predominance</u>. Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

 (a) Whether Vigilant implemented and maintained a usage and policy that complies with California's ALPR Privacy Act;

 (b) Whether Vigilant complies with the Notice, Privacy, Security, Audit, and Proper-Use Requirements set forth in California's ALPR Privacy Act;

 (c) Whether Vigilant gathered location data and license plate scans of Class Members;

 (d) Whether Vigilant's policies permit unauthorized access of Vigilant ALPR data owned by California law enforcement agencies by federal agencies or out-of-state law enforcement agencies;

 (e) Whether Class Members' data was shared with out-of-state or federal agencies;

 (f) Whether Vigilant knew or should have known that its infrastructure and inadequate policy facilitated unauthorized sharing of Class Members' ALPR data with federal and out-of-state agencies;

 (g) Whether Vigilant knowingly and willfully violated the ALPR Privacy Act;

 (h) Whether the unauthorized sharing of Class Members' ALPR data has harmed the Class;

(i) Whether Vigilant's failure to have an adequate usage and privacy policy has harmed the Class;

(j) Whether Vigilant violated California's Unfair Competition Law;

(k) Whether Vigilant violated California common law;

(l) Whether Vigilant is unjustly enriched by its collection, aggregation, analysis, dissemination, and/or sale of Class Members' ALPR data;

(m) Whether Vigilant's violations of California law have harmed the class;

(n) Whether Vigilant is subject to punitive damages under California's ALPR Privacy Act and California common law.

296. The questions of law and fact common to the Class identified above predominate over any questions affecting only individual Class Members. *Fed. R. Civ. P.* 23(b)(3). Predominance is satisfied here for several independent reasons.

297. First, Defendants' liability turns entirely on their own centralized, uniform conduct, not on anything individual to any particular Class Member. Every Class Member's claim rests on the same predicate: Defendants designed, deployed, and operated a single, uniform ALPR platform (VehicleManager) and a single, uniform data-sharing infrastructure that, by architectural default, permitted and encouraged out-of-state and federal agencies to query California ALPR data. Whether that architecture violated the ALPR Privacy Act is a pure question of law applicable uniformly to each member of the Class. No individualized inquiry into any Class Member's circumstances is necessary to adjudicate the central liability question.

298. Second, the ALPR Privacy Act provides for statutory liquidated damages of $2,500 per violation, *without* requiring proof of actual damages. Cal. Civ. Code § 1798.90.54. Where a statute imposes a uniform liquidated damages floor, courts in this Circuit have consistently held that damages do not create predominance problems because no individualized damages inquiry is required. Class Members need only establish that they fall within the class definition, a determination made on Defendants' own ALPR data records, to establish entitlement to the minimum statutory recovery.

299. Third, the common questions identified above are each susceptible to class-wide

67

proof. For example, the question of whether Defendants maintained a compliant usage and privacy policy can be answered by examining Defendants' single, publicly posted policy document, the same evidence as to every Class Member. The question of whether California ALPR data was shared with out-of-state or federal agencies can be answered through Defendants' own access logs and query records, which Defendants are required by statute to maintain. *See* Cal. Civ. Code § 1798.90.52(a). The question of whether those access logs demonstrate knowing violations is likewise a class-wide issue resolved by examining Defendants' uniform policies, training materials, and internal communications, not by examining any individual Class Member's conduct.

300. Fourth, any individual issues that may exist, such as the precise number of scans of a given Class Member's license plate, are manageable and do not predominate. Such questions go to the quantum of damages, not to liability, and can be resolved through Defendants' own database records without mini-trials.

301. For the Search Subclass, predominance is independently supported by Defendants' audit log records, which the ALPR Privacy Act requires Defendants to maintain and which constitutes class-wide proof of each unauthorized search.

302. For the Data Sale Class, predominance is independently supported by Defendants' commercial licensing agreements, including the agreements pursuant to which Defendants sold or licensed California ALPR data to Thomson Reuters CLEAR and Palantir, which are uniform contractual instruments applicable equally to all Data Sale Class Members whose data was included in those commercial transfers.

303. <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because all had their ALPR data compromised as a result of Vigilant's lax policy and infrastructure.

304. <u>Adequacy</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to Members of the Class and the infringement of the rights, and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in

68

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

305. <u>Superiority</u>. Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

306. <u>Policies Generally Applicable to the Class</u>. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

307. Unless a class-wide injunction is issued, Defendants will continue disclosing and retaining on their platform Class Member ALPR data, and Vigilant may continue to act unlawfully as set forth in this Complaint, particularly given its long history of ignoring and facilitating evasion of California law.

308. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief as to Class Members as a whole is appropriate.

309. <u>Issue Certification</u>. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

310. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and/or the discovery process.

311. As set forth in detail in the Parties and Factual Allegations sections above, Defendant Motorola Solutions, Inc. is independently liable under each Count herein as both an ALPR operator and an ALPR end-user within the meaning of Cal. Civ. Code §§ 1798.90.5(a) and (c). Motorola is not a passive investor in Vigilant. Motorola brands and markets the ALPR cameras and VehicleManager analytics platform at the center of this case under the Motorola Solutions name. Motorola controls the hardware and software architecture through which all California ALPR data is captured, processed, transmitted, and stored, including the VehicleManager platform through which out-of-state and federal agencies accessed California Class Members' ALPR data. Motorola actively promotes nationwide data sharing as a product feature and derives direct commercial revenue from it, including through licensing California ALPR data to Thomson Reuters CLEAR and Palantir. Motorola's own Annual Report on Form 10-K identifies California's ALPR Privacy Act as a material legal risk to Motorola's business, an acknowledgment that Motorola, not merely its subsidiary, faces direct statutory exposure. Accordingly, each reference to "Defendants" or "Vigilant" in the Counts below refers jointly and severally to both Defendant Vigilant Solutions, LLC and Defendant Motorola Solutions, Inc., each of whom is an ALPR operator and end-user independently subject to the duties, prohibitions, and liabilities alleged herein.

**COUNT I: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO MAINTAIN REASONABLE SECURITY PROCEDURES TO PREVENT UNAUTHORIZED ACCESS**
**Cal. Civ. Code §§1798.90.5 *et seq.***
**(On behalf of Plaintiffs, the Class, and the Search Subclass)**

312. Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

313. Vigilant operates a nationwide ALPR system that captures photographs of license plates and detailed physical characteristics of vehicles, together with the location, time, and date of Plaintiffs' and the Class's travels, which can be searched via web interface or application.

70

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

314.   Vigilant is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and accesses or uses an ALPR system.

315.   As an ALPR operator and end-user in California, Vigilant is legally required to (1) maintain reasonable security procedures to protect ALPR information; (2) implement and enforce a usage and privacy policy ensuring collection and sharing respects individual privacy and civil liberties; and (3) monitor its system to ensure security and compliance with law. Vigilant is prohibited from allowing ALPR information to be used for any purpose not authorized by its own policy and compliant with the ALPR Privacy Act.

316.   The ALPR Privacy Act explicitly prohibits the sale, sharing, or transfer of ALPR information by a California "public agency," such as a law enforcement agency, except to another California "public agency." Cal. Civ. Code § 1798.90.55(b). Despite this, Vigilant designed and maintained a system with inadequate security and privacy controls that facilitated the unlawful dissemination of California residents' ALPR data.

317.   Vigilant failed to implement basic technological safeguards that would have prevented California law enforcement data from being disseminated to and accessed by federal and out-of-state law enforcement agencies and private entities.

318.   Among other security failures, Vigilant did not require MFA for access to or searches of its ALPR database, allowing California ALPR data to be disseminated to out-of-state and federal agencies, as well as private entities. Vigilant's unreasonable security practices were demonstrated by researchers' recent exposure of numerous distinct vulnerabilities in its hardware and software.

319.   Vigilant knew or should have known that its failure to implement and maintain adequate privacy and security measures would permit unauthorized dissemination of California ALPR information to federal and out-of-state law enforcement agencies, as well as private entities, in violation of the ALPR Privacy Act.

320.   It was practically certain that unauthorized sharing of ALPR information with federal agencies and out-of-state law enforcement agencies in violation of the ALPR Privacy Act

71

would follow from Vigilant's unlawful conduct of permitting and encouraging national sharing and searches of California ALPR information, sharing agreements between California law enforcement agencies and agencies in other states, "side-door" access to Californians' ALPR information, and other failures to implement and maintain adequate privacy and security measures. As a result, Vigilant intentionally, or at the very least knowingly and recklessly, violated the ALPR Privacy Act.

321. Vigilant failed to implement measures that would have prevented California law enforcement agencies' ALPR data from being shared with federal or out-of-state agencies, such as blocking sharing of California ALPR data with federal and out-of-state law enforcement agencies and private entities.

322. Vigilant deliberately collected Plaintiffs' and the Class's ALPR information and disclosed that information to its out-of-state and federal law enforcement customers and private entities, allowing them to identify physical characteristics and movement patterns of, and locations visited by, Plaintiffs' and Class Members' vehicles, as well as potentially other identifying information.

323. Vigilant's failure to implement these required safeguards constitutes a willful and reckless disregard for California law and individual's privacy. Its conduct is highly offensive to a reasonable person and has directly harmed Plaintiffs and the Class by disseminating sensitive information about their daily movements and habits, including who they associate with, their political and religious affiliations, and their health issues, to unauthorized entities such as out-of-state and federal law enforcement agencies and private entities.

324. Vigilant's conduct was at all relevant times in willful and in reckless disregard of California's ALPR Privacy Law.

325. Plaintiffs seek actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

**COUNT II: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO IMPLEMENT A COMPLIANT USAGE AND PRIVACY POLICY**
**Cal. Civ. Code §§1798.90.5 *et seq.***
**(On behalf of Plaintiffs, the Class, and the Search Subclass)**

326.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

327.    Vigilant is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and accesses or uses an ALPR system.

328.    As such, Vigilant must comply with Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b), which require Vigilant to implement a usage and privacy policy containing specific provisions.

329.    Vigilant's usage and privacy policy violates the requirements of Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b) in the following ways:

330.    Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code § 1798.90.51(b)(1) because it is not designed to "ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information" respects "individuals' privacy and civil liberties."

331.    Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(B) and 1798.90.53(b)(2)(B) because it fails to describe "the job title or other designation of the employees and independent contractors" who are authorized to use or access the system or to collect ALPR information.

332.    Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(C) and 1798.90.53(b)(2)(C) because it fails to describe "how the ALPR system will be monitored to ensure . . . compliance with applicable privacy laws."

333.    Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(D) and 1798.90.53(b)(2)(D) because it fails to describe the "purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons."

73

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

334. Vigilant's usage and privacy policy fails to comply with Cal. Civ. Code §§ 1798.90.51(b)(2)(F) and 1798.90.53(b)(2)(F) because it does not describe "the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors."

335. Vigilant is also in violation of Cal. Civ. Code §§ 1798.90.51(b)(1) and 1798.90.53(b)(1) because its usage and privacy policy is not "posted conspicuously" on its website.

336. Vigilant's failure to conspicuously post a compliant ALPR usage and privacy policy constitutes a willful and reckless disregard for California law and resident privacy. Its conduct is highly offensive to a reasonable person, amounts to willful and reckless disregard of the law, and has directly harmed Plaintiffs and the Class by violating their right to know when, how, and by whom their ALPR information is being collected, used, accessed, and maintained. It has also directly harmed Plaintiffs and the Class because Vigilant's failure to have and implement a compliant policy has led to the dissemination of their sensitive personal information, such as location and movement information, to unauthorized entities, including the sharing of ALPR data collected by California law enforcement agencies with out-of-state and federal law enforcement and private entities.

337. Vigilant's conduct was at all relevant times in willful and in reckless disregard of California's ALPR Privacy Law.

338. Plaintiffs seek actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

**COUNT III: VIOLATION OF CALIFORNIA'S ALPR PRIVACY ACT: FAILURE TO MAINTAIN ADEQUATE RECORDS OF ALPR ACCESS**
**Cal. Civ. Code §§1798.90.5 *et seq.***
**(On behalf of Plaintiffs, the Class, and the Search Subclass)**

339. Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

340. Vigilant is both an ALPR operator under Cal. Civ. Code § 1798.90.5(c) and an ALPR end-user under Cal. Civ. Code § 1798.90.5(a) because it operates an ALPR system and

74

accesses or uses an ALPR system.

341.    As such, Vigilant must comply with Cal. Civ. Code § 1798.90.52, which requires Vigilant to "[m]aintain a record of [any and all] access" to ALPR data in its systems.

342.    An ALPR access record fails to comply with California's ALPR statute if, for example, it does not include (1) "[t]he date and time the information is accessed"; (2) the search term used to query the system to return the ALPR information (such as license plate number or vehicle description); (3) who accessed the ALPR information and their entity affiliation; and (4) "[t]he purpose for accessing the information." Cal. Civ. Code § 1798.90.52(a).

343.    The privacy policy that Vigilant is required to maintain under California's ALPR statute limits the use of ALPR data by "law enforcement agencies" to "law enforcement purposes."

344.    Vigilant is required under Cal. Civ. Code § 1798.90.52(b) to design its systems or perform checks to ensure that the "purpose for accessing the information" entered by a law enforcement end-user is a valid "law enforcement purpose[]."

345.    Vigilant's ALPR access records fall well below the statutory requirements because when a user accesses ALPR information through Vigilant's systems, Vigilant does not "[m]aintain a record of that access," such as what ALPR information was accessed and the purpose for that access.

346.    Vigilant also fails to limit its law enforcement customers' use of ALPR information to only law enforcement purposes. Freeform entry, such as through the "Case #" field, is inadequate to ensure a proper purpose is entered. Even when a law enforcement user enters "N/A" meaning there is no case number or valid purpose, the Vigilant system does not stop them from accessing ALPR information. Vigilant could, but does not, check whether the purpose entered is facially invalid or limit law enforcement customers to selecting from a list of predetermined valid purposes (as data brokers often do when providing access to protected FCRA or voter information).

347.    Vigilant also encourages its law enforcement customers to violate the ALPR statute's recordkeeping requirement by allowing them to delete audit logs and facilitating such

75

deletion with a "retention routine" feature that routinely purges the customer's audit logs.

348.    Vigilant's failure to maintain its own copy of access or audit logs, separate from its law enforcement customers (and their ability to delete such logs), is itself a violation of the ALPR statute's recordkeeping requirements. Vigilant not only has an obligation to facilitate its end-users' compliance but to ensure its own compliance with California's ALPR Privacy Act.

349.    Vigilant's conduct was at all relevant times in willful and in reckless disregard of California's ALPR Privacy Law.

350.    Plaintiffs seek actual or liquidated damages of not less than $2,500 per violation, punitive damages, and any other preliminary and equitable relief the Court deems to be appropriate.

## COUNT IV: NEGLIGENCE
### (On behalf of Plaintiffs, the Class, and the Search Subclass)

351.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

352.    Vigilant owed Plaintiffs and Class Members a duty to prevent unauthorized sharing and to maintain reasonable and adequate information and data security practices.

353.    Vigilant's duty is demonstrated by California's ALPR Privacy Act.

354.    The ALPR Privacy Act expressly identifies California drivers whose ALPR data is subject to collection as the class of persons its protections are intended to benefit. (See Cal. Civ. Code §1798.90.54 [providing a private cause of action to "an individual harmed by a violation"].) Vigilant, as the operator and architect of the surveillance infrastructure, was therefore aware that its failure to implement adequate sharing controls would injure California drivers specifically. This awareness further establishes Vigilant's duty of care to Plaintiffs and the Class.

355.    Vigilant breached that duty by violating the ALPR Privacy Act—allowing federal and out-of-state agencies, as well as private entities, to access California ALPR data in direct violation of the ALPR Privacy Act and against the repeated warnings from the California Attorney General's office.

356.    Vigilant further breached its duty by failing to implement reasonable security

76

practices.

357.    Plaintiffs and the Class have been injured by Vigilant's conduct because their ALPR information has been improperly disseminated to federal and out-of-state law enforcement agencies as well as, potentially, other unauthorized third parties. This has harmed Plaintiffs and the Class in ways enumerated above. Vigilant's facilitation of unlawful ALPR data sharing with federal and out-of-state law enforcement agencies is highly offensive to a reasonable person.

358.    As a direct and proximate cause of Vigilant's business practices, Plaintiffs and Class Members were damaged because their ALPR data has been improperly disseminated to federal and out-of-state law enforcement agencies as well as, potentially, other unauthorized third parties, and that data was not properly safeguarded.

359.    Vigilant's failure to limit ALPR information-sharing and maintain reasonable and adequate information- and data-security practices was precisely the kind of conduct the ALPR Privacy Act was designed to prevent.

360.    Plaintiffs and the Class are the class of persons the ALPR Privacy Act is intended to protect—drivers within California whose data is subject to ALPR collection.

361.    Vigilant's willful and reckless breach of its duty caused Plaintiffs and the Class to suffer damages.

362.    Under California law—specifically, the evidentiary doctrine of negligence per se—these circumstances create a presumption of negligence.

363.    There is no justification or excuse for Vigilant's violation of the ALPR Privacy Act.

364.    Vigilant is therefore liable for compensatory and punitive damages under California law.

**COUNT V: INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION**
**(On behalf of Plaintiffs, the Class, and the Search Subclass)**

365.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

366.    Plaintiffs and Class Members have an interest in: (i) conducting lawful personal

77

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to move from place to place without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicle and movements generated and logged over a period of weeks, months, or years that third parties may use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third-party data sets about Plaintiffs and Class Members; (iv) not sharing the aforementioned information with out-of-state or federal law enforcement agencies and private entities; and (v) controlling the dissemination of sensitive information about themselves.

367.    By conducting widespread and round-the-clock surveillance of Plaintiffs' and Class Members' movements using its ALPR technology, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

368.    The right to privacy protects not only discrete pieces of information individually but the reasonable expectations of the populace regarding the systematic aggregation and use of information about their activities.

369.    The aggregation of location data which captures one's movements over time violates Plaintiffs' and the populace's reasonable expectations of privacy.

370.    Vigilant does not merely capture a license plate at a moment in time, it constructs a mosaic of each vehicle's movements, cross-references those movements against state and law enforcement databases, and makes that mosaic available for search and analysis by thousands of law enforcement agencies across the country.

371.    By aggregating and analyzing Plaintiffs' and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

372.    By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles, reporting past

78

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

movements, and predicting future movements, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

373.   By developing and deploying proprietary software that allows Defendants to share the aforementioned information about Plaintiffs and Class Members with any of Defendants' customers across California and the United States, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

374.   By developing and deploying technology that allows Defendants to merge the aforementioned data about Plaintiffs and Class Members with data from external sources, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights and intruded upon their seclusion.

375.   Plaintiffs and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about themselves and their movements, let alone profiles that local and out-of-state law enforcement agencies and private entities may easily search, access, and act on.

376.   By sharing data on California drivers' vehicles and movements with federal law enforcement agencies who have amassed information on individuals and are able to merge these datasets, Defendants have further intruded upon and eroded Plaintiffs' privacy rights.

377.   Plaintiffs and Class Members did not and could not authorize Defendants to intercept data on their driving activities.

378.   By engaging in the aforementioned actions, Vigilant intentionally invaded Plaintiffs' and Class Members' privacy rights under the California Constitution.

379.   Motorola's direct role in operating VehicleManager's data-sharing architecture makes Motorola directly and independently responsible for the highly offensive invasion of privacy alleged herein, not merely vicariously through its subsidiary.

380.   This invasion of privacy is serious in nature, scope, and impact. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

381.   As a result of Vigilant's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

382.     Plaintiffs and Class Members have been damaged as a direct and proximate result of Vigilant's invasion of their privacy and are entitled to just compensation, including monetary damages.

383.     Plaintiffs and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

384.     Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Vigilant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights.

385.     Such damages are needed to deter Vigilant from engaging in such conduct in the future.

386.     Plaintiffs also seek such other relief as the Court may deem just and proper.

## COUNT VI: INTRUSION UPON SECLUSION
### (On behalf of Plaintiffs, the Class, and the Search Subclass)

387.     Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Class and Search Subclass.

388.     Plaintiffs and Class Members have a reasonable and legally protective privacy interest in: (i) conducting lawful personal, professional, and political activities without surveillance, intrusion, or interference, including, but not limited to, the right to travel without being subjected to highly intrusive and surreptitious surveillance and tracking; (ii) not having detailed profiles about their vehicles and movements generated and logged over a period of weeks, months, or years for third parties to use to determine their location and/or predict future movements; (iii) precluding the dissemination, use, or abuse of the aforementioned information, including the fusing of this information with any other third party data sets or profiles about Plaintiffs and Class Members; (iv) not sharing the aforementioned information with out-of-state or federal law enforcement agencies or private parties; and (v) controlling the dissemination of sensitive information about themselves.

389.     By conducting widespread and round-the-clock surveillance of Plaintiffs' and

80

Class Members' movements using its ALPR technology, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

390.    By aggregating and analyzing Plaintiffs' and Class Members' vehicle characteristics and movements over extended periods of time using its proprietary software, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights, as well as intruded upon Plaintiffs' and Class Members' seclusion.

391.    By developing and deploying proprietary software capable of not just reading and logging a license plate number but creating detailed profiles of vehicles, reporting past movements, and predicting future movements, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights as well as intruded upon Plaintiffs' and Class Members' seclusion.

392.    By developing and deploying proprietary software that allows Defendants to share the aforementioned information about Plaintiffs and Class Members with any of Defendants' customers across California and the United States, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights as well as intruded upon Plaintiffs' and Class Members' seclusion.

393.    By developing and deploying technology that allows Defendants and third parties to merge the aforementioned data about Plaintiffs and Class Members with data from external sources, Defendants intentionally invaded Plaintiffs' and Class Members' privacy rights as well as intruded upon Plaintiffs' and Class Members' seclusion.

394.    Plaintiffs and Class Members do not expect that their daily travels would be recorded or that this information would be used to generate detailed vehicle profiles about themselves and their movements, let alone profiles that local and out-of-state law enforcement agencies and private entities may easily search, access, and act upon.

395.    By sharing data on California drivers' vehicles and movements with federal law enforcement agencies who have amassed information on individuals and are able to merge these datasets, Defendants have further intruded upon and eroded Plaintiffs' privacy rights.

396.    Motorola is independently liable for intrusion upon seclusion because Motorola

81

itself, through its control of the VehicleManager platform and its commercial data licensing agreements, directly intruded upon Plaintiffs' and Class Members' seclusion; it did not merely facilitate Vigilant's intrusion.

397.    Plaintiffs and Class Members did not and could not authorize Defendants to intercept data on their activities.

398.    The conduct described herein is highly offensive to a reasonable person and constitutes an egregious breach of social norms.

399.    Plaintiffs and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

400.    Accordingly, Plaintiffs, Class Members, and Search Subclass Members seek all relief available for invasion of privacy claims under common law.

**COUNT VII: VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Data Sale Class)**

401.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Data Sale Class.

402.    Plaintiffs plead this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

403.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

404.    Vigilant engages in unlawful business practices in connection with its collection, aggregation, analysis, dissemination and sale of ALPR data belonging to Plaintiffs and Class Members despite the legal, moral, ethical, and policy requirements against doing so. Data from law enforcement works its way into Vigilant's commercial database for sale, for example, because Vigilant has a deal with the law enforcement agency, such as with Chula Vista PD, that Vigilant can sell their data. *See supra* ¶ 75.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

405.   Vigilant's acts, omissions, and conduct, as alleged herein, constitute "business practices" within the meaning of the UCL.

406.   Vigilant violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiffs' and Class Members' constitutional rights to privacy, state privacy statutes, state consumer protection statutes, and ALPR technology specific statutes.

407.   Vigilant's acts, omissions, and conduct also violate the "unfair" prong of the UCL because those acts, omissions, and conduct offend public policy (namely the ALPR Privacy Act and Consumer Privacy Act) and constitute immoral, unethical, oppressive, and unscrupulous activities that cause substantial injury, including to Plaintiffs and Class Members.

408.   Vigilant's conduct was unfair because it knew or should have known that it was collecting and sharing sensitive personal information and continued to do so despite knowing about Californians' privacy rights and the harms that could result by disseminating and selling such information to federal and out-of-state law enforcement agencies and private entities as well as creating detailed inferences about Plaintiffs and Class Members using insights and analytics from aggregated ALPR data, third party data, and its proprietary software.

409.   As the California Legislature made clear when passing the ALPR Privacy Act, the harm caused by Vigilant's conduct outweighs any potential public safety benefits attributable to such conduct, and there are reasonable alternatives to further Vigilant's legitimate business interests other than Vigilant's conduct described herein. Similarly, the CCPA requires businesses of Vigilant's size to consider "the negative impacts to consumers' privacy" of its ALPR data collection and processing and consider "restricting or prohibiting the processing of personal information if the risks to privacy of the consumer outweigh the benefits." Cal. Code Regs. § 7152(a), § 7154(a). Vigilant has come out on the wrong side of the line, profiting by building, facilitating, and encouraging a massive surveillance network that can track the movements of citizens across multiple cameras mounted in their home cities at the most trafficked intersections, highways, and locations, thereby enabling deeply invasive inferences about their private actions and personal lives, in exchange for a relatively scant improvement in police efficacy in solving a small subset of crimes (*i.e.*, vehicle thefts and hit-and-runs).

83

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

410.    As a result of Vigilant's violations of the UCL, Plaintiffs and Class Members are entitled to injunctive relief. This is particularly true since the dissemination of Plaintiffs' and Class Members' ALPR information is ongoing. Such injunctive relief should require Vigilant to permanently cease all sale of Californians' ALPR information on its platform with any out-of-state or federal law enforcement organizations or private entities and to immediately delete all information about Californians that out-of-state or federal law enforcement agencies are storing on the Vigilant platform or within Vigilant's possession or control.

411.    Plaintiffs lost money or property as a result of Defendants' unfair and unlawful practices in violation of the Unfair Competition Law. But for their violation of law, Defendants would have either paid Plaintiffs for consent to sell their information or ceased the sale of their information.

412.    Plaintiffs and Class Members have suffered an injury-in-fact as a proximate result of the violations of law and wrongful conduct of Vigilant alleged herein, including the loss of the economic value of their data, deprivation of the property right to exclude others from accessing or using their personal location and movement information, and the infringement of their statutory and California constitutional privacy rights. The damages remedies under Counts I to VI do not provide an adequate remedy for the ongoing and prospective harms Vigilant's unfair and unlawful business practices continue to cause absent injunctive relief. Plaintiffs seek an injunction to end Vigilant's wrongful practices pursuant to § 17203.

413.    Plaintiffs and Class Members are entitled to restitution of the economic value of their data that Vigilant misappropriated without authorization or compensation. Plaintiffs and the Class also seek an order requiring Vigilant to make full restitution of all monies it received through its wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200 *et seq*.

**COUNT VIII: UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs, the Class, and the Data Sale Class)**

414.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Data Sale Class.

84
FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

415.    Defendants have been unjustly enriched at the expense of Plaintiffs and the Data Sale Class. Defendants captured Plaintiffs' and Class Members' ALPR data, which has established economic value, as explained above, and monetized that data through commercial licensing agreements with Thomson Reuters' CLEAR platform, Palantir Technologies, the National Insurance Crime Bureau, and other commercial and governmental entities, without authorization, compensation, or consent from the data subjects.

416.    Motorola was unjustly enriched not only through Vigilant but directly and independently: Defendants licensed California ALPR data to Thomson Reuters CLEAR and Palantir, among other customers, under commercial agreements entered into by Defendants, received licensing revenue from those transactions. Plaintiffs' and Class Members' ALPR information has worked its way into Vigilant's commercial database for sale through, for example, Vigilant deals with law enforcement agencies, such as with Chula Vista PD, that Vigilant can sell their data. *See supra* ¶ 75. Such deals are in violation of California law and Defendants' own representations of what Plaintiffs' and Class Members' California ALPR information from law enforcement agencies are used for. Motorola's collection, dissemination, and sale of Plaintiffs' and the Class's ALPR information conferred economic benefits upon Motorola at the expense of the privacy of their movement data and without their consent.

417.    Defendants are also unjustly enriched through their sharing of Plaintiffs' and Class Members' California ALPR information with out-of-state agencies, federal agencies, and other private entities because, as Motorola itself promotes, the value of becoming a Vigilant customer with access to VehicleManager rises with the volume of ALPR information shared. *See supra* ¶¶ 68–71. Defendants received a direct economic benefit from this unauthorized use of Plaintiffs' and Class Members' personal location and movement data. That benefit, including revenues from data licensing contracts, increased subscription fees, and enhanced customer acquisition attributable to the breadth of Defendants' ALPR data network, was obtained under circumstances that make it inequitable for Defendants to retain it without paying the value thereof to Plaintiffs and the Class.

418.    Plaintiffs and Class Members have no adequate remedy at law for Defendants'

85

unjust enrichment because the statutory liquidated damages available under the ALPR Privacy Act are not designed to disgorge the profits Defendants derived from commercial data sales, and the per-violation liquidated damages calculation does not capture the full scope of Defendants' unjust gain from the monetization of aggregated class ALPR data.

419.    Plaintiffs and Class Members are entitled to restitution and disgorgement of all revenues Defendants received from the unauthorized sale, licensing, or transfer of California ALPR data to third parties, in an amount to be proven at trial.

**COUNT IX: VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**
**Cal. Civ. Code §§1798.140 *et seq.* ("CCPA")**
**(On Behalf of Plaintiffs, the Class, and the Search Subclass)**

420.    Plaintiffs incorporate all prior allegations as if fully set forth herein and bring this Count individually and on behalf of the proposed Search Subclass.

421.    Plaintiffs and the members of the Search Subclass are consumers as that term is defined in Cal. Civ. Code § 1798.140(i).

422.    Defendants are businesses as that term is defined in Cal. Civ. Code § 1798.140(d). Defendants are organized or operated for the profit or financial benefit of its owners. Defendants collect consumers' personal information (including that of Plaintiffs and the Search Subclass) and Defendants determine the purposes and means of the processing of consumers' personal information. Defendants do business in California and had annual revenue substantially in excess of $25 million dollars in the preceding calendar year.[148]

423.    The Search Subclass's information accessed constitutes "personal information" as that term is defined in Cal. Civ. Code § 1798.140(v)(1) and 1798.81.5.

424.    Under the CCPA, Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information that it stored. Cal. Civ. Code § 1798.150(a)(1).

425.    Vigilant failed to implement basic technological safeguards that would have prevented California law enforcement data from being disseminated to and accessed and searched

---

[148] *See* 2025 10-K, *supra* note 9, at 38.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

by federal and out-of-state law enforcement agencies and private entities.

426. Among other security failures, Vigilant did not require MFA for access to or searches of its ALPR database, allowing the Search Subclass' California ALPR data to be disseminated to out-of-state and federal agencies and searched. Vigilant's unreasonable security practices were demonstrated by researchers' recent exposure of numerous distinct vulnerabilities in its hardware and software.

427. Vigilant knew or should have known that its failure to implement and maintain adequate privacy and security measures would permit the unauthorized dissemination and searching of California ALPR information by federal and out-of-state law enforcement agencies.

428. It was practically certain that unauthorized sharing to and searching of ALPR information by federal agencies and out-of-state law enforcement agencies in violation of the CCPA would follow from Vigilant's unlawful conduct of permitting and encouraging national sharing and searches of California ALPR information, sharing agreements between California law enforcement agencies and agencies in other states, "side-door" access to Californians' ALPR information, and other failures to implement and maintain adequate privacy and security measures.

429. Vigilant failed to implement measures that would have prevented California law enforcement agencies' ALPR data from being shared with and searched by federal or out-of-state agencies, such as blocking sharing of California ALPR data with federal and out-of-state law enforcement agencies and private entities.

430. Vigilant deliberately collected Plaintiffs' and the Class's ALPR information and disclosed that information to its out-of-state and federal law enforcement customers, allowing them to identify physical characteristics and movement patterns of, and locations visited by, Plaintiffs' and Class Members' vehicles, as well as potentially other identifying information.

431. Vigilant's failure to prevent the unauthorized access of the Search Subclass's California ALPR information by implementing and maintaining reasonable security procedures and practices constitutes a breach of its duty under the CCPA.

432. As a result of Vigilant's failure to implement and maintain reasonable security

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

procedures and practices, the nonencrypted and nonredacted personal information of Plaintiffs and the Search Subclass was subject to unauthorized access and exfiltration, theft, or disclosures.

433.   Plaintiffs and the Search Subclass seek injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA pursuant to Cal. Civ. Code § 1798.150(a)(1)(B). Such injunctive relief is particularly important because Defendants continue to hold the PII of Plaintiffs and the Search Subclass. Plaintiffs and the Search Subclass have an interest in ensuring that their PII is reasonably protected.

434.   In accordance with Cal. Civ. Code § 1798.150(b), Plaintiffs will provide Defendants with written notice of Defendants' alleged violation of Cal. Civ. Code § 1798.150(a). If Defendants fail to respond to Plaintiffs' notice or fails to provide notice that it has cured the alleged violations of the CCPA, then Plaintiffs intend to amend this complaint to seek statutory damages of $750 per consumer per incident on behalf of the Search Subclass.

### PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request that the Court grant the following relief:

a. Certification of this action as a class action and appointment of Plaintiffs and Plaintiffs' counsel to represent the Classes;

b. A declaratory judgement that Defendants violated Cal. Civ. Code §§1798.90.5 *et seq.*, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California constitutional and common law;

c. An order enjoining Vigilant from engaging in or facilitating the unlawful practices and illegal acts described herein; and forcing Vigilant to delete any California ALPR information stored on its platform by anyone other than California law enforcement agencies.

d. An order awarding Plaintiffs and the Classes: (1) actual or liquidated damages (whichever is higher); (2) punitive damages—as warranted—in an amount to be determined at trial; (3) restitution in an amount to be determined at trial; (4) injunctive relief as the Court may deem proper; (5) reasonable attorneys' fees and

expenses and costs of suit pursuant to Cal. Code of Civil Procedure § 1021.5 and/or other applicable law; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other and further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Classes, request a trial by jury of all claims that can be so tried.

Dated: July 16, 2026

**GIBBS MURA LLP**

By: */s/ David M. Berger*
David M. Berger (SBN 277526)
Aaron Blumenthal (SBN 310605)
Jennifer Sun (SBN 354276)
Kate Walford (SBN 362658)
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com
ab@classlawgroup.com
jsun@classlawgroup.com
kgw@classlawgroup.com

Gary M. Klinger*
Mike Acciavatti*
Heather M. Lopez (SBN 354022)
**Milberg PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (331) 240-3015
gklinger@milberg.com
macciavatti@milberg.com
hlopez@milberg.com

Renner K. Walker (SBN 295889)
Steven M. Nathan (SBN 153250)
Gisela (Zelly) Rosa*
Jacob R. Leiken*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100

89

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:26-cv-06099-JD

Facsimile: (212) 202-4322
rwalker@hausfeld.com
snathan@hausfeld.com
zrosa@hausfeld.com
jleiken@hausfeld.com

*pro hac vice forthcoming*
*Attorneys for Plaintiffs*

90